UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| **NANCY ROELL,** | : | Case No. 1:14-cv-637 |
| c/o Gerhardstein & Branch, Co LPA | : | |
| 432 Walnut Street Suite 400 | : | **Judge** |
| Cincinnati, OH 45202 | : | |
| *as executrix of the estate of Gary L. Roell, Sr.*, | : | |
| | : | |
| Plaintiff, | : | **CIVIL COMPLAINT AND JURY DEMAND** |
| v. | : | |
| | : | |
| **HAMILTON COUNTY,** | : | |
| **OHIO/BOARD OF COUNTY** | : | |
| **COMMISSIONERS** | : | |
| 138 E. Court Street, Cincinnati, OH 45202, | : | |
| | : | |
| and | : | |
| | : | |
| **JIM NEIL,** | : | |
| Hamilton County Sheriff's Office | : | |
| 1000 Sycamore St., Room 110 | : | |
| Cincinnati, OH 45202, | : | |
| *In his official capacity as the Hamilton County Sheriff* | : | |
| | : | |
| and | : | |
| | : | |
| **JOSEPH HUDDLESTON** | : | |
| **MATTHEW ALEXANDER** | : | |
| **WILLY DALID** | : | |
| *Individually and in their Official Capacities as employees of Hamilton County*, | : | |

**Defendants.**

**I. PRELIMINARY STATEMENT**

1. This civil rights action challenges as excessive force the tasing and killing of Mr. Gary

Roell Sr. by Hamilton County Sheriff's Deputies while Mr. Roell was suffering from a severe

1

mental health episode. Mr. Roell was tased repeatedly on August 13, 2013.  He was unarmed, holding a flower basket and a garden hose, and naked from the waist down.  He was clearly demonstrating symptoms of excited delirium.  Officers provoked Mr. Roell rather than properly employing de-escalation techniques. The officers used excessive force in fighting with Mr. Roell and tasing him six times. One of the taser shots was to the chest, clearly outside the preferred target zone established by the taser manufacturer.  The officers failed to take obvious and available steps to prevent death by excited delirium.  Moreover, the excessive use of the taser contributed to Mr. Roell's death. Plaintiff brings this action in order to secure fair compensation, to promote better training and supervision of officers interacting with mentally ill suspects, to promote better training on excited delirium, and to deter these Defendants from causing future taser-related deaths.

## II. JURISDICTION

2. Jurisdiction over claims arising from Defendant's violation of the Civil Rights Act is conferred upon this Court by 28 U.S.C. §§ 1331, 1343 (3) and (4).

3. Jurisdiction over the state law claims is conferred upon this Court by 28 U.S.C. §1367.

4. Venue is proper in this Division.

## III. THE PARTIES

5. Plaintiff Nancy Roell is the widow of Mr. Roell, who is deceased. She brings this suit as the Executrix of the Estate of Mr. Roell for the benefit of his next of kin.

6. Defendant Hamilton County, Ohio/Board of County Commissioners ("County") is a unit of local government organized under the laws of the State of Ohio. Defendant County is sued through the Hamilton County Board of County Commissioners who are named only in their official capacity pursuant to O.R.C. §305.12. Defendant is a "person" under 42 U.S.C. § 1983

and at all times relevant to this case acted under color of law. Defendant is a public entity within the meaning of the Americans with Disabilities Act, 42 U.S.C. § 12131.

7. Defendant Sheriff Jim Neil is and was at all times relevant to this action the duly elected Sheriff of Hamilton County, Ohio. Defendant is a "person" under 42 U.S.C. § 1983 and at all times relevant to this case acted under color of law. He is sued in his official capacity.

8. Defendant Joseph Huddleston was at all times relevant to this action employed by Hamilton County, Ohio as a Deputy Sheriff with the Hamilton County Sheriff's Office ("HCSO") and was acting under color of law. Defendant is a "person" under 42 U.S.C. § 1983 and at all times relevant to this case acted under color of law. He is sued in both his individual and official capacities.

9. Defendant Matthew Alexander was at all times relevant to this action employed by Hamilton County, Ohio as a Deputy Sheriff with the HCSO and was acting under color of law. Defendant is a "person" under 42 U.S.C. § 1983 and at all times relevant to this case acted under color of law. He is sued in both his individual and official capacities.

10. Defendant Willy Dalid was at all times relevant to this action employed by Hamilton County, Ohio as a Deputy Sheriff with the HCSO and acting under color of law. Defendant is a "person" under 42 U.S.C. § 1983 and at all times relevant to this case acted under color of law. He is sued in both his individual and official capacities.

## IV. FACTS

11. Gary Roell was 59 years old in August, 2013. He was married to Plaintiff, Nancy Roell, and he had six sons and seven grandchildren. He was retired from American Airlines, and he was a talented guitar player.

12.	Mr. Roell suffered for most of his life from severe mental illness including schizoaffective disorder and delusional disorder.  Much of the time he was able to manage his illness and it did not interfere with his enjoyment of life. His mental illness caused all of his behavior during his interaction with defendants.

13.	Mr. Roell is a qualified individual with a disability for purposes of the Americans with Disabilities Act, 42 U.S.C. § 12131.

14.	Plaintiff Nancy Roell assisted her husband with his mental illness during their marriage, including during his occasional hospitalizations.

15.	Days before Mr. Roell's death, Plaintiff Nancy Roell went to New Jersey for a service trip with members of her church. She had taken trips like this before and, as during those previous trips, Mr. Roell appeared sufficiently stable to be left alone at home.

16.	Unfortunately, while his wife was away, Mr. Roell suffered from a severe psychotic episode.

17.	Mr. Roell did not act violently toward any persons but he did cause property damage. He pulled items from cabinets out onto the floor, dumped food from the refrigerator/freezer, put objects into the toilets, and spread dirt and debris throughout the couple's condominium. He was observed by neighbors acting strangely—running hoses in and around his home and around the outside of his neighbor's home, washing his car using his shirt while he was wearing it, etc. He spread board game cards all over the parking lot of his condominium complex, and he placed plant debris in his neighbors' mailboxes.

18.	Much of this damage was readily visible to anyone approaching the condominium complex where the Roells lived.

19. At approximately 2:30 a.m. on August 13, 2013, Mr. Roell entered his neighbor's fenced-in back patio and broke a window.

20. The neighbor called 911 and reported the incident. The neighbor told the 911 operator that Mr. Roell was acting "crazy."

21. Hamilton County Sheriff's officers Defendants Huddleston, Alexander, and Dalid responded to the scene at approximately 2:50 a.m.

22. Defendant Deputy Huddleston approached the scene with his taser out. He noted on his arrival that Mr. Roell was half naked, wearing only a t-shirt and nothing else. He heard Mr. Roell yelling "nonsense."

23. Mr. Roell held a garden hose in one hand and a hanging flower basket in the other.

24. Defendants Huddleston and Alexander immediately began yelling commands to Mr. Roell including, "give us your hands, give us your hands" and "lay on the ground or you're going to be tased."

25. Within moments of those commands, and without giving Mr. Roell an adequate opportunity to respond, the deputies commenced using force to effect an arrest.

26. During the encounter, Mr. Roell told the officers "I don't have a weapon."

27. Defendant Deputy Huddleston deployed his taser six times during the encounter.

28. One of the deployments was to Mr. Roell's chest.

29. On information and belief, the taser unit employed by Defendant Huddleston on August 13, 2013, was not properly maintained and tested.

30. None of the deputies used de-escalation techniques with Mr. Roell such as reducing the tension in the encounter, developing a plan, using patience, keeping voices low, and keeping their distance from the suspect.

5

31. The Defendant deputies failed to call for an EMS team and failed to have it staged nearby before attempting physical control of Mr. Roell.

32. The Defendant deputies failed to seek advice from supervisors or anyone trained in dealing with a mental health crisis before attempting physical control of Mr. Roell.

33. Defendant deputies made no efforts to secure sedation of Mr. Roell by medical professionals.

34. All three Defendant deputies were unnecessarily physical with Mr. Roell. Defendant Deputies wrestled Mr. Roell to the ground, causing blunt force injuries to his head, torso, and extremities. Defendant Deputy Huddleston used excessive force in the multiple tasings of Mr. Roell. Defendants Alexander and Dalid failed to protect Mr. Roell from the excessive taser deployments.

35. Throughout the encounter, Mr. Roell yelled various odd statements about water, claiming that his house was wet, his neighbor's house was dry and that he should get water from the neighbor.

36. Mr. Roell made no threatening statements and did not claim that he was going to use violence or attack anyone.

37. After the repeated tasings, the Defendant deputies handcuffed Mr. Roell.

38. While the deputies held him down, one read Mr. Roell his rights to which he responded "I don't understand. I just wanted some water from my neighbors." Those turned out to be his last words.

39. Within a short period of time, Mr. Roell stopped breathing.

40. The cause of death was excited delirium, a condition almost exclusively associated with people involved in police altercations. Mr. Roell's signs and symptoms of excited delirium were

6

obvious to an officer trained in the condition: he was partially nude; he was sweaty; he was obviously agitated; he was engaging in bizarre behaviors; he was exhibiting paranoia, fear, and/or hallucinations. Failure to properly recognize these signs and symptoms and engage EMS for appropriate medical treatment puts a person suffering from excited delirium at a serious risk of death.

41. None of the three Defendant deputies had taken training on de-escalating crises with mentally ill citizens or training on excited delirium.

**Excessive Force**

42. By failing to appropriately de-escalate the mental health crisis and instead using unnecessary and excessive physical force, failing to avoid the upper chest with the probes of the taser, deploying the taser an excessive number of times, and otherwise failing to use the taser properly, Defendants Huddleston, Alexander, and Dalid acted unreasonably, negligently, recklessly, wantonly, willfully, knowingly, intentionally, and with deliberate indifference to the safety and rights of Mr. Roell.

43. The use of force by Defendants Huddleston, Alexander, and Dalid on Mr. Roell on August 13, 2013, was unreasonable and excessive and violated clearly established law.

44. Defendants Huddleston, Alexander, and Dalid failed to protect Mr. Roell from each of the other Defendant deputies' excessive use of force.

### Custom, Policy, and Failures to Train and Supervise

**Streicher Report**

45. An October 2013 performance audit of the Hamilton County Sheriff's Office identified "profound training deficiencies; outdated general orders, policies, procedures, rules and regulations . . ." It found that "most general orders and policies have gone without review or

change for two decades or more." (Greenwood & Streicher Performance Audit, Oct. 15, 2013, p. 6).

46. The report found that the agency effectively abandoned all training beyond the basic police academy in 2008, and found a lack of meaningful training for the department such that a "mid-level supervisor indicated that in his twenty-plus year career, he ha[d] never had updated use of force training beyond the initial academy." (*Id.* at 7). At the time of the review, no use of force training was provided to deputies. (*Id.* at 16). Further, training with tasers was inadequate "due to cost of cartridges." *Id.*

**Taser Policy**

47. The Hamilton County taser policy in effect at the time of the Roell death did not have the X-2 taser used by Deputy Huddleston listed as an approved device.

48. The Hamilton County taser policy in effect at the time of the Roell death authorized officers to deploy taser prongs to the chest of suspects even when they were not engaged in incidents requiring deadly force.

49. In September 2009 Taser International, the manufacturer of the taser unit deployed by defendant Huddleston, warned Hamilton County and all taser users that taser prong deployments to the chest increased the risk of an adverse cardiac event. In that 2009 warning, Taser International established a preferred target zone directing the top prong to an area below the chest.

50. Defendants Hamilton County and Neil did not adjust the taser policy to reflect the preferred target zone before Mr. Roell's death.

51. Nor did the Hamilton County policy adequately warn against repeated taser deployments.

52.     The taser policy of Hamilton County was a moving force behind the excessive force and death of Gary Roell.

53.     Defendants Hamilton County and Neil failed to adequately train and supervise the defendant officers with respect to proper taser deployment in situations like that confronting them with Gary Roell.

54.     Defendants Hamilton Count and Neil were deliberately indifferent to the rights of citizens such as Mr. Roell by failing to adequately train and supervise officers with respect to proper taser deployment. It was clearly foreseeable that officers would encounter citizens such as Mr. Roell.

**Excited Delirium Policy**

55.     At the time of the death of Gary Roell Hamilton County failed to have a policy on excited delirium even though law enforcement agencies across the country were well aware of the signs, symptoms and risks of excited delirium.

56.      Prior to the encounter with Gary Roell Hamilton County and Sheriff Neil failed to train and supervise the Defendant deputies regarding safe techniques for addressing the needs of suspects experiencing the signs and symptoms of excited delirium.

57.     The County did provide a "roll call training" to patrol officers in the spring of 2012, before the Defendant deputies in this case were promoted to patrol officers, on excited delirium.

58.     The roll call training advised that at least six officers should be on scene and that EMS should be staged nearby before engaging a suspect.

59.     Defendant deputies Huddleston, Alexander, and Dalid were not provided this training.

60.     In August 2013 it was clearly foreseeable that Hamilton County deputies would encounter citizens such as Gary Roell demonstrating the signs and symptoms of excited delirium.

9

61.	The failure to train the deputies caused them not to deescalate the encounter and not to seek appropriate assistance from mental health professionals during the arrest of Mr. Roell.

62.	Training on the signs, symptoms and response to excited delirium would have alerted trained officers that Mr. Roell was suffering a medical emergency, which called for immediate medical care instead of hands on aggression.

63.	Defendants Hamilton Count and Neil were deliberately indifferent to the rights of citizens such as Mr. Roell by failing to adequately train and supervise officers with respect to excited delirium.  It was clearly foreseeable that officers would encounter citizens such as Mr. Roell, exhibiting signs and symptoms of excited delirium.

**Policy on Citizens with Mental Disabilities**

64.	The Hamilton County Sheriff's Office had a policy in place at the time of Mr. Roell's death for the handling of situations involving people with disabilities, including mental disabilities.

65.	According to the policy, when encountering a person who is mentally ill, a deputy's "primary responsibility" is to make sure the mentally ill person is safe and provide him help. This may be accomplished by securing psychiatric evaluation for the suspect, contacting a mental health hotline, seeking assistance of a mobile crisis team, or, finally, arrest. A contact number for the mental health hotline is listed in the policy.  It is the wrong number.

66.	Defendant deputies Huddleston, Alexander, and Dalid did not receive any training on de-escalating mental health crises.

67.	Defendants Hamilton County and Sheriff Neil were deliberately indifferent to the serious risk of harm posed to mentally ill citizens such as Gary Roell.

10

68.     In August 2013 it was clearly foreseeable that Hamilton County deputies would encounter citizens in a mental health crisis such as that facing Gary Roell.

69.     Training on mental health crises would have taught Defendant deputies of the need to reduce the tension in the encounter, to develop a plan, to be patient, to keep voices low, and to keep their distance from the suspect.

70.     The lack of training and supervision provided by Hamilton County and Sheriff Neil to Defendants Huddleston, Alexander, and Dalid concerning proper taser use, excited delirium, and encounters with the mentally ill was deliberately indifferent to the safety of citizens with mental illness, including citizens such as Mr. Roell, who are foreseeably at risk of arrest by the deputies. The lack of training made it obvious that deprivations of Mr. Roell's and similarly situated persons' constitutional rights were substantially certain to result.

71.     HCSO custom, policy, practices, training, usage, and supervision served as a moving force for the excessive force used on Mr. Roell by Defendants Huddleston, Alexander, and Dalid in this case. The failure to de-escalate a mental health crisis, the deployment of taser prongs to Mr. Roell's chest, and the repeated tasings of Mr. Roell were consistent with the policy and practice followed by HCSO deputies and each was a moving force behind the excessive force used on Mr. Roell.

**Ratification**

72.     Defendant deputies Huddleston, Alexander, and Dalid were never disciplined, counseled, or retrained by HCSO based on their failure to properly handle Mr. Roell's mental health crisis and his obvious symptoms of excited delirium.

73.     Defendant deputies were never disciplined, counseled, or retrained by the HCSO based on of the multiple taser deployments, including in the upper chest.

74. The HCSO has ratified the conduct of Defendants Huddleston, Alexander, and Dalid set out in this complaint. Specifically, the investigation of the use of force by Defendants Huddleston, Alexander, and Dalid was not intended to determine whether the officers' actions were consistent with the HCSO's Policy on Handling of Handicapped Persons, its training on excited delirium, or its policy and training on taser use.

75. The HCSO has not disciplined, counseled, or retrained Defendants Huddleston, Alexander, or Dalid for any of the conduct set out in this complaint.

**Damages**

76. As a direct and proximate result of the conduct of Defendants Hamilton County, Neil, Huddleston, Alexander, and Dalid, Mr. Roell suffered terror and fear as the deputies ignored his mental health crisis and used unnecessary and excessive physical force against him, causing him injuries, pain, and emotional and psychological trauma. He died as a result of such injury.

77. As a further direct and proximate result of Mr. Roell's wrongful death, Mr. Roell's survivors, next of kin and/or heirs have suffered permanent damages including but not limited to loss of his benefits, support, and relationship, and they have suffered grief and severe emotional distress. They have incurred funeral bills and other expenses and will incur additional expenses in the future.

78. The death of Mr. Roell was tragic and completely preventable. Indeed, the sad facts of this case are similar to the excessive force used against Mr. John Harmon, a person who suffered a diabetic episode and was excessively tased by Hamilton County deputies on October 20, 2009. See *Harmon et al v. Hamilton County et al,* USDC, SD OH, Case No. 1:10-cv-911. Mr. Roell himself was part of the community effort to raise awareness among law enforcement of the needs of mentally ill citizens. As far back as 1997, Mr. Roell joined others to protest when a mentally

ill citizen, Mr. Lorenzo Collins, was killed as a result of the excessive force by law enforcement officers. His family is particularly saddened and outraged that a need identified almost two decades ago remained unmet and that failure to establish adequate policies, training, and supervision caused the death of their loved one.

### V. FIRST CAUSE OF ACTION- EXCESSIVE FORCE (42 U.S.C. § 1983)

79. Defendants Hamilton County, Neil, Huddleston, Alexander, and Dalid, have, under color of law, deprived Mr. Roell of rights, privileges, and immunities secured to him by the United States Constitution, including the prohibition on unreasonable searches and seizures contained in the Fourth and Fourteenth Amendments to the United States Constitution.

80. Defendants County and Sheriff Neil failed to adequately train and supervise the defendant deputies regarding encounters with mentally ill individuals and their encounters with individuals experiencing excited delirium.

81. The failure to train and supervise was deliberately indifferent to the rights of individuals with mental disabilities, like Mr. Roell.

82. The rules, regulations, customs, policies, practices, usages, and procedures of the Defendants were inadequate and unreasonable and were the moving force behind the constitutional deprivations suffered by Mr. Roell.

### VI. SECOND CAUSE OF ACTION – WRONGFUL DEATH

83. Defendants' actions caused the wrongful death of Mr. Roell resulting in damages recoverable under R.C. § 2125.02.

### VII. THIRD CAUSE OF ACTION – ASSAULT AND BATTERY

84. Defendants Huddleston, Alexander, and Dalid intentionally and maliciously applied and threatened to apply unlawful and unnecessary force against Mr. Roell.

## VIII. FOURTH CAUSE OF ACTION--AMERICANS WITH DISABILITIES ACT

85. The rendering of police services constitutes a "service, program, or activity" of Hamilton County within the meaning of Title II of the ADA.

86. Defendants intentionally discriminated against Mr. Roell or failed to provide him a reasonable accommodation when they used unnecessary and excessive force against him because of his disability, in violation of Title II of the Americans with Disabilities Act.

## IX. JURY DEMAND

87. Plaintiff hereby demands a trial by jury of all issues triable by jury.

## X. PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that this Court award them:

    A. Compensatory damages in an amount to be shown at trial;

    B. Punitive damages against Defendants Huddleston, Alexander, and Dalid only in an amount to be shown at trial (no punitive damages are sought against Hamilton County);

    C. Costs incurred in this action and reasonable attorney's fees;

    D. Prejudgment interest;

    E. Such other and further relief as the Court deems just and proper.

                              Respectfully submitted,

                              /s/ Alphonse A. Gerhardstein
                              Alphonse A. Gerhardstein (0032053)
                              Trial Attorney for Plaintiff
                              Jacklyn Gonzales Martin (0090242)
                              Attorney for Plaintiffs
                              Gerhardstein & Branch Co. LPA
                              432 Walnut Street, Suite 400
                              Cincinnati, Ohio 45202
                              Tel (513) 621-9100
                              Fax (513) 345-5543
                              agerhardstein@gbfirm.com
                              jgmartin@gbfirm.com