# Hamilton County
# SHERIFF'S OFFICE

# GENERAL ORDER

| | NUMBER: |
|---|---|
| | 216 |

| SUBJECT: | PAGES: |
|---|---|
| ELECTRONIC STUN DEVICE | 11 |

**REVISIONS:**
This re-issue of General Order 216 contains all <u>related</u> revisions, updates, and Special Orders effective since the original issue of this General Order.

| DISTRIBUTION: Law Enforcement and Corrections Personnel | ISSUE DATE: April 22, 1991 Re-Issue: September 9, 2010 | EFFECTIVE DATE: September 9, 2010 |
|---|---|---|

| ISSUED BY: | |
|---|---|
| | SIMON L. LEIS, JR., Sheriff |

## INDEX

| | |
|---|---|
| 216.00 | APPLICABILITY- OPOTC-CERTIFIED OFFICERS |
| 216.01 | OFFICERS AUTHORIZED TO PURCHASE STUN DEVICES FOR DETAILS |
| 216.02 | ELECTRONIC STUN DEVICE DEFINED/APPROVED DEVICES |
| 216.03 | MAINTENANCE/SAFETY |
| 216.04 | TRAINING REQUIREMENTS |
| 216.05 | USE OF TASER GUNS AND PHYSICAL CONTACT STUN DEVICES |
| 216.06 | POST-USE ACTION REQUIRED – OFFICER |
| 216.07 | POST-USE ACTION REQUIRED - SUPERVISOR |
| 216.08 | APPLICATION TECHNIQUES |
| 216.09 | USE OF STUN BELT DEVICE |
| 216.10 | DEVICE AVAILABILITY |
| 216.11 | REVIEW OF USE |
| 216.12 | ELECTRONIC STUN DEVICE APPLICATION/INCIDENT REPORT |

## PURPOSE

The purpose of this policy is to set forth a standard procedure for use and operation of the Electronic Stun Devices approved for use by this department.



Case: 1:14-cv-00637-SSB-KLL Doc #: 77-3 Filed: 02/23/16 Page: 2 of 19 PAGEID #: 1420

**216.00    APPLICABILITY - OPOTC-CERTIFIED OFFICERS**

No Sheriff's personnel shall carry or utilize an Electronic Stun Device except in accordance with these policies and procedures.

.1    Only deputies who are certified as law enforcement officers by the Ohio Peace Officers Training Council (OPOTC) are authorized to carry an Electronic Stun Device.

.2    "Shall carry" -- applies to on or off-duty status, or off-duty employment.

.3    This procedure complements and should be considered in conjunction with provisions of departmental use of force policy (General Order #208).

**216.01    OFFICERS AUTHORIZED TO PURCHASE A STUN DEVICE FOR DETAILS**

.1    Special Deputies and OPOTC-certified Deputies who are not assigned to the Patrol, Court Services or Organized Crime Divisions (or other OPOTC-certified deputies who have not been issued a stun device), who have been approved to work details may, with the prior approval of the Sheriff, and only after successful passage of all training requirements and in full compliance with all other requirements as set forth in this General Order, carry as part of their approved equipment and while working and traveling directly to and from details, a personally-owned electronic stun device. (Employees covered by this section are not *required* to purchase or carry a stun device.)

.2    Any employee covered by this section who wishes to carry a stun device while working details is required to purchase such device at his/her own expense. Such stun device, and any attendant necessary equipment, will be, and will remain the personal property of that employee. It is recommended that the employee seek and receive the Sheriff's approval to carry the device on details before purchasing.

.3    The only personally-owned stun device approved for carry while on a detail is the X-26 taser.

.4    Any covered deputy opting to purchase an X-26 taser for carrying while on detail must also purchase a "Blade-Tech" holster and a minimum of two cartridges.

.5    Training/certification in the use of these devices will be provided by the Sheriff's Office as training spaces become available and at no additional

charge to the deputy. Cartridges used as part of this training will be provided by the Sheriff's Office.

.6    Cartridges used in the course of duty will be replaced by the Sheriff's Office. Personally-owned X-26 tasers damaged in the line of duty will be repaired by the Sheriff's Office at no expense to the deputy.

.7    Deputies covered by this section are responsible for the costs of normal upkeep and maintenance as well as for repairing any damage sustained to the unit or attendant equipment caused by the negligence or misuse by the deputy.

216.02    ELECTRONIC STUN DEVICE DEFINED/APPROVED DEVICES

For purposes of this policy, Electronic Stun Device is defined as any device which is designed or used for the purpose of assisting in the take-down or control of a resistive person through use of electrical impulse applied to the subject's person.

.1    Acceptable devices shall be approved for use and issued at direction of the Sheriff.

.2    No unauthorized or non- issued electronic stun device shall be carried or utilized.

.3    The electronic stun devices currently approved and in use are:

    .A    M-26 and X-26 taser

    .B    Physical contact stun device; (Ultron II) or similar device as approved for the Corrections Division

    .C    Remote Electronically Activated Control Technology (REACT) Belt System (stun belt)

216.03    MAINTENANCE/SAFETY

.1    It shall be the responsibility of the deputy to whom assigned, whether as an individually-assigned item of equipment or by daily duty-assignment, to keep unit clean, in good working order, and to maintain an acceptable power source level.

.2    Departmental personnel shall not attempt to alter, tamper with, or repair any stun device. If unit malfunctions, or is otherwise in need of repair

| DATE: | SUBJECT: | | NUMBER: | PAGE: |
|-------|----------|---|---------|-------|
| 09/09/10 | ELECTRONIC STUN DEVICE | | 216 | 4 |

and/or maintenance, immediately inform the designated supervisor. The damaged unit will not be carried until it is rendered operable.

.3      If unit is dropped or knocked out of hand, immediately test unit per training regimen to determine if damaged.

4.      Physical Contact Stun Devices and tasers will be treated as any other weapon and shall be maintained in issued holster, and not un-holstered or displayed for any reason except when Deputy reasonably believes such use is justified in conformance with this General Order and General Order 208 (Use of Force).

216.04      TRAINING REQUIREMENTS: TASERS AND STUN DEVICES

.1      No deputy shall be assigned, or permitted to use an Electronic Stun Device unless that deputy has attended and successfully completed an authorized training session as approved by the Sheriff, as described below.

.A      Authorized "Basic Operators Training" shall consist of the established regimen for each device and shall be presented by a certified instructor.

.2      Only those individuals who have completed and are certified through an approved "Certified Instructor's Course", given by the manufacturer of the approved departmental choice of devices or an equivalent course approved by this department, may instruct a Basic Operator's Training session.

.3      All instructional manuals provided are considered to be departmental property and subject to return upon request.

216.05      USE OF TASER AND PHYSICAL CONTACT STUN DEVICES

.1      The devices are provided as a less lethal means of assisting Sheriff's personnel, when appropriate and within departmental use of force guidelines as found in General Order 208.

.2      The decision to use some level of force and/or the discretion as to what means are necessary to protect a deputy or another in a self-defense circumstance must rest with the deputy's reasonable determination of danger of bodily harm and the level of force required to control the situation, based on the totality of circumstances then prevailing and in accord with General Order 208.

| DATE: | SUBJECT: | | NUMBER: | PAGE: |
|---|---|---|---|---|
| 09/09/10 | ELECTRONIC STUN DEVICE | | 216 | 5 |

.3  Verbal warnings prior to use are not required, but may be given if circumstances allow and if deemed appropriate. A taser or stun device may be un-holstered and displayed to a subject as a warning of impending use in an effort to achieve compliance.

.4  A taser or a stun device may be used, when appropriate and within departmental use of force guidelines, in the following situations:

  .A  To protect against, or to avert, an animal attack;

  .B  To effect the arrest of a resisting subject or subject fleeing to avoid arrest, to maintain control of resisting subject(s) and/or for self defense or defense of another person.

  .C  The Taser X26 may be used in drive stun mode to gain compliance from a person attempting to swallow evidence or contraband. The preferred target areas of the body are the carotid/brachial, groin and common peroneal nerve.

5.  Deputies must bear in mind that the use of a taser or a stun device is a less lethal level of force, and that if (s)he or another person is imminently threatened with a lethal weapon such as a firearm or knife, a level of force higher than that provided by these stun devices, including the use of deadly force, may be appropriate, in keeping with this Department's Use of Force policy, General Order #208.

.6  The device will not be used in the following situations:

  .A  To threaten or attempt to gain information from a subject;

  .B  Against a subject already in custody unless physical resistance has to be overcome;

  .C  To wake a suspected intoxicated or unresponsive individual

.7  Deputies should avoid using any electronic device described herein against an obviously pregnant woman and those individuals appearing to be under the age of 8 or over the age of 70, unless the encounter rises to the level of a defense of life/deadly force situation.

.8  Corrections Officers trained and certified on the Ultron II should avoid using the device against any of the following unless the encounter rises to the level of a defense of life/deadly force situation:

   &bull; Pregnant female in the last trimester

- Persons in wheelchairs
- Infants, (0-3 years)
- Persons weighing less than 80 pounds
- Persons wearing metal body braces
- Persons with artificial limbs
- Persons with open wounds or stitches
- Persons with KNOWN neuro-muscular illness (i.e. Multiple Sclerosis or Muscular Dystrophy)

.9    No deputy shall playfully or maliciously use, or threaten to use, the device against another individual. Unnecessary display of device's power, or playful use, thrusting motions and/or carelessness shall be considered as abuses of device, regardless of where such unauthorized action occurs.

   .A    Violations of any of the above will result in disciplinary action.

.10    Applications of device shall be in accordance with the departmental training program and application techniques as set forth in Section 216.06 of this General Order.

216.06    **POST-USE ACTION REQUIRED- OFFICER**

1.    Actual Body Contact

   Actual body-contact use of a taser or stun device may require an arrest of subject. An exception to the arrest requirement may arise when the subject is mentally ill, has been admitted for emergency psychiatric evaluation, medical condition (i.e. diabetic, hypoglycemia, etc) or upon supervisory review.

   .A    The formal arrest charge may be inclusive of the following recommendations or any combination thereof:

      (1)    Assault – attack repelled

      (2)    Resisting Arrest – take-down, or maintaining a take-down, required

      (3)    Disorderly Conduct/Obstructing Official Business – fight or disorderly crowd broken up

   B.    Deputies utilizing a stun device during their tour of duty or during an off-duty detail shall immediately notify their supervisor of the

Case: 1:14-cv-00637-SSB-KLL Doc #: 77-3 Filed: 02/23/16 Page: 7 of 19 PAGEID #: 1425

| DATE: | SUBJECT: | | NUMBER: | PAGE: |
|-------|----------|--|---------|-------|
| 09/09/10 | ELECTRONIC STUN DEVICE | | 216 | 7 |

deployment. If their supervisor is not on duty or if the incident is during an off duty detail, the utilizing deputy will immediately notify the Patrol Division Watch Commander or the Patrol Division OIC if the Watch Commander is not available.

The Watch Commander or the OIC will cause an investigation to be conducted by a supervisor of at least the rank of Sergeant. The on-duty supervisor shall respond to the scene to assess the situation; locate and interview all witnesses including other law enforcement officers and the suspect. If a statement cannot be completed, a clear statement must be included in the supervisor's report as to why the statement was not obtained. The on-duty supervisor shall be responsible for investigating the incident and completion of an "ELETRONIC STUN DEVICE INCIDENT REPORT", as provided for in departmental procedures. This requirement includes those situations where a taser is discharged and the suspect is missed entirely, or where he is hit, but escapes from custody.

Notation of use shall also be made in any arrest or Offense/Incident report filed. Such form is to be completed and submitted by supervisor by the end of the shift. See Section 216.10 of this order for a copy of "ELETRONIC STUN DEVICE INCIDENT REPORT".

(1)     The "ELECTRONIC STUN DEVICE INCIDENT REPORT" form must be filled out completely; if a question does not apply, the supervisor must indicate so by indicating "N/A" (Not Applicable)

(2)     Under "Details of Activation", the investigating supervisor is required to articulate in full and complete detail the events leading up to activation, including those factors which led to the activation itself, and observed post-use effects.

.C     All deputies involved in a "taser" use of force will be required to complete a supplemental narrative/addendum outlining the facts and their involvement.

.D     Application of the physical contact stun device or a taser in the drive-stun mode does not require hospital treatment. However, if in the Deputy's opinion there may have been some possible adverse reaction caused by or from a device application, (s)he shall

| DATE: 09/09/10 | SUBJECT: ELECTRONIC STUN DEVICE | NUMBER: 216 | PAGE: 8 |
|---|---|---|---|

immediately notify his/her supervisor and cause subject to receive trained medical observation.

.E      Application of the taser or stun device will require medical treatment if:

     (1)      The darts are embedded in soft body tissue such as the genitals, breasts or any area above the collar bone, or deputies experience difficulty in removing the probes from other sites. (Deputies may remove darts embedded elsewhere using the appropriate technique as trained.)

     (2)      The subject requests medical attention; any subject on whom these techniques have been utilized must be asked if (s)he desires medical treatment.

     (3)      The subject does not appear to have recovered properly after arrest.

     (4)      The subject has been energized three or more times, subjected to one continuous energy cycle of more than 15 seconds, or was hit by more than one device in any given incident.

     (5)      The subject has exhibited signs of extreme uncontrolled agitation or hyperactivity prior to device application

.F      Color photos of all subjects will be taken indicating the device application points.

.G      Used taser cartridges and darts are considered a biohazard. Used cartridges and darts must be placed in a biohazard receptacle at a hospital, fire station or elsewhere.

.H      In the event that any injury is sustained through the use of the taser, used cartridges and darts are to be collected and maintained as evidence for a minimum of two years.

.2      Display of Power (ARC)/Warning Display

A non-contact display of power through "arcing" the taser will require only referencing such usage in a written report, and will not in itself require or necessitate an arrest, although the Deputy must have had reasonable grounds to believe that such arcing display would be beneficial in resolving the situation peacefully.

| DATE:<br>09/09/10 | SUBJECT:<br>ELECTRONIC STUN DEVICE | NUMBER:<br>216 | PAGE:<br>9 |
|---|---|---|---|

.3     Accidental Discharge

In the event of an accidental discharge which does not strike a person or cause damage to property, the involved deputy(s) are required to notify a supervisor and provide full details as thereafter requested.

**216.07**     **POST-USE ACTION REQUIRED-SUPERVISOR**

.1     Following each use of a taser or any stun device, the involved supervisor is responsible for ensuring that the available information captured on the computer chip of the taser used is downloaded as soon as possible, said data to be retained for no less than two years.

.2     Following each use of the taser or stun device, the involved supervisor must respond to the scene and conduct a complete investigation to include interviews of the subject(s) and witnesses. The supervisor is required to forward all "Electronic Stun Device Application/Incident Report" forms, via the chain of command to the Sheriff, along with any investigative reports generated, and to include an opinion as to whether the use described therein was warranted/justified under the use of force guidelines.

**216.08**     **APPLICATION TECHNIQUES**

.1     The Electronic Stun Devices will have an effect anywhere on the body but have the maximum effect in these areas:

- Upper shoulders
- Upper hips
- Below rib cage
- Lower back

.2     Application of the taser above the neck or to the groin is to be avoided, if at all possible.

.3     Application of the Ultron II on the following areas is to be avoided, if at all possible

- Head
- Groin
- Female breasts

| DATE:<br>09/09/10 | SUBJECT:<br>ELECTRONIC STUN DEVICE | NUMBER:<br>216 | PAGE:<br>10 |
|---|---|---|---|

- Throat
- Xyphoid process/base of sternum

.4    Upon application of device, every attempt shall be made to hold onto subject and assist to ground to minimize potential for subject receiving an injury caused by falling.

.5    If multiple deputies/law enforcement officers are present, a deputy intending to use the taser should announce in a loud voice, if time allows, "Taser!" to alert fellow deputies that a taser, rather than a firearm, is about to be activated and used.

.6    Where multiple deputies are present, only one deputy should activate his/her device against a subject. As time and circumstances permit, communicate to one another to determine who will activate a device.

.7    Application should be only for the duration required to achieve a state of control, which will vary based upon subject, and should generally not exceed an individual application of five (5) seconds for the taser and 15 seconds for the Ultron II. If after Four (4) individual applications the subject is not fully compliant, other uses of force, including hands-on submission techniques, should be considered.

.8    While the taser is effective up to 21 feet and through clothing up to 2 inches thick, an optimum distance is considered to be 15 feet.

.9    Do not fire tasers near flammable liquids or fumes, or in highly flammable locations such as meth labs. Self-defense sprays may also be highly flammable; use of such sprays should therefore be considered only after a stun device application where circumstances warrant.

216.09     USE OF STUN BELT DEVICE

.1    The Remote Electronically Activated Control Technology (REACT) Belt System, or "Stun Belt", is to be used only by deputies who have received training as recommended by the manufacturer and approved by this department.

.2    Pursuant to *State v. Leonard*, 2004-Ohio-3323, a stun belt is to be used only after a court hearing is held wherein testimony and evidence is adduced as to the necessity of using the device, and the presiding judge has ordered its use.

| DATE: 09/09/10 | SUBJECT: ELECTRONIC STUN DEVICE | NUMBER: 216 | PAGE: 11 |
|---|---|---|---|

.3    The use of stun belts for court-house, court appearance hearings must be in accord with *State v. Leonard*, above, and any subsequent controlling court decisions on this issue.

.4    Any defendant who has been court-ordered to wear a stun belt must be advised of the type of behavior which would trigger activation of the device and a description of the effects such activation would result in.

.5    A stun belt may also be used by deputies formally trained in its use, and with the authorization of the Division Commander, for purposes of prisoner transport outside the courthouse.

216.10    DEVICE AVAILABILITY

Each division or work unit of the Sheriff's Office receiving approval for use of electronic stun devices shall establish procedures for device availability, access, and/or assignment in accordance with its needs. Any such procedures shall not conflict with this General Order.

216.11    REVIEW OF USE

"ELECTRONIC STUN DEVICE INCIDENT REPORT" submitted will be administratively reviewed as with all Use of Force Reports in accordance with Section 208.08 of General Order #208 – Use of Force.

# HAMILTON COUNTY SHERIFF'S OFFICE
# ELECTRONIC STUN DEVICE INCIDENT REPORT

| District | Beat | Date | Time | CAD # | Location |
|----------|------|------|------|-------|----------|
| | | | | | |

## SUSPECT/ARRESTED INFORMATION

Name: Last :          First:          MI:          Sex:          Race:          DOB:

Address:          City:          State:          Zip:          Phone:

Control #:          OLN:          State:          Exp. Date:

Charges:

If not charged, Why?

---

**OFFICER INFORMATION**      Number of officers involved: _____      ☐ **SUPPLEMENTAL WITNESS LIST ATTACHED**
**Primary Officer Involved**

Name: (Last)          (First)          Badge:          Emp. ID#          Sex:          Race:          Dist/Unit:
Duty Status:  ☐ Uniform  ☐ Non-uniform  ☐ On Duty  ☐ Off Duty  ☐ Outside Employment Extension of Police Services

**Additional Officers Involved**

Name: (Last)          (First)          Badge:          Emp. ID#          Sex:          Race:          Dist/Unit:
Duty Status:  ☐ Uniform  ☐ Non-uniform  ☐ On Duty  ☐ Off Duty  ☐ Outside Employment Extension of Police Services

Name: (Last)          (First)          Badge:          Emp. ID#          Sex:          Race:          Dist/Unit:
Duty Status:  ☐ Uniform  ☐ Non-uniform  ☐ On Duty  ☐ Off Duty  ☐ Outside Employment Extension of Police Services

Name: (Last)          (First)          Badge:          Emp. ID#          Sex:          Race:          Dist/Unit:
Duty Status:  ☐ Uniform  ☐ Non-uniform  ☐ On Duty  ☐ Off Duty  ☐ Outside Employment Extension of Police Services

Name: (Last)          (First)          Badge:          Emp. ID#          Sex:          Race:          Dist/Unit:
Duty Status:  ☐ Uniform  ☐ Non-uniform  ☐ On Duty  ☐ Off Duty  ☐ Outside Employment Extension of Police Services

---

**WITNESS INFORMATION**      Number of witnesses: _____      ☐ **SUPPLEMENTAL WITNESS LIST ATTACHED**

Name: (Last)          First:          (MI):          Sex:          Race:          Cntl# or OLN/State:

Address:          City:          State:          Zip Code:

Phone:          Relationship:          Taped/Oral Interview: ☐ Yes ☐ No

Corroborate Officer's Statement: ☐ Yes ☐ No
If No, Explain:

---

Name: (Last)          First:          (MI):          Sex:          Race:          Cntl# or OLN/State:

Address:          City:          State:          Zip Code:

Phone:          Relationship:          Taped/Oral Interview: ☐ Yes ☐ No

Corroborate Officer's Statement: ☐ Yes ☐ No
If No, Explain:

**Type of Activity by Deputy**

☐ Making Arrest   ☐ Self Defense   ☐ Defense of Other   ☐ Preventing Escape

☐ Other:

---

**Weapons Involved**

Firearm ☐     Stun Device ☐     Knife/Cutting Weapon ☐

Baton/PR/ASP ☐     Flashlight ☐   Chemical Agent ☐

Blunt Object ☐     Hands/Feet/Fist ☐

Other ☐

**\*\*Indicate "S" for SUBJECT OR "D" for DEPUTY**

---

**Injuries to Deputy (Noted or Alleged)**

☐ Head   ☐ Back   ☐ Leg   ☐ Hand   ☐ Groin   ☐ Foot   ☐ Shoulder   ☐ Buttocks   ☐ Arm

☐ Facial/Neck   ☐ Chest   ☐ Other:                    ☐ None

Treating Hospital:                          Doctor:

☐ Examined   ☐ Treated   ☐ Admitted   ☐ Released

Photos taken: ☐ Yes ☐ No   Photos taken by: ☐   Witnessed by: ☐

No. of Photos Taken :

---

**Injuries to Subject (Noted or Alleged)**

☐ Head   ☐ Back   ☐ Leg   ☐ Hand   ☐ Groin   ☐ Foot   ☐ Shoulder   ☐ Buttocks   ☐ Arm

☐ Facial/Neck   ☐ Chest   ☐ Other:                    ☐ None

Injuries Before Police Contact ☐ Yes ☐ No   Treating Hospital:                    Doctor:

☐ Examined   ☐ Treated   ☐ Admitted   ☐ Released

Voluntary Release of Medical records ☐ Obtained ☐ Refused

Request for Release of Medical Records (Form 604) Given to Facility Staff ☐ Yes ☐ No, If No, Why:

Name of Facility Staff Releasing Medical Records or Accepting Form 604: ☐

Photos taken: ☐ Yes ☐ No   Photos taken by:                    Witnessed by:

No. of Photos Taken :

Revised 09/09/10

## TYPE OF DEPLOYMENT

Taser Dart ☐    Taser (Drive-Stun) ☐    Stun Device ☐    Stun Belt ☐

**Effectiveness**
- ☐ Immobilized
- ☐ No Effect
- ☐ Partial Effect
- ☐ Faulty Equipment
- ☐ Missed

**Number of Applications**
Duration of Applications/s:
Estimated Distance
Probes removed at scene? ☐ Yes ☐ No
Probes removed by?

Taser Download By:
Unit Serial Number:
Cartridge 1 Serial #
Cartridge 2 Serial #

**Verbalization**
- ☐ Asked
- ☐ Told
- ☐ Demanded
- ☐ None
- ☐ Warned of Pending Use of Force
- Total Times:

**Subject's Noncompliance**
- ☐ Resistive Tension
- ☐ Conspicuously Ignoring
- ☐ Exaggerated Movement
- ☐ Combative/Assaultive
- ☐ Armed
- ☐ Excessive Emotional Tension
- ☐ Ceased All Movement
- ☐ Flight

**Subject's Pre-Attack Posture**
- ☐ Hand Set
- ☐ Target Glance
- ☐ Fighting Stance
- ☐ Blank Stare
- ☐ Shoulder Shift
- ☐ None
- ☐ Other:

**Contributing Factors**
- ☐ Mental/Medical Condition
- ☐ Alcohol
- ☐ Drugs
- ☐ Violent History
- ☐ None

**Initial Contact**
- ☐ Courthouse
- ☐ Domestic Violence
- ☐ Fight/Crowd Control
- ☐ Traffic Stop/Incident
- ☐ Resisting Arrest
- ☐ Investigation
- ☐ Bar/Tavern
- ☐ Investigative Stop

**Degree of Injuries**
- Fatal ............................ ☐
- Serious Visible .................. ☐
- Minor Visible .................... ☐
- Complained of Non-Visible ..... ☐
- No Visible Injuries ............. ☐
- **\*Indicate "S" for Subject or "D" for Deputy**

**Liquor Permit Premise Involved**
☐ Yes   ☐ No    If yes,
Establishment Name:
Address:
Phone:

On-Scene Supervisor Name:                Badge:              Unit:

On-Scene Time:                 Time Scene Cleared:

## COMPLETED BY INVESTIGATING SUPERVISOR

The Officer's Use of Force as reported above, is consistent with Sheriff's Office training and in conformance with Departmental polices, procedures, general orders and state law: ☐ Yes ☐ No (If no, attach supplemental form).

Supervisor's Name: _____ Badge #:    District:    Unit #:

_____    Date
Supervisor's Signature

**NOTE: In Deadly Force Investigations as provided for in Section 208.06 of General Order 208, this portion of the Use of Force Report is to be completed by C.I.S. personnel responsible for the investigation**

Revised 09/09/10

**ADMINISTRATION DISPOSITION**

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

 

                                Signature _____              Date

Watch Commander: Concur/Non-Concur            Initials _____    Date: _____

District/Unit Commander: Concur/Non-Concur    Initials _____    Date: _____

Section Commander: Concur/Non-Concur          Initials _____    Date: _____

Division Commander: Concur/Non-Concur         Initials _____    Date: _____

Reviewed by Internal Affairs Section: Concur/Non-Concur    Initials _____    Date: _____

Reviewed by Chief Deputy: Concur/Non-Concur    Initials _____    Date: _____

Sheriff's Review: ☐ Approved   ☐ Referred

_____

Sheriff's Signature

_____

Date

**Attached Forms (Check all, Which apply)**

☐ Offense Report  ☐ CAD Printout  ☐ Radio Traffic  ☐ 911 Call  ☐ Medical Records  ☐ Form 604 (Copy)

☐ Media Release  ☐ BWC Report/s  ☐ Photographs  ☐ Other: _____

**NARRATIVE:**



Revised 09/09/10

## HAMILTON COUNTY SHERIFF'S OFFICE
## ELECTRONIC STUN DEVICE
## INCIDENT REPORT

Subject _____

Cnti# _____

Date _____

Time _____

Location _____

Mark location of barbs on body outline for each cartridge deployment. Use #1 for cartridge 1 and #2 for cartridge 2, etc.

Mark location on body outline for drive stun location using the letters DS.

Utilize the "click and drag" function with the icons below.

# HAMILTON COUNTY SHERIFF'S OFFICE
## SUPPLEMENTAL/ADDENDUM

IA#

Revised 09/09/10

# HAMILTON COUNTY SHERIFF'S OFFICE
# SUPPLEMENTAL WITNESS LIST

Name: (Last)                    (First)                    (MI)        Sex:        Race:        Cntl# or OLN/State:
Address:                                                               City:                                Zip:
Phone:              DOB:                        Relationship:
Taped Interview: ☐ Yes ☐ No
Corroborate Officer's Statement:     ☐ Yes      ☐ No
If No, explain:

---

Name: (Last)                    (First)                    (MI)        Sex:        Race:        Cntl# or OLN/State:
Address:                                                               City:                                Zip:
Phone:              DOB:                        Relationship:
Taped Interview: ☐ Yes ☐ No
Corroborate Officer's Statement:     ☐ Yes      ☐ No
If No, explain:

---

Name: (Last)                    (First)                    (MI)        Sex:        Race:        Cntl# or OLN/State:
Address:                                                               City:                                Zip:
Phone:              DOB:                        Relationship:
Taped Interview: ☐ Yes ☐ No
Corroborate Officer's Statement:     ☐ Yes      ☐ No
If No, explain:

---

Name: (Last)                    (First)                    (MI)        Sex:        Race:        Cntl# or OLN/State:
Address:                                                               City:                                Zip:
Phone:              DOB:                        Relationship:
Taped Interview: ☐ Yes ☐ No
Corroborate Officer's Statement:     ☐ Yes      ☐ No
If No, explain:

---

Name: (Last)                    (First)                    (MI)        Sex:        Race:        Cntl # or OLN/State:
Address:                                                               City:                                Zip:
Phone:              DOB:                        Relationship:
Taped Interview: ☐ Yes ☐ No
Corroborate Officer's Statement:     ☐ Yes      ☐ No
If No, explain:

---

Name: (Last)                    (First)                    (MI)        Sex:        Race:        Cntl # or OLN/State:
Address:                                                               City:                                Zip:
Phone:              DOB:                        Relationship:
Taped Interview: ☐ Yes ☐ No
Corroborate Officer's Statement:     ☐ Yes      ☐ No
If No, explain:

---

Name: (Last)                    (First)                    (MI)        Sex:        Race:        Cntl # or OLN/State:
Address:                                                               City:                                Zip:
Phone:              DOB:                        Relationship:
Taped Interview: ☐ Yes ☐ No
Corroborate Officer's Statement:     ☐ Yes      ☐ No
If No, explain:

Revised 09/09/10