

# FINAL REPORT
## APRIL 29, 2015

# TABLE OF CONTENTS

Letter from the Co-Chairs .......................................................................................................3

Letter from the Honorary Chairs .............................................................................................4

Members of the Task Force ......................................................................................................5

Task Force Staff/Acknowledgements .......................................................................................6

Overview .................................................................................................................................7

Executive Summary ............................................................................................................... 12

Recommendations ................................................................................................................. 13

Strategies to Strengthen Trust between Communities and Law Enforcement ..................... 26

Individual Task Force Recommendations

    Sara Andrews .................................................................................................................. 30

    Officer Brian S. Armstead ............................................................................................... 33

    Tannisha D. Bell ............................................................................................................. 44

    Philip E. Cole .................................................................................................................. 50

    Representative Tim Derickson ......................................................................................... 53

    Dr. Ronnie Dunn ............................................................................................................ 59

    Senator Cliff K. Hite ....................................................................................................... 74

    Reverend Damon Lynch III ............................................................................................. 89

    Bernie Moreno ............................................................................................................... 93

    Councilwoman Amy Murray ...........................................................................................102

    Bishop George Murry .....................................................................................................114

    Chief Michael J. Navarre ...............................................................................................124

    Honorable Ronald J. O'Brien .........................................................................................139

    Chairman Andre T. Porter ..............................................................................................142

    Representative Alicia M. Reece .......................................................................................147

    Honorable Tom Roberts .................................................................................................152

    Sheriff Vernon P. Stanforth ............................................................................................159

    Honorable Evelyn Lundberg Stratton .............................................................................174

    Senator Sandra Williams ...............................................................................................178

Appendix A: Executive Order 2014-06K ................................................................................192

Appendix B: Summaries of Task Force Public Forums ...........................................................196

Appendix C: Written Testimony ............................................................................................229

Appendix D: Emails/Social Media .........................................................................................388

Appendix E : Supporting Documentation ..............................................................................464

Letter from the Co-Chairs



# OHIO TASK FORCE ON COMMUNITY-POLICE RELATIONS

*Honorary Co-chair*
HONORABLE GEORGE V. VOINOVICH

*Honorary Co-chair*
HONORABLE LOUIS STOKES

*Honorary Co-chair*
HONORABLE EVELYN LUNDBERG STRATTON

*Co-chair*
NINA TURNER
Former Ohio Senator

*Co-chair*
JOHN BORN
Director, Ohio Dept. Of Public Safety

SARA ANDREWS
Executive Director, Ohio Criminal Sentencing
Commission

BRIAN S. ARMSTEAD
Officer, Akron P.D.

TANNISHA D. BELL
Assistant Attorney General

PHILIP E. COLE
Executive Director, Ohio Association
of Community Action Agencies

TIM DERICKSON
Representative

DR. RONNIE DUNN
Associate professor, Cleveland State University

CLIFF K. HITE
Senator

REV. DAMON LYNCH III
Senior Pastor, New Prospect Baptist Church

BERNIE MORENO
President, Bernie Moreno Companies

ANTHONY MUÑOZ
NFL Hall of Famer

AMY MURRAY
Cincinnati Councilwoman

MOST REV. GEORGE MURRY
Bishop, Roman Catholic Diocese of Youngstown

MICHAEL J. NAVARRE
Chief, Oregon P.D.

PROSECUTOR RONALD J. O'BRIEN
Prosecutor, Franklin Co.

ANDRE T. PORTER
Chairman, Public Utilities Commission of Ohio

ALICIA REECE
Representative

TOM ROBERTS
Ohio Civil Rights Commission

VERNON P. STANFORTH
Sheriff, Fayette Co.

SANDRA WILLIAMS
Senator

April 29, 2015

Governor Kasich:

On behalf of the members of the Ohio Task Force on Community-Police Relations, and the citizens of Ohio, we thank you for the opportunity to serve as the Co-Chairs leading this most important charge of bridging the divide between the community and law enforcement. Over the last four months, it was an honor to serve with the other 22 extraordinary members of the Task Force who volunteered their time in service to this state.

Following this letter are the recommendations, research, supporting documentation, and most importantly, the underlying passion and intent of the citizens of Ohio, Task Force members, experts, and others who provided testimony and information to the Ohio Task Force on Community-Police Relations. There was open and honest dialogue about the challenges and pathways of opportunity. We heard the inspiring voices of our citizens and received their recommendations reflecting their hopes, fears and expectations. This report is very reflective of those voices. We listened.

In compliance with your Executive Order, the Task Force explored the cause of the fractured relationships between communities and law enforcement, examined strategies to strengthen trust between them in order to resolve the underlying causes of friction, and now provide you a report with recommendations and best practices available to communities. While the many pages of this report reflect the comprehensive nature of our collective examination, it is important to note that there was balance within all we heard, read, and received that resulted in the enclosed seven key areas. How these recommendations may be implemented are varied, but it is abundantly clear, as reflected in the recommendations, what needs to be done.

The recommendations, testimony, supporting documentation, and best practices outlined serve as a blueprint for action. It is our collective moral obligation to seek reconciliation, develop relationships, further understanding and build trust. These efforts require the unrelenting commitment of all Ohioans from all walks of life. This report serves as a strong foundation, as we move forward building the collective change that will make an even stronger Ohio.

Respectfully submitted,

Senator Nina Turner
Co-Chair

Director John Born
Co-Chair

Letter from the
Honorary Chairs



# OHIO TASK FORCE ON COMMUNITY-POLICE RELATIONS

*Honorary Co-chair*
HONORABLE GEORGE V. VOINOVICH

*Honorary Co-chair*
HONORABLE LOUIS STOKES

*Honorary Co-chair*
HONORABLE EVELYN LUNDBERG STRATTON

*Co-chair*
NINA TURNER
Former Ohio Senator

*Co-chair*
JOHN BORN
Director, Ohio Dept. Of Public Safety

SARA ANDREWS
Executive Director, Ohio Criminal Sentencing Commission

BRIAN S. ARMSTEAD
Officer, Akron P.D.

TANNISHA D. BELL
Assistant Attorney General

PHILIP E. COLE
Executive Director, Ohio Association of Community Action Agencies

TIM DERICKSON
Representative

DR. RONNIE DUNN
Associate professor, Cleveland State University

CLIFF K. HITE
Senator

REV. DAMON LYNCH III
Senior Pastor, New Prospect Baptist Church

BERNIE MORENO
President, Bernie Moreno Companies

ANTHONY MUÑOZ
NFL Hall of Famer

AMY MURRAY
Cincinnati Councilwoman

MOST REV. GEORGE MURRY
Bishop, Roman Catholic Diocese of Youngstown

MICHAEL J. NAVARRE
Chief, Oregon P.D.

PROSECUTOR RONALD J. O'BRIEN
Prosecutor, Franklin Co.

ANDRE T. PORTER
Chairman, Public Utilities Commission of Ohio

ALICIA REECE
Representative

TOM ROBERTS
Ohio Civil Rights Commission

VERNON P. STANFORTH
Sheriff, Fayette Co.

SANDRA WILLIAMS
Senator

April 29, 2015

Governor Kasich:

We thank you for the opportunity to serve as Honorary Chairs of the Ohio Task Force on Community-Police Relations to help Ohio find better ways to unite our communities and police. Most importantly, however, we want to thank you for providing Ohio's citizens with an unprecedented opportunity to express their opinions, frustrations, hopes, fears, ideas, and recommendations. It is a model of democracy.

As you know, we provided guidance to the Task Force Co-Chairs before and after each public forum and the subsequent business meetings of the Task Force. We provided ideas, recommended presenters and national experts, and our own reflections based on our life experiences. We were very impressed with the knowledge and the diverse experience of the Task Force members. The Task Force truly represented the great diversity of our state. Yet, we were most inspired by the people's voices and their desire to share their past experiences and knowledge in order to enrich our collective futures and to better Ohio.

The resulting report and recommendations, which resulted from the Task Force's diligence, serves as plan for action. Ohioans should be very proud and optimistic.

Sincerely,

Louis Stokes, Member, United States House of Representatives (retired)

Evelyn Lundberg Stratton, Justice, Ohio Supreme Court (retired)

George V. Voinovich, Senator, United States Senator (retired)

Members of the Task Force

# TASK FORCE MEMBERS

The Task Force was made up of the following members:

- The Honorable George V. Voinovich of Cleveland (Cuyahoga Co.), former U.S. senator, governor and mayor of Cleveland, Honorary Co-Chair;
- The Honorable Louis Stokes of Beachwood (Cuyahoga Co.), former member of Congress, Honorary Co-Chair;
- The Honorable Evelyn Lundberg Stratton of Columbus (Franklin Co.), former Ohio Supreme Court justice, Honorary Co-Chair;
- Director John Born of Lancaster (Fairfield Co.), Ohio Department of Public Safety, Co-Chair;
- The Honorable Nina Turner of Cleveland (Cuyahoga Co.), former Ohio senator, Co-Chair;
- Officer Brian S. Armstead of Akron (Summit Co.), Akron Police Department and member of the Fraternal Order of Police;
- Philip E. Cole of Columbus (Franklin Co.), executive director, Ohio Association of Community Action Agencies;
- Dr. Ronnie Dunn of Cleveland (Cuyahoga Co.), Cleveland State University associate professor, member of the NAACP Criminal Justice Committee;
- The Reverend Damon Lynch III of Cincinnati (Hamilton Co.), senior pastor, New Prospect Baptist Church;
- Bernie Moreno of Westlake (Cuyahoga Co.), president, Bernie Moreno Companies;
- Anthony Munoz of Cincinnati (Hamilton Co.), former Cincinnati Bengals football player, member of the Pro Football Hall of Fame;
- Councilwoman Amy Murray of Cincinnati (Hamilton Co.);
- The Most Reverend George Murry of Youngstown (Mahoning Co.), Bishop of the Roman Catholic Diocese of Youngstown;
- Chief Michael J. Navarre of Toledo (Lucas Co.), currently with the Oregon Police Department, formerly with the Toledo Police Department, member of the Ohio Association of Chiefs of Police;
- The Honorable Ronald J. O'Brien of Columbus (Franklin Co.), Franklin County Prosecutor;
- Andre T. Porter of Gahanna (Franklin Co.), Public Utilities Commission of Ohio;
- Sheriff Vernon P. Stanforth of Washington Court House (Fayette Co.), member of the Buckeye State Sheriffs' Association;
- The Honorable Tom Roberts, Ohio Civil Rights Commission , Ohio Conference and Dayton Unit of NAACP; Political Action chairman;
- Senator Cliff K. Hite of Findlay (Hancock Co.), Senate President designee
- Senator Sandra Williams of Cleveland (Cuyahoga Co.), Senate Minority Leader designee
- Representative Tim Derickson of Hanover Twp. (Butler Co.), House Majority designee
- Representative Alicia M. Reece of Cincinnati (Hamilton Co.), president, Ohio Legislative Black Caucus, House Minority Leader designee
- Sara Andrews of Columbus (Franklin Co.), Chief Justice's designee
- Tannisha D. Bell of Columbus (Franklin Co.), Attorney General's designee

Task Force Staff/
Acknowledgements

# Task Force Staff

The Office of Criminal Justice Services, led by Executive Director Karhlton F. Moore, provided administrative services, funds, staff, and other support services as necessary for the Task Force to carry out its mission:

| | | |
|---|---|---|
| Jacquetta Al-Mubaslat | Anjolie Gordon | Dr. Lisa Shoaf |
| Katya Bubeleva | Gary Heath | Jamie Stanley |
| Walter Brown | Jim Luebbers | Tony Veljanoski |
| Oliver Corbin | Karhlton F. Moore | Alan Wedd |
| Melissa Darby | Kristina Nicholson | |
| Carol A. Ellensohn | Tim Sexton | |

## Acknowledgements

The following experts provided testimony during the public forums or submitted written testimony to the Task Force for consideration:

Lt. Colonel David Bailey, Cincinnati Police Department

Attorney Barbara Bolling, President of the Indiana NAACP Conference

U.S. Attorney Steven Dettelbach, Northern District of Ohio

Attorney Alphonse Gerhardstein, Cincinnati, Ohio

Professor David Kennedy, Director the of Center for Crime Prevention and Control at the John Jay College of Criminal Justice (New York)

Sergeant Anita Madison, Toledo Police Department

Superintendent Garry F. McCarthy, Chicago Police Department

Attorney Samuel Shamansky, Cincinnati, Ohio

Professor Samuel Walker, University of Nebraska at Omaha

Lieutenant Mike Woody (Retired), Akron Police Department and President of Crisis Intervention Team (CIT)

The Task Force received support from other divisions of the Department of Public Safety, including the Director's Office, the Ohio State Highway Patrol, Communications, Legal and Fiscal. The following individuals from the Department of Public Safety assisted the Task Force in its work: Joe Andrews, Tim Bates, Major Michael Black, Andy Bowsher, Kristen Castle, Mark Contosta , Melva Dodd, China Dodley, Anna Firestone, Heather Frient, Chief of Staff Mark Gibson, Jeff Grayson, Barb Hamilton, Captain Gene Jarvi, Rick Imhoff , Kathy Ludowese, Barbara Milks, Assistant Director Joe Montgomery, Teresa Peters, Jessica Pierson, Colonel Paul Pride, Sergeant Jeff Reynolds, Tom Stiver, Kandee Tinkham, Holly Welch, Kelli Whalen, Renelda Woods, and Greg Wyatt.

The following universities hosted the Task Force's public forums and business meetings: Cleveland State University, Central State University, University of Toledo, University of Cincinnati, and The Ohio State University. The Task Force also received support from Cincinnati State Technical and Community College.

Overview

# OVERVIEW

The Ohio Task Force on Community-Police Relations was formed by Governor John Kasich on December 12, 2014, to address the fractured relationships that exist between some communities and the police dedicated to serving them. The Task Force was formed after the tragic deaths of Tamir Rice in Cleveland and John Crawford III in Beavercreek. The deaths of these two Ohioans along with a number of other events from across the country served as the impetus for the creation of the Task Force. These events collectively, and the protests and public reaction that followed, also serve as a reminder of the difficult past that many people, have experienced with law enforcement. While these events from across the country are not indicative of the overwhelming majority of outstanding law enforcement professionals, they demonstrate the need for all of us to work together in order to move forward.

The charge of the Task Force was threefold:

1. To explore the cause of fractured relationships that exist between some law enforcement and the communities they serve;
2. To examine strategies to strengthen trust between communities and law enforcement in order to resolve the underlying causes of friction;
3. To provide the Governor with a report including recommendations about best practices available to communities.

The overarching goal of the work of this Task Force is to ensure the safety and security of Ohio's citizens. This basic tenet applies equally to the dedicated men and women of law enforcement as well as every citizen of this state. Communities are best able to thrive when their residents feel safe. One of the most effective ways to ensure that communities are safe is for law enforcement and citizens to work together to solve and prevent problems. There are ample examples of this type of collaborative effort in many communities across this state.

While the Task Force was formed in response to several tragic events in our state, it would be irresponsible to paint all law enforcement officers in a negative light. This state is overwhelmingly served by outstanding law enforcement officers who put their lives on the line every day to ensure our safety. They deal daily with difficult and dangerous situations and are in many instances the best part of a person's worst day. It takes a special person to be a good law enforcement officer. One goal of this report is to provide support to officers in order to enhance tools, training and the understanding they need and deserve to keep them and their fellow citizens safe, and to aid in enhancing their relationships with the communities they serve. At the end of each day, we want our law enforcement officers and the public to be able to go home to their families.

It is also important to listen to the concerns of our citizens, and to be informed by their collective experiences. Input for the development of this report comes from Ohio citizens and experts in the field. The public was asked to provide input in a variety of ways. A listening tour consisting of four public forums was held at the following venues: Cleveland State University; Central State University; University of Toledo and the University of Cincinnati. A public website was created to allow citizens to provide comments. Additionally, the hashtag #beheardohio was created in order to allow the public to participate through social media.

# OVERVIEW



# OVERVIEW

Many citizens provided specific instances when they felt mistreated and/or disrespected by law enforcement. The Task Force heard the difficult and emotional testimony of parents who lost their children during interactions with law enforcement. One young man's testimony at the public forum in Toledo was particularly compelling. He began his comments by commenting on the harmful and short-sided "stop snitching" campaign that unfortunately exists in too many neighborhoods in Ohio and across the country. He then said that law enforcement also engages in its own form of "stop snitching" by refusing to tell on fellow officers who engage in inappropriate behavior.

At each public forum, attendance ranged from 100 to nearly 200 citizens. Speakers providing testimony included persons directly or indirectly impacted by law enforcement, students and faculty, elected officials, and law enforcement officers, among others. Several common themes emerged from the testimony of the public speakers.

1. **This Task Force is important and the members must take their charge seriously.** The creation of this Task Force was felt to be long overdue. There was an overall expression of appreciation that an effort is being made to address this difficult issue; however, skepticism was expressed by some as to whether the Task Force can truly make a difference in instilling change in law enforcement at the local level.

2. **Law Enforcement must be engaged with the community.** Universally, it was felt that the police need to be more engaged with communities in which they work, and more than one citizen suggested they should live in the communities in which they work. Many cited the need for officers to better reflect the communities which they serve, but it was noted by Chief McCarthy of the Chicago Police Department that any officer should be able to go into any community and police it fairly and effectively. Several citizens also noted the need for law enforcement to have more positive interactions with youth at an early age so that these children begin to see police as someone they can trust. Citizens also noted that the community must make more of an effort to engage with law enforcement, and that mechanisms need to be in place to engage in open, honest dialogue.

3. **The community perceives race to be an issue among some police officers.** Speakers at the public forums identified racism as underlying the fractured relationship between the community and police. Numerous examples were provided during public testimony to suggest that individuals in minority communities, compared to other communities, experience disparity in how they are treated by police.

4. **Citizens perceive law enforcement to be procedurally unjust.** Citizens spoke of being treated unfairly and disrespectfully by law enforcement, being subject to unspoken 'rules' to which they must abide, and being denied a voice when interacting with police. Over time, these factors generate citizens' perceptions of a procedurally unjust justice system. As a result, law enforcement officers are no longer viewed as legitimate authority figures. Citizens noted that transparency in agency policies and procedures is a critical step toward being viewed as being neutral and fair. In order for law enforcement to be viewed as just and fair, citizens were also adamant that officers be held accountable for their actions—administratively and criminally. This

# OVERVIEW

sentiment for accountability was also echoed regarding the judicial process.

5. **Training and resources for law enforcement are critical.** Citizens realize that officers need resources, including equipment, in order to carry out their jobs effectively and safely. Training was identified as essential, particularly in the areas of threat assessment and de-escalation techniques, and in identification and interaction with persons who have a mental illness or a disability. Mike Woody, president of CIT (Crisis Intervention Team) International, stressed that while it is important for all officers to take part in the basic training on mental illness that is currently provided by the Ohio Peace Officer Training Academy (OPOTA), only a select few within each agency should be specially trained and designated as crisis intervention team officers to handle mental illness crisis calls. Mental health screenings and counseling should also be available for officers who may experience mental health issues themselves.

Task Force members generated their recommendations based, in part, on the invaluable information they received from these venues.



Above: The Ohio Task Force on Community-Police Relations assembles for the first public forum held at Cleveland State University on Jan. 20, 2015.

Right: Barbara A. Bolling, President of the Indiana NAACP Conference, speaks during the public forum held at Central State University on Feb. 9, 2015.



# OVERVIEW





Above: The task Force on Community-Police Relations listens to public testimony during the public forum held at the University of Toledo on Feb. 26, 2015.

Right: Sgt. Anita Madison, Toledo Police Department, speaks during the public forum held at the University of Toledo on Feb. 26, 2015.





Above: Gov. John R. Kasich addresses the Ohio Task Force on Community-Police Relations at the Ohio Union on March 16, 2015.

Left: Superintendent Garry F. McCarthy, Chicago Police Department, speaks during the public forum held at the University of Cincinnati on March 9, 2015.

Executive Summary

# EXECUTIVE SUMMARY

**Accountability and oversight:** Action must be taken to ensure that agencies and officers will be held accountable by the communities they serve.

**Community education:** Create methods to establish the public's understanding of police policies and procedures and recognition of exceptional service in an effort to foster support for the police. Police officers and community members must become proactive partners in community problem solving.

**Community involvement:** There must be ongoing efforts by law enforcement and the community to build trust and strengthen relationships.

**Grand jury process:** The grand jury process shall be reviewed by the Supreme Court of Ohio, the Ohio Constitutional Modernization Commission, or appropriate governmental authority, as it applies to the use of force.

**Recruiting and hiring:** The State of Ohio shall require all law enforcement agencies to adopt, at a minimum, hiring policies. The State will develop a model policy on hiring to be used by law enforcement agencies.

**Standards:** The State of Ohio shall require all law enforcement agencies to adopt, at a minimum, policies including, but not limited to, the use of deadly force, with the goal of enhancing the protection of all lives. The State will develop a model policy to be used by law enforcement agencies.

**Training:** In order to allow officers to do their jobs safely and effectively, and to protect the public, the State of Ohio shall require a greater emphasis on, and investment in, training.

Recommendations

# RECOMMENDATIONS

**Accountability and oversight: Action must be taken to ensure that agencies and officers will be held accountable by the communities they serve.[1]**

Public and expert testimony recommendations

A clear and consistent theme throughout all four public forums was the need for law enforcement agencies and officers to be accountable for their actions. Transparency is a key element of accountability, and both public and expert speakers stated that the posting of policies and procedures, crime statistics, and critical incident information is a necessary step to becoming more transparent. Agencies should clearly articulate the process for filing complaints, and there should be an independent body, such as a citizen review board or a police monitor, to provide oversight of the complaint process. The speakers noted that when officers engage in misconduct, they should be held administratively, and, if appropriate, criminally accountable. Management needs to ensure that their officers are following procedure, and must use discipline when they are not. Agencies must have more authority to terminate bad officers.

Public and expert testimony discussed the importance of eliminating racially-biased policing. Agencies should get rid of policing strategies that disproportionately impact minorities, such as heavy arrests and sweeps, stops, specialized enforcement units, and quotas. Members of the public noted that Ohio should have anti-profiling legislation.

The timely, accurate, and ongoing release of information to the public on critical incidents is another very important step in being seen as transparent, and all law enforcement agencies should have a policy that emphasizes this. The use of body cameras by police departments was brought up by some citizens as a means of providing transparency to improve accountability, while others discussed the need to look closely at the policies and procedures of their use, particularly with regard to privacy and storage issues.

Public and expert speakers also spoke of the importance of having specially trained officers to interact with persons who have mental illness and other disabling conditions, as agencies must be accountable to all members of their community. Roughly 10 percent of the calls for which officers are dispatched involves a mentally ill person in crisis, and agencies can be found 'deliberately indifferent' by not having the ability to effectively interact with this population.

Proper oversight is a vital tool for gauging officer accountability. Oversight enables agencies to validate and reward excellent officer service as well as to identify and correct officer misbehavior. Community members stressed the importance of independent and unbiased investigations of officer misconduct, including officer-involved shootings. All officer-involved shootings should be investigated, and several suggestions were made regarding how this should be done, including the creation of legislation similar to Wisconsin Bill 409, which appoints a panel to investigate all such incidents.

Data collection is a key element of effective oversight, and both community and expert speakers identified the importance of statewide and local data collection efforts. The state must collect data on officer-involved shooting incidents in order to have a clear picture of the nature and extent of such incidents in Ohio. Agencies must collect data on officer misconduct and use of force incidents in order to

---

[1]    Please note that recommendations are not listed in order of priority.

# RECOMMENDATIONS

identify and correct problematic officer behaviors. The public also suggested that agencies document all officer interactions with people who have disabilities or mental illness.

Public speakers also discussed the importance for agencies to ensure their officers are mentally healthy, given the stressful nature of their job. They suggested that agencies provide psychological and emotional counseling for their officers, as well as ways to manage and reduce stress. Supervisors must monitor their officers to ensure their continued mental health and well-being.

Task Force recommendations

The Task Force took all these valuable suggestions into account in developing their recommendations on accountability and oversight. Making information available to the public was seen by many Task Force members as an important step in increasing transparency. Body camera usage was another topic which a few Task Force members felt warranted further review, including consideration of their mandatory use. Several members commented on the need for specialized law enforcement units to interact with persons experiencing a mental health crisis, as officers must be accountable to all citizens.

Many Task Force recommendations involved data collection on the local or state level. Some Task Force members proposed the agency use of an early intervention information system as a data tool for anticipating officer misbehavior and preemptively intervening to correct it. Other recommendations included the creation of a statewide database of decertified officers, and data collection on racially-biased policing.

There were several recommendations offered by individual Task Force members that focused on accountability and oversight. One Task Force member recommended establishing best practices for officer discipline, and requiring law enforcement agencies to keep citizens who submit officer complaints to be kept abreast of the status of the internal affairs investigation. Another member recommended that all officers involved in a shooting or critical traffic accident submit to a blood draw, which could be used during the course of an investigation. One Task Force member recommended agency implementation of a 'no hands on' policy with regard to police contacts.

In addition to focusing on oversight of officer behaviors, Task Force members also stressed the importance of agency oversight regarding the mental and emotional well-being of its officers, which, when left unchecked, can compromise officer and citizen safety.

Multiple Task Force members recommended the following:

• Creating an ongoing body to continue to review the issue of community-police relations, and to monitor the implementation and progress of the final recommendations that come out of the Task Force. This body should include a cross-section of community members, law enforcement, academia, elected officials, and clergy.

• Using an outside prosecutor and an independent special investigation unit to ensure that police-involved uses of deadly force cases are conducted in an unbiased and proper manner.

• Creating an independent body for local jurisdictions, such as a monitor or a citizen review board, to investigate incidents alleging police misconduct, or in the absence of such a body, use the

# RECOMMENDATIONS

resources of a state agency to conduct a civil/administrative investigation.

- Posting all departmental policies, including discipline policies, and crime statistics to make them easily accessible to the public, thus increasing their transparency.

- Creating specialized crisis units or officers (referred to as Crisis Intervention Teams, or CIT) to respond to mental health crisis situations, as it is vital for law enforcement agencies to be able to serve and protect persons who have mental illness.

- Implementing and regularly monitoring a standardized early intervention information system to anticipate and identify patterns of problematic behavior, in order to correct performance problems before they result in a serious form of misconduct.

- Creating a statewide database through which law enforcement agencies are required to report on all officer-involved shootings, in order to understand the nature and extent of such incidents. This database should be examined and reported on annually.

- Thoroughly investigating body camera policies and procedures to develop best practices for their use by law enforcement. Body cameras are being called for by the public as a tool to increase the transparency of law enforcement-citizen interaction; however, there are many unresolved questions regarding their use, including issues of privacy, storage capacity and duration, access to records, mandatory versus discretionary camera use, and cost, among others.

- Enacting anti-profiling legislation at the state level, to instill trust in the legitimacy of law enforcement. Such legislation should prohibit a law enforcement agency or official from targeting or stopping motorists or pedestrians on the basis of race, ethnicity, minority group status, religious affiliation, gender identity or sexual orientation, unless that status is used in combination with other identifying factors. The legislation should include data collection and annual training on biased policing.

- Collecting social demographic data on all involuntary, police-initiated contacts with citizens whether within the context of motor vehicle traffic, pedestrian, or bicyclist stops. Demographic data should be recorded on all vehicle stops where a warning is issued and on stops where a citation is issued in lieu of arrest. The data should be reported to the Ohio Attorney General's Office which will be responsible for analyzing and reporting on the data annually to the public. If an agency or officer is found to be engaging in discriminatory policing, remedial action should be taken.

- Creating a statewide database to allow law enforcement agencies to submit a detailed report whenever an officer is terminated or resigns in lieu of termination. This database shall include a description of the alleged misconduct and shall be available to any other law enforcement agency in the state.

- Offering officers access to trained professionals who can provide appropriate support and who can assess officers when deemed necessary, in order to protect and ensure their mental health and well-being.

- Enacting legislation that prohibits the use of quotas by all law enforcement agencies, given that the use of quotas can disproportionately impact minority communities and erode their trust in law enforcement.

# Recommendations

**Community education:** Create methods to establish the public's understanding of police policies and procedures and recognition of exceptional service in an effort to foster support for the police. Police officers and community members must become proactive partners in community problem solving.

Public and expert testimony recommendations

In the forums, the public noted that not only is it important for law enforcement to understand the community in which they work, but it is also important for the public to understand the work that the officers do to keep the community safe. Increasing mutual understanding builds trust and respect and strengthens the community-police relationship. Several suggestions focused on creating positive educational interactions between police and youth. Teaching the community, and especially youth, the appropriate ways to interact when approached by an officer was viewed as valuable, and conversely, citizens also suggested that officers should be trained on how to better interact with the community they serve. It was also suggested that law enforcement teach the community about strategies they can use to make their communities safer.

Task Force member recommendations

Based on the community's input, the Task Force developed several recommendations to raise the community's awareness of law enforcement's daily activities. Specific emphasis was placed on positive engagement with youth in the community.

Multiple Task Force members recommended the following:

- Identifying and/or expanding appropriate and effective policing strategies, including community policing strategies, for use by local law enforcement, as heavy enforcement and arrests can increase community distrust of police, eroding their legitimacy. Some specific recommendations called for working with communities to develop culturally-specific strategies, and reviewing strategies of other communities that have successfully implemented community policing strategies, such as Cincinnati and Los Angeles.

- Teaching community members, including youth, how to interact with police, as unnecessary engagement or escalation of force between law enforcement and citizens can result if citizens do not know how to appropriately interact with police. A variety of ways were proposed to achieve this, including the development of informational cards, the creation of a media campaign, and the teaching of this information in driver education classes.

- Allowing community members, including youth, to view videos of officer stops and take part in law enforcement ride-alongs and simulation exercises, followed by discussions with law enforcement regarding their perceptions and experiences of these activities, to increase their awareness and understanding of law enforcement officers' daily activities and duties.

- Having communities review the Department of Justice findings of cities such as Cincinnati, Cleveland, Philadelphia, Ferguson, and others, to learn from them the steps they took to improve community-police relations.

# RECOMMENDATIONS

- Creating public service announcements for local media outlets that focus on improving understanding between the community and police.

# RECOMMENDATIONS

**Community involvement: There must be ongoing efforts by law enforcement and the community to build trust and strengthen relationships.**

<u>Public and expert testimony recommendations</u>

Speakers at each of the four public forums clearly articulated the need for law enforcement to be engaged with the community, and public and expert testimony revealed ways in which this could be accomplished. Suggestions included requiring the officer to be from the community in which he or she works, or having officers assigned to neighborhoods for long periods of time to develop relationships with residents and business owners. Allowing officers to volunteer in the communities in which they work was another idea brought forth. Public and expert speakers also noted the importance of ensuring that the composition of a law enforcement agency is reflective of the community it serves. Several suggestions focused on creating positive interactions between police and youth, such as offering school-based and community-based programs that focus on prevention and anti-violence, developing a law enforcement mentoring program with youth, and encouraging law enforcement to have a presence in schools and school-related events that goes beyond enforcement.

As some citizens and law enforcement officers noted, the community-police relationship is a two-way street, and both parties need to make an effort to reach out to one another. Suggestions were made regarding venues in which citizens and law enforcement could come together. The development of neighborhood safety plans was offered as a way to promote community involvement in developing strategies to address crimes.

<u>Task Force recommendations</u>

The Task Force expanded upon these suggestions in generating recommendations. Their recommendations focused on ways to encourage law enforcement officers to be engaged with their community and their schools, as well as the need to increase funding for the purpose of hiring community policing officers. One Task Force member recommended the establishment of youth advisory councils to allow youth to have a voice in the law enforcement process and to help bring up issues that need to be addressed in their communities. Another Task Force member recommended the development of a statewide campaign aimed at both the community and law enforcement that targets acts of discrimination, bullying, workplace hostilities, and violence, similar to the Department of Homeland Security's "If You See Something, Say Something" program.

Multiple Task Force members recommended the following:

- Encouraging ongoing dialogue among local community members, law enforcement, and other representatives of the criminal justice system, including judges, using roundtable discussions, community events, block watch meetings, and other organized gatherings.

- Increasing opportunities for law enforcement to interact positively with youth in the community and in schools, through appropriate and effective programming, including mentorships, as youth are often the focus of law enforcement activity.

# RECOMMENDATIONS

**Grand jury process: The grand jury process shall be reviewed by the Supreme Court of Ohio, the Ohio Constitutional Modernization Commission, or appropriate governmental authority, as it applies to the use of force.**

Public and expert testimony recommendations

Speakers at the public forums expressed concerns about the grand jury process. To many, the grand jury process is perceived as unfair on several levels. Officers and prosecutors work together, and thus, investigations of officer misconduct by the prosecutor are seen as biased. Grand juries are closed to the public, and for this reason are perceived as secretive. One public speaker suggested educating the community on the grand jury process, and others discussed the need to make the details of the grand jury proceedings available to the public at their conclusion. Another member of the public recommended disallowing officers to waive their right to a full jury in an officer-involved death. In addition to holding law enforcement officers accountable for their behaviors, some suggested that there needs to be more prosecutorial accountability, and that perhaps there should exist an oversight committee for prosecutors, similar to that which has been recommended for law enforcement.

Task Force recommendations

While the focus of the Task Force was specific to community-police relations, it became evident during the public forums that further analysis of the judicial process, and in particular the grand jury process, is necessary. With this in mind, the Task Force developed their recommendations. Several recommendations were offered by individual members. One Task Force member recommended amending Rule 6 of the Rules of Criminal Procedure to permit the Presiding or Administrative Judge of the court of common pleas upon request of the prosecutor to be present and preside over grand jury proceedings when it is in the interest of justice, with the judge bound by secrecy as well, unless the court orders otherwise. Another Task Force member recommended abolishing the grand jury and replacing it with a preliminary hearing, which is a transparent and open process. A Task Force member suggested judicial budgets should be removed from local governance to elevate judges away from local influences. Another member encouraged diversity in the composition of grand juries, as well as educating the grand jury about its right to ask for more information and witnesses.

Multiple Task Force members recommended the following:

- Judicial oversight of the grand jury process.
- Creating an open and transparent grand jury process by authorizing the release of the grand jury testimony when, in the interest of justice, there is a particularized need, and the safety of witnesses would not be impacted.
- Requiring a grand jury to review all officer-involved deaths or serious injuries, in the absence of an independent investigation.

# RECOMMENDATIONS

**Recruiting and hiring:** **The State of Ohio shall require all law enforcement agencies to adopt, at a minimum, hiring policies. The State will develop a model policy on hiring to be used by law enforcement agencies.**

Public and expert testimony recommendations

Members of the community stressed the importance of having a law enforcement agency whose officers reflect and relate to the community they serve. At the same time, they recognized the difficulty some communities have in recruiting minority and female officers. Posting an agency's diversity statistics was seen as a necessary step to identify discrepancies between an agency and its community. Numerous tactics were suggested to increase the recruiting and hiring of female and minority candidates. Some also felt it important to hire officers who live in the communities they would serve. Ensuring the hiring of qualified officers is important, some also mentioned screening officers for racist attitudes and behaviors.

Task Force recommendations

Task Force members concurred with the need to recruit a more diverse police force that is reflective of its community. They had several ideas on how to increase recruiting, particularly in school settings. Some offered ideas on residency incentives, and one Task Force member suggested requiring officers to live in the communities they work. Task Force members also felt changes are needed in the hiring process, particularly with regard to pre-screening and testing of candidates.

Multiple Task Force members recommended the following:

- Engaging in best practice efforts to recruit qualified, diverse persons reflective of the community—beginning in middle school and high school, and continuing in college—for those who have an interest in pursuing a career in law enforcement. Recruiting efforts should focus on female and minority candidates, and economic incentives may be used to encourage candidates to pursue a college degree. Individual Task Force members made the following suggestions:

  - Using human resource experts to validate civil service exams for job requirements and to permit appointing authorities to hire a diverse work force.

  - Broadening educational requirements to allow for non-college experiences.

  - Implementing a pre-hire education seminar or counseling process to familiarize applicants with the hiring process.

  - Increasing transparency in the hiring process by being more forthcoming when someone does not pass the background phase.

  - Providing internships for minority youth at local law enforcement agencies.

  - Providing a full scholarship to any public Ohio university for qualified minority or female candidates of urban communities, followed by a four-year commitment in law enforcement in an urban Ohio community.

  - The use of a media campaign targeting minority youth with a message about making a difference in communities through a career in law enforcement.

# Recommendations

- Creating minimum hiring, testing, and pre-screening policies for use by law enforcement agencies that include psychological assessments, including implicit bias pre-screening, physical fitness assessments, extensive character, employment, and criminal background investigations, and assessments of bias in order to ensure that candidates are physically, emotionally, and mentally fit.

- Restoring local funding sources and creating new funding sources to focus on the hiring of additional officers, so that agencies can increase the number of officers devoted to community policing.

- Providing residency incentives for hiring officers living within the jurisdiction, in order to encourage law enforcement officers to be more engaged with the community they serve.

# RECOMMENDATIONS

**Standards:** **The State of Ohio shall require all law enforcement agencies to adopt, at a minimum, policies including, but not limited to, the use of deadly force, with the goal of enhancing the protection of all lives. The State will develop a model policy to be used by law enforcement agencies.**

Public and expert testimony recommendations

Standards can help ensure behavior accountability and maintain a culture of integrity. Given the complexity of policing, speakers at the public forums called for developing policies and procedures to ensure the consistency and quality in investigating use of force. Expert testimony suggested that all agencies adopt a formal policy on de-escalation.

Task Force recommendations

In response to the public's concerns, Task Force members developed recommendations on use of force as well as the release of information to the public. Task Force members also felt it important to ensure that officers have the resources necessary to conduct their jobs safely and effectively. One Task Force member recommended requiring each agency to have a written policy regarding investigations of officer-involved deaths. Another member recommended having policies and best practices for officer discipline. One Task Force member recommended the state should set a minimum requirement for each municipality to maintain in terms of equipment, and that the state should identify cutting-edge technology that will allow officers to do their jobs better, safer, and more effectively. Another Task Force member recommended establishing a statewide protocol on how to communicate with the public regarding police-involved shootings.

Multiple Task Force members recommended the following:

- Reviewing and/or revising policies regarding justifiable use of force, with a goal of enhancing the protection of the lives of officers, suspects, and the public. Consider having all agencies adopt a formal policy on de-escalation.

- Adopting an agency policy for the release of information to the public, as per the State's Public Records Law (ORC 149.43), in recognition that providing timely, complete, and accurate information to the public in the aftermath of a critical incident is important to maintaining a trusting relationship with the community. Public records laws should be amended to provide for the release of the investigative information upon completion of any criminal and administrative action taken.

- Ensuring the availability of sufficient resources to allow officers to conduct their jobs safely and effectively.

# RECOMMENDATIONS

**Training:** **In order to allow officers to do their jobs safely and effectively, and to protect the public, the State of Ohio shall require a greater emphasis on, and investment, in training.**

Public and Expert Testimony Recommendations

The need for additional law enforcement training was identified by community members at each of the four public forums. Public testimony focused primarily on specific types of training that should be provided to officers. One area of training centered on improving the quality and nature of interactions with diverse populations, including those with mental illness or other disabling or developmental conditions. Appropriate training on interacting with youth was stressed by some, who mentioned the need for a developmentally informed approach to interacting with children to protect them and advance their well-being. Other areas of training that were mentioned include cultural competency and diversity training, incorporating training on bias, and threat assessment and de-escalation/less-lethal techniques, among others. Recommendations of current and former law enforcement officers concurred with these training needs.

Task Force recommendations

Task Force members developed numerous recommendations regarding training topics as a result of the insight they gained from the public and expert testimony. Recommendations were given by some regarding the structure and function of the Ohio Peace Officer Training Commission. Numerous Task Force members expanded on their training recommendations to include detail on the length and frequency of basic and advanced training, and specific training was recommended for chiefs and sheriffs. A few noted the need to work collaboratively with the Ohio Attorney General's Advisory Group on Law Enforcement Training. Also recommended by some members was the creation of a resource center to provide training and technical assistance to officers and agencies. There were a few recommendations provided by individual Task Force members. One recommendation discussed expanding the authority of the Ohio Peace Officer's Training Curriculum over advanced training and basic academies. Another recommendation suggested the development of a training video created by law enforcement executives discussing successful management of controversial officer-involved shooting deaths. Another focused on the creation of state run and funded training academies.

Multiple Task Force members recommended the following:

- Evaluating the members of the Ohio Peace Officer's Training Commission for possible expansion to ensure diversity, community representation, and alternative perspectives so that the Ohio Peace Officer Training Commission has the expertise to identify necessary training for all law enforcement officers. Suggestions include a diversity officer, an expert in civil rights law or designee from Ohio Civil Rights Commission, a member of the Fraternal Order of Police, an expert in child and adolescent development, and a public representative.

- Assigning the Task Force to work with the Ohio Attorney General's Advisory Group on Law Enforcement Training to identify and develop training topics for basic and advanced courses for all law enforcement.

# RECOMMENDATIONS

- Requiring 40 hours of training for newly appointed chiefs and sheriffs, to include diversity training and emphasis on historical perspectives and law enforcement-community relations.

- Developing training on community policing for executive-level chiefs and sheriffs to ensure their understanding and recognition of this way of policing.

- Re-evaluating the minimum hourly requirement for both basic and advanced training.

- Increasing or including in the basic training curriculum the following topics:
  - Interacting with the mentally ill and others with disabilities using Crisis Intervention Team principles
  - Interacting with adolescents, including training on the principles of child and adolescent development and how this impacts police-youth interactions
  - Diversity and cultural competency/sensitivity, with emphasis on historical perspectives and community-police relations
  - Interpersonal relations and the issue of race
  - Biases, including implicit bias
  - Threat assessment
  - De-escalation techniques and alternatives to deadly force, including Tasers and verbal communication
  - Policing non-violent demonstrations
  - Standards for lawful vehicle and stop-frisk detentions
  - When to engage in a foot pursuit
  - Personal stress management and stress reduction

- Increasing the minimum yearly continuing professional training requirement and mandating continuing professional training in the following areas:
  - Diversity and cultural competency/sensitivity, with emphasis on historical perspectives and community-police relations
  - Interacting with the mentally ill and others with disabilities using Crisis Intervention Team principles
  - Use of force scenario and reality-based training
  - De-escalation techniques and alternatives to deadly force, including Tasers and verbal communication
  - Police-community relations and building partnerships in the community
  - Legal updates
  - Narcotics
  - Problem-oriented policing

# Recommendations

- Precision driving
- Self-defense
- Hand-to-hand fighting skills
- Weapon retention
- Threat assessment
- Biases, including implicit bias
- Responding to confrontations involving a weapon that is not a firearm
- Policing non-violent demonstrations
- Standards for lawful vehicle and stop-frisk detentions
- When to engage in a foot pursuit
- Personal stress management and stress reduction
- Active shooter

- Developing statewide standards for establishing training on cultural competency, including a certification process for contractors seeking to provide such training, to ensure quality.
- Coordinating efforts across criminal justice agencies, including the Ohio Attorney General's Office, to review the funding needed to accomplish training requirements, should training be increased and/or mandated.
- Establishing an 'incubator' or resource center to provide training, resources, and practical assistance to agencies and governments across the state, in order to keep them informed and up-to-date on the latest policing strategies and techniques.

Strategies to Strengthen
Trust

# STRATEGIES

**Strategies to strengthen trust between communities and law enforcement**

There is growing evidence to suggest that some traditional approaches to policing can harm community-police relations. Tactics that are perceived to be enforcement-heavy and result in mass arrests can reduce the legitimacy of police in the eyes of the public. The following policing strategies have been identified as promising or "evidence-based," meaning that research has demonstrated their effectiveness when the strategies are implemented with fidelity.

Problem-oriented policing. Unlike the 'standard,' primarily reactive and incident-driven model of policing, problem-oriented policing requires police to be proactive in identifying and responding to problems in the community. Eck and Spelman's (1987) SARA model identifies the four steps involved in implementing problem-oriented policing: **S**canning to identify and prioritize potential problems; **A**nalysis of the problem to determine appropriate responses to the problem; **R**esponse by police to develop and implement the appropriate intervention to solve the problem; **A**ssessment to determine if the response worked.[2] There are variants of this model that are used for problem-solving, but they all generally focus on identifying the problem, developing and implementing a strategy, and assessing the success of the strategy.

Problem-oriented policing strategies have been used to address a variety of crime issues, including gun and violent crimes, perpetrated by a small number of active offenders in relatively small geographical units. While the focus of these strategies may differ across agencies, they all stress data-led, proactive investigation and enforcement rather than reactive calls for service.

Community Initiative to Reduce Violence (CIRV). The CIRV model has been implemented in many cities across the country and several cities here in Ohio. The following cities have implemented CIRV in Ohio: Canton; Cincinnati; Dayton; Toledo and Youngstown. CIRV incorporates several evidence-based strategies that include a type of problem-oriented policing known as focused deterrence. The idea behind focused deterrence strategies is that police focus their efforts on deterring a small, particularly active group of offenders causing the majority of the trouble in the community by clearly communicating to them swift, certain, and severe consequences if they engage in specific criminal activity. Many focused deterrence strategies combat violent crime caused by gangs or other organized groups, but the strategy can be tailored to the specific needs of the community. The CIRV strategy appeals to law enforcement and communities for a number of reasons. First, it requires law enforcement and the community to work together to reduce crime. This aids in building relationships between the community and law enforcement, and helps to build trust and understanding. Second, because the strategy is laser focused, it allows law enforcement to make more efficient use of its limited resources. This focus also appeals to the community because the law abiding members of the community do not feel unfairly targeted as they do during large sweeps. The strategy also seeks to deter criminal behavior and thus avoids mass incarceration by focusing on the very small population of high-rate offenders committing the majority of crimes.

---

2        Eck, J.E. & Spelman, W. (1987). *Problem Solving: Problem-Oriented Policing in Newport News*. Washington, D.C .: Police Executive Research Forum.

# STRATEGIES

Place-based policing strategies. lace-based policing strategies, sometimes referred to as hot spots polic-ing, is similar in many respects to focused deterrence strategies in that there is a focused concentration of enforcement effort, but the focus is on a specific geographical area with high crime rather than a specific group of offenders committing crimes. There is no single hot spots strategy; rather, the specific tactics for implementing such a strategy vary across contexts. Another type of place-based policing is directed patrol, which typically targets geographical areas larger than hot spots, such as neighborhoods.

Police legitimacy and procedural justice training. When the community feels it is being treated fairly and equally by police, they will view law enforcement as being legitimate. As a result, the public has trust and confidence in the police and views the police as honest and hardworking. They defer to the law and to the authority of police. And they believe that police actions are moral and appropriate. Communities of color, such as the black community, that have historically experienced inequality and unjust treat-ment, will often view law enforcement with cynicism, feeling they are illegitimate, unresponsive, and ill-equipped to ensure public safety.[3]

Law enforcement, likewise, experience frustration. Systemic, social factors outside of law enforcement's control, such as educational, health, and economic disparities, create inequalities in our most troubled communities. However, the criminal justice system often becomes the primary source for addressing the crime and violence issues that are symptomatic of these underlying problems.[4]

There is pressure for police chiefs to do what is needed to reduce crime and violence and bring crimi-nals to justice. This sometimes translates into high enforcement and arrests, which are the traditional tools available to them. Overuse of these tools can exacerbate feelings of mistrust for law enforcement and thus reduce public support for police. When residents of a community do not trust or respect the police, they are less likely to cooperate with police, to provide information, to reach out for assistance or to report a crime, making it more difficult for law enforcement to do their job effectively and ultimately making the community less safe. This, unfortunately, may lead some police to believe that residents do not care about their own communities.

Procedural justice is a means to attaining legitimacy. People want their side of the story to be heard by police. People want to know that officers are acting neutrally and that decisions made by an officer are being applied fairly. People want to be treated with respect and dignity. And people want officers to be sincere and caring about their needs and concerns. Police legitimacy is not only an ideal, but is function-ally and operationally important in facilitating public cooperation with police and a citizen's willingness to obey the law.[5]

Training would allow law enforcement to better understand the concepts of procedural justice and police legitimacy. This will enable the police to build stronger relationships with the communities they serve.

---

3    Kirk, D.S., & Papachristos, A.V. (2011). *Cultural Mechanisms and the Persistence of Neighborhood Violence*. American Journal of Sociology, 116(4), 1190-1233.
4    National Network for Safe Communities. Racial Reconciliation. Retrieved from http://nnscommunities.org/our-work/inno-vation/racial-reconciliation.
5    Tyler, T. (2004). *Enhancing Police Legitimacy*. The ANNALS of the American Academy of Political and Social Science, 593, 84-99

# STRATEGIES

Community-oriented policing. Community-oriented policing focuses on close collaboration between the community and law enforcement in working together to solve problems impacting the community. Three aspects of community policing characterize most programs: 1) some level of community involvement; 2) decentralization, which can give increased discretion to line officers; and 3) problem solving.[6] While specific community policing activities have not been associated with dramatic impacts on crime, they may allow police to incorporate principles of procedural justice into their interactions with citizens, which can lead to improved police-community relations.

Cities across the country are implementing these strategies to strengthen police-community relations. The following pages highlight the work of three such cities that have developed innovative programs to address this important issue. These cities recognize that police alone cannot solve a city's crime problems, but rather that it takes a combined, collaborative effort between the police and the community.

Cincinnati Collaborative Agreement. The purpose of the Cincinnati Collaborative was to reduce the friction that existed between some members of both the community and the Cincinnati Police Department, and to foster a safer community where mutual trust and respect is enhanced among citizens and police.[7] There were five goals of the Collaborative:

- Police officers and community members will become proactive partners in community problem solving
- Build relationships of respect, cooperation and trust within and between police and communities
- Improve education, oversight, monitoring, hiring practices, and accountability of the Cincinnati Police Department
- Ensure fair, equitable, and courteous treatment for all
- Create methods to establish the public's understanding of police policies and procedures and recognition of exceptional service in an effort to foster support for the police.

Significant police reform was accomplished as a result of the Collaborative and the efforts of the Collaborative partners.[8] The Cincinnati Police Department began to implement community problem-oriented policing, and officers received training using the SARA model as the process for community problem solving. They revised use of force policies, improved use of force investigation protocols, and developed use of force training. The Department worked to eliminate biased policing, particularly with regard to persons stopped by police, and they collected data on all such stops. The Department deployed Mental Health Response Teams. They created the Citizen Complaint Authority, comprised of seven citizens appointed by the Mayor and approved by City Council, a full-time Executive Director and support staff, and a team of professional investigators, to investigate serious interventions by police officers and to

---

6        Center for Evidence-Based Crime Policy. Community Policing and Procedural Justice. Retrieved from http://cebcp.org/evidence-based-policing/what-works-in-policing/research-evidence-review/community-policing/

7        Retrieved from http://www.cincinnati-oh.gov/police/linkservid/27A205F1-69E9-4446-BC18BD146CB73DF2/showMeta/0/

8        City of Cincinnati, American Civil Liberties Union Foundation of Ohio, & Fraternal Order of Police. (2007). Collaborative Agreement Parties Announce Transition Period Plan. [Press Release]. Retrieved from http://www.cincinnati-oh.gov/police/linkservid/CA88DFA8-EA4D-4D38-B1F380C658A81D91/showMeta/0/

# STRATEGIES

review and resolve all citizen complaints in a fair and efficient manner. They instituted an employee early warning system. The department made police policies and crime statistics available and accessible to the public. The Community-Police Partnering Center was established to develop and implement strategies to reduce crime and disorder while facilitating positive engagement and increased trust between the police and neighborhoods. They established the Cincinnati Initiative to Reduce Violence, or CIRV, an evidence-based strategy centered on the partnership between the community, law enforcement, and social service providers, as they work together to denounce violence in their city.

Los Angeles Police Department. The Los Angeles Police Department has two units focused on community-police relations: the Community Policing Unit and the Community Relations Section. The Community Policing Unit provides information and training on community policing. The Community Relations Section incorporates several community policing strategies in their effort to identify, reduce, eliminate, and prevent problems that impact community safety and order.[9] The department's *Community-Police Problem Solving* program trains officers to use the SARA model. *Community-Police Advisory Boards* are comprised of residents and businesses that help facilitate the flow of information between law enforcement and the community. The department hosts *Senior Lead Officer Summits* twice a year with Senior Lead Officers and key community stakeholders in each of 18 city neighborhoods to discuss the most significant problems in each of the neighborhoods. *Police and Community Collaborative Teams* consist of small groups of Senior Lead Officers, community representatives, and a local city council representative to find ways to address problems identified at the summits. The police department also divides these 18 neighborhoods into smaller units which are permanently assigned one patrol car to provide services in this area. A coordinator works with these officers and others to identify crime and quality of life problems.

Chicago Alternative Policing Strategy (CAPS). The Chicago Police Department created the Chicago Alternative Policing Strategy, or CAPS, to bring the police, the community, and other city agencies together to identify and solve neighborhood crime problems, rather than simply react to their symptoms after the fact.[10] Problem solving at the neighborhood level is supported by a variety of strategies. Beat officers are given long-term assignments in neighborhoods to allow them time to develop relationships with residents and business owners. They conduct regular *beat community meetings* involving police and residents to exchange information on crime and disorder problems and to develop strategies to combat the problems using a model similar to the SARA problem solving model. Extensive *training for both police and community* are also provided through CAPS. Mandatory training is given to officers on procedural justice and police legitimacy. Through the Integrated Community Engagement Training Program, community engagement efforts are refocused to encourage community members to have greater involvement.

---

9       Los Angeles Police Department. Community Policing Unit. Retrieved from http://www.lapdonline.org/support_lapd/content_basic_view/731.

10      Chicago Police Department. What is COPS? Retrieved from https://portal.chicagopolice.org/portal/page/portal/ClearPath/Get+Involved/How+CAPS+works/What+is+CAPS

Recommendations
Sara Andrews



# Task Force Recommendations

Problem to address: Grand Jury process

Recommendation (Please include justification why this will address the problem): Recommend the Ohio Constitutional Modernization Commission examine and review the grand jury process and submit proposed amendments, if necessary.

<u>Does this recommendation require</u>:
Legislative Action: YesX☐  No☐
Executive/Administrative Action: YesX☐  No☐
Additional funding required: Yes☐  NoX☐

Recommendation Rank (Please provide a rank for each of your recommendations in order of importance with #1 being most important): 1 of 3

<u>Party responsible for implementation (you may choose more than one)</u>:
Governor ☐
AG ☐
Legislature X☐
Association ☐
College/University ☐
Local Government ☐
Other: ☐

Submitted by:  Sara Andrews



# Task Force Recommendations

Problem to address: Public confidence in justice system

Recommendation (Please include justification why this will address the problem):
Ohio Judges, with the support of the Ohio Judicial Conference, will convene local, regional roundtables with justice system and community leaders, to seek ways to improve public confidence, support transparency and accessibility and promote public education in the justice system.

Does this recommendation require:
Legislative Action: Yes☐  NoX☐
Executive/Administrative Action: Yes☐  NoX☐
Additional funding required: YesX☐  No☐

Recommendation Rank (Please provide a rank for each of your recommendations in order of importance with #1 being most important): 2 of 3

Party responsible for implementation (you may choose more than one):
Governor ☐
AG ☐
Legislature ☐
Association ☐
College/University ☐
Local Government ☐
Other: X☐  judiciary and judicial conference

Submitted by:  Sara Andrews



# Task Force Recommendations

Problem to address:  Procedural Fairness:  transparency and public confidence of local justice system processes – ie. Courts, law enforcement, municipal government.

Recommendation (Please include justification why this will address the problem): The recommendations of the Task Force on the Funding of Ohio Courts, established by Chief Justice O'Connor in 2014, are forthcoming.  Therefore, if the problem is not addressed in those recommendations, the Task Force should include initiating the collection of data to identify critical local justice system processes and improve information available on the impact of those processes – such as the availability of information regarding code violations, bond schedules and basic rights to the public as well as the impact to local government budgets of forfeitures, fines and fee schedules in the next steps.

<u>Does this recommendation require:</u>
Legislative Action: Yes☐  NoX☐
Executive/Administrative Action: Yes☐  XNo☐
Additional funding required: YesX☐  No☐

Recommendation Rank (Please provide a rank for each of your recommendations in order of importance with #1 being most important): 3 of 3

<u>Party responsible for implementation (you may choose more than one)</u>:
Governor ☐
AG ☐
Legislature ☐
Association ☐
College/University ☐
Local Government ☐
Other: ☐ X Judiciary

Submitted by:  Sara Andrews

Recommendations
Officer Brian S. Armstead



# Task Force Recommendations

Problem to address: Minority representation in law enforcement does not match the racial make-up of our State.  It has been difficult to attract minority candidates into the profession.

Recommendation (Please include justification why this will address the problem): This problem can be addressed in numerous ways to widen the net to attract minority candidates:  1)  Establish law enforcement training programs at minority high schools, similar to the Explorer Posts that exist today and provide the funding to make this successful.  2)  Create and fund internships for minority youth at local law enforcement agencies that wish to pursue a career in law enforcement.  3)  Establish a media relations campaign that targets minority youth with a message about making a difference in our communities through a career in law enforcement.

Does this recommendation require:
Legislative Action: Yes X  No☐
Executive/Administrative Action: Yes  X  No☐
Additional funding required: Yes X  No☐

Recommendation Rank (Please provide a rank for each of your recommendations in order of importance with #1 being most important): Click here to enter text.

Party responsible for implementation (you may choose more than one):
Governor X☐
AG ☐
Legislature X
Association ☐
College/University ☐
Local Government X
Other: ☐  Click here to enter text.

Submitted by: Ohio Fraternal Order of Police and Brian Armstead, member of the Task Force on Community – Police Relations



# Task Force Recommendations

Problem to address: Oftentimes peace officers are only seen by young community members when taking enforcement actions, leading to a negative opinion of law enforcement officers and conversely, law enforcement officers often only see young community members when they are taking enforcement action, leading to a negative opinion of youth.

Recommendation (Please include justification why this will address the problem): Expand Governor Kasich's Community Connectors program that provides mentorships to young students to include local law enforcement agencies. Using law enforcement officers to provide a mentor to a young student may make the world of difference to the young person and to the officer.

Does this recommendation require:
Legislative Action: Yes X No☐
Executive/Administrative Action: Yes X No☐
Additional funding required: Yes X No☐

Recommendation Rank (Please provide a rank for each of your recommendations in order of importance with #1 being most important): Click here to enter text.

Party responsible for implementation (you may choose more than one):
Governor X☐
AG ☐
Legislature X
Association ☐
College/University ☐
Local Government X
Other: ☐ Click here to enter text.

Submitted by: Ohio Fraternal Order of Police and Brian Armstead, member of the Task Force on Community – Police Relations



# Task Force Recommendations

Problem to address: The best deterrent to a law enforcement use of force is another officer being present. The incidents of force being used decrease when enough officers are present to deter aggression. It also lessens the amount of force needing to be used when more officers are present. Ohio has lost thousands of officers in the last 5-6 years due to the downturn in the economy and the loss of local government funds provided by the State of Ohio, coupled with a decrease in federal grant funding. The downsizing of Ohio's law enforcement agencies have reduced services and programs, like community policing units all across Ohio. D.A.R.E. does not exist in the vast majority of Ohio today due to this and other reasons. Agencies are concentrating only on core services, like responding to calls and investigating the most major of crimes due to this.

Recommendation (Please include justification why this will address the problem): Restore local government funding for use by local political jurisdictions to hire and deploy law enforcement officers, enabling officers to concentrate on community relationship building and partnerships and other positive programs that increase trust and positive interactions between the police and the community.

Does this recommendation require:
Legislative Action: Yes X No☐
Executive/Administrative Action: Yes X No☐
Additional funding required: Yes X No☐

Recommendation Rank (Please provide a rank for each of your recommendations in order of importance with #1 being most important): Click here to enter text.

Party responsible for implementation (you may choose more than one):
Governor X☐
AG ☐
Legislature X
Association ☐
College/University ☐
Local Government X
Other: ☐ Click here to enter text.

Submitted by: Ohio Fraternal Order of Police and Brian Armstead, member of the Task Force on Community – Police Relations



# Task Force Recommendations

Problem to address: Political jurisdictions that use their law enforcement officers to generate revenue for the operation of the jurisdiction, it creates many unnecessary negative contacts between law enforcement and the community, often the segments of the community that can least afford fines and penalties. This was the cause of many of the underlying issues in Ferguson, Missouri.

Recommendation (Please include justification why this will address the problem): Enact legislation that prohibits the use of "quotas" by all law enforcement agencies. No law enforcement officer should be mandated to issue citations or make arrests for the purpose of reaching some "activity" goal that is in reality a mandate to raise revenue.

Does this recommendation require:
Legislative Action: Yes X  No☐
Executive/Administrative Action: Yes X  No☐
Additional funding required: Yes X  No☐

Recommendation Rank (Please provide a rank for each of your recommendations in order of importance with #1 being most important): Click here to enter text.

Party responsible for implementation (you may choose more than one):
Governor X☐
AG ☐
Legislature X
Association ☐
College/University ☐
Local Government X
Other: ☐ Click here to enter text.

Submitted by: Ohio Fraternal Order of Police and Brian Armstead, member of the Task Force on Community – Police Relations



# Task Force Recommendations

Problem to address: Ohio has over 30,000 law enforcement officers throughout the state.   Many do not have the basic, less-lethal equipment options that are created to give officers the ability to use less force in emergency situations.   Without those options, these incidents are much more dangerous for officers and the citizen.

Recommendation (Please include justification why this will address the problem): Provide funding to provide every law enforcement officer adequate equipment that will give him/her options to the use of deadly force.

Does this recommendation require:
Legislative Action: Yes X No☐
Executive/Administrative Action: Yes X No☐
Additional funding required: Yes X No☐

Recommendation Rank (Please provide a rank for each of your recommendations in order of importance with #1 being most important): Click here to enter text.

Party responsible for implementation (you may choose more than one):
Governor X☐
AG ☐
Legislature X
Association ☐
College/University ☐
Local Government X
Other: ☐ Click here to enter text.

Submitted by: Ohio Fraternal Order of Police and Brian Armstead, member of the Task Force on Community – Police Relations



# Task Force Recommendations

Problem to address: There is a big lack of understanding between the community and law enforcement on what actions cause specific reactions. Most policing tactics have never been explained to the community. This lack of understanding contributes to community tensions and mistrust.

Recommendation (Please include justification why this will address the problem): Columbus Division of Police has a program called "Bridging the Gap" and the Long Beach, California Police Department sponsors a program called "Why'd You Stop Me" and each attempt to bring information to young people to increase the level of trust and understanding between the police and them. Our recommendation is to create similar training programs and present it to all Ohio 9th and 10th grade students and adequately fund this program to make it successful. Also, create and fund public service announcements for local media outlets educate the using the same principles as found in these training programs.

<u>Does this recommendation require:</u>
Legislative Action: Yes X No☐
Executive/Administrative Action: Yes X No☐
Additional funding required: Yes X No☐

Recommendation Rank (Please provide a rank for each of your recommendations in order of importance with #1 being most important): Click here to enter text.

<u>Party responsible for implementation (you may choose more than one):</u>
Governor X☐
AG ☐
Legislature X
Association ☐
College/University ☐
Local Government X
Other: ☐ Click here to enter text.

Submitted by: Ohio Fraternal Order of Police and Brian Armstead, member of the Task Force on Community – Police Relations



# Task Force Recommendations

Problem to address: Community Policing strategies have been declining in use in Ohio's cities and counties due to the fact that Community Policing is very manpower intensive. This strategy has been found to have a great deal of impact in building community and police partnerships and relationships but the funding from the federal government has dwindled to almost nothing and there has never been state funding for this purpose. There has been a lot of testimony and comment both to and from this Task Force about the need to re-double the efforts to engage in community policing in our cities and counties and that is supported strongly by the Fraternal Order of Police. However, it cannot just be mandated without giving the tools needed by local jurisdictions to make successful.

Recommendation (Please include justification why this will address the problem): Create a grant process that awards one (1) million dollars per Ohio House District each year of the Ohio biennial budget (for a total of $198 million dollars) to Ohio's local law enforcement agencies within those districts for hiring and deployment of sworn officers specifically for community policing efforts. This would fund at least one thousand, one hundred (1100) officers in our state to work specifically on building community partnerships, which would have a tremendous impact on our state in a variety of positive ways. If Ohio wants this kind of immediate action to bolster community partnerships, it needs to commit the resources necessary to make it happen.

Does this recommendation require:
Legislative Action: Yes X  No☐
Executive/Administrative Action: Yes☐  No☐
Additional funding required: Yes X  No☐

Recommendation Rank (Please provide a rank for each of your recommendations in order of importance with #1 being most important): Click here to enter text.

Party responsible for implementation (you may choose more than one):
Governor X☐
AG ☐
Legislature X
Association ☐
College/University ☐
Local Government ☐
Other: ☐ Click here to enter text.

Submitted by: Ohio Fraternal Order of Police and Brian Armstead, member of the Task Force on Community – Police Relations



# Task Force Recommendations

Problem to address: Recent changes in sentencing has reduced the potential penalties for causing harm to Peace Officers and additional laws need strengthened to protect Peace Officers as well. If the assaults on officers and deadly situations in which officers find themselves in were reduced, officer involved shootings and other uses of force would be reduced.

Recommendation (Please include justification why this will address the problem): Increase the penalty for Assaulting a Peace Officer and the victim is a peace officer or an investigator of the bureau of criminal identification and investigation, the penalty would be a felony of the 4th degree with a mandatory prison sentence of at least 12 months. If serious physical harm would occur as a result of the commission of this offense, then the penalty would be a felony of the 3rd degree with a mandatory sentence of at least of at 24 months. Increase the penalty for Aggravated Menacing where the victim is a peace officer or an investigator of the bureau of criminal identification and investigation and the offenders uses a deadly weapon to a felony of the 4th degree. This recommendation is aimed at those who point weapons at a peace officer and that crime is currently a misdemeanor. Increase the penalty for Resisting Arrest to a felony of the 5th degree when the offender uses violence against the law enforcement officer. (Non-violent resisting arrest would still be a misdemeanor of the 2nd degree)

Does this recommendation require:
Legislative Action: Yes X  No☐
Executive/Administrative Action: Yes☐  No☐
Additional funding required: Yes X  No☐

Recommendation Rank (Please provide a rank for each of your recommendations in order of importance with #1 being most important): Click here to enter text.

Party responsible for implementation (you may choose more than one):
Governor X☐
AG ☐
Legislature X
Association ☐
College/University ☐
Local Government ☐
Other: ☐  Click here to enter text.

Submitted by: Ohio Fraternal Order of Police and Brian Armstead, member of the Task Force on Community – Police Relations



# Task Force Recommendations

Problem to address: Ohio Peace Officers Training Commission does not have enough input from the community and law enforcement practitioners.

Recommendation (Please include justification why this will address the problem): Change the make-up of the Ohio Peace Officers Training Commission from its existing composition of: Two Police Chiefs; Two Sheriffs; the Superintendant of the Ohio State Highway Patrol; a Special Agent in Charge of the Federal Bureau of Investigation; a member of the public and a representative of the Ohio Department of Education to a new composition of: Change the make-up of the Ohio Peace Officers Training Commission from its existing composition of: Two Police Chiefs; Two Sheriffs; the Superintendant of the Ohio State Highway Patrol; a Special Agent in Charge of the Federal Bureau of Investigation; Two members of the Fraternal Order of Police; three members of the public, one of which must be from the Ohio Civil Rights Commission and a representative of the Ohio Department of Education. Adding members of the Fraternal Order of Police to the Commission is necessary because they represent the people who are doing the training and receiving the training and have the direct knowledge of what the problems law enforcement are having in our communities. Adding additional members of the public to the Commission is necessary because they have the most knowledge of how police training is impacting their community.

Does this recommendation require:
Legislative Action: Yes X No☐
Executive/Administrative Action: Yes☐ No☐
Additional funding required: Yes☐ No X

Recommendation Rank (Please provide a rank for each of your recommendations in order of importance with #1 being most important): Click here to enter text.

Party responsible for implementation (you may choose more than one):
Governor X
AG ☐
Legislature X
Association ☐
College/University ☐
Local Government ☐
Other: ☐ Click here to enter text.

Submitted by: Ohio Fraternal Order of Police and Officer Brian Armstead, member of the Ohio Task Force on Community-Police Relations



# Task Force Recommendations

Problem to address: Basic Training for all Ohio Peace Officers can be improved by adding mandatory topics of instruction for every single person who becomes a Peace Officer in our state. There are several topics of instruction that can be increased to better train our Peace Officers to serve our citizens.

Recommendation (Please include justification why this will address the problem): Increase the basic training curriculum in every Ohio Basic Peace Officer Academy by:  1)  Twelve (12) hours of training on interacting with the mentally ill, using the C.I.T. principles.  2)  Four (4) hours of training in diversity and cultural competency and this curriculum will be developed by O.P.O.T. C. and the Ohio Task Force on Community/Police Relations.

Does this recommendation require:
Legislative Action: Yes☐  No☐
Executive/Administrative Action: Yes☐  No☐
Additional funding required: Yes☐  No☐

Recommendation Rank (Please provide a rank for each of your recommendations in order of importance with #1 being most important): Click here to enter text.

Party responsible for implementation (you may choose more than one):
Governor ☐
AG X
Legislature ☐
Association ☐
College/University ☐
Local Government ☐
Other: X  The Ohio Task Force on Community-Police Relations

Submitted by: Ohio Fraternal Order of Police and Officer Brian Armstead, member of the Ohio Task Force on Community and Police Relations



# Task Force Recommendations

**Problem to address**: Continuing Professional Training for active Ohio Peace Officers is lacking. Attempts to bolster this through casino funds have been blocked by those with other training priorities. This program can be funded through using all of the existing training funds generated by casino taxes and developing other sources of revenue.  This program was designed to give local governments the ability to train officers on emerging and important topics and community-police relations is an extremely important topic.   The current law allows for the Ohio Peace Officers Training Council to mandate twenty-four (24) hours of annual training in total and eight (8) of those 24 hours can be mandated on a certain topic(s) provided that funding is available.  The funding that goes back to local agencies is $20 per hour, per officer. That funding must be dedicated to training purposes only.

**Recommendation** (Please include justification why this will address the problem): Mandate that all Peace Officers receive Continuing Professional Training in the following topics:   1)  Four (4) hours of training in diversity and cultural competency in 2015 and once every five (5) years thereafter.   2)  Four (4) hours of training on interacting with the mentally ill with emphasis on tactics to minimize the use of force when possible in those situations in 2015 and once every five years thereafter.   3)  Four (4) hours of training in the use of force that includes scenario based exercises and reality based shoot/don't shoot scenarios in 2016 and once every five (5) years thereafter.  4)  Four (4) hours of training in tactics to reduce the use of force to be conducted in 2016 and once every five (5) years thereafter.  5)  Four (4) hours of training on building partnerships in the community in 2017 and once every five (5) years thereafter. All of this training needs to be conducted through the existing Continuing Professional Training fund and program that currently exists.

Does this recommendation require:
Legislative Action: Yes☐  No☐
Executive/Administrative Action: Yes X  No☐
Additional funding required: Yes X  No☐

Recommendation Rank (Please provide a rank for each of your recommendations in order of importance with #1 being most important):  Click here to enter text.


Party responsible for implementation (you may choose more than one):
Governor X
AG X
Legislature X
Association ☐
College/University ☐
Local Government ☐
Other:

Submitted by: Ohio Fraternal Order of Police and Officer Brian Armstead, member of the Ohio Task Force on Community and Police Relations

Recommendations
Tannisha D. Bell

# Task Force Recommendations

---

**Problem to address:** Click here to enter text.

Police training


**Recommendation** (Please include justification why this will address the problem): Click here to enter text.

It is recommended that this Task Force follow the recommendations of the Attorney General's Police Training Task Force. That task force has worked with experts from the community, clergy, and law enforcement to examine the current police training policies and to make recommendations on what changes should be made.  The recommendations are now available.


Does this recommendation require:
Legislative Action: Yes☒   No☐
Executive/Administrative Action: Yes☐   No☐
Additional funding required: Yes☒   No☐


**Recommendation Rank** (Please provide a rank for each of your recommendations in order of importance with #1 being most important):  1


Party responsible for implementation (you may choose more than one):
Governor ☐
AG ☒
Legislature ☐
Association ☐
College/University ☐
Local Government ☒
Other: ☐  Click here to enter text.

Submitted by:  Tannisha Bell, Section Chief
               Crime Victim Services Section
               Attorney General Mike DeWine's Office

# Task Force Recommendations

Problem to address: Click here to enter text.

During the listening sessions, community members voiced concerns over the perceived lack of accountability for law enforcement officers.

Recommendation (Please include justification why this will address the problem): Click here to enter text.

Set minimum standards, or establish best practices, for officer discipline.
Allow the standards to be made available to the public.

Citizens who make complaints should be updated of the status of the investigation by internal affairs. The policies and procedures of IA should be made available to the public.

These recommendations demonstrate transparency to the public and it allows the public to be assured that disciplinary action will be taken for officers who do not follow the law.

Does this recommendation require:
Legislative Action: Yes☒  No☐
Executive/Administrative Action: Yes☒  No☐
Additional funding required: Yes☒  No☐

Again, funding may be required in order to create websites for police departments or to update websites with the recommended information.

Recommendation Rank (Please provide a rank for each of your recommendations in order of importance with #1 being most important): Click here to enter text.

Party responsible for implementation (you may choose more than one):
Governor ☒
AG ☐
Legislature ☐
Association ☐
College/University ☐
Local Government ☒
Other: ☐  Click here to enter text.

Submitted by:  Tannisha Bell, Section Chief, Crime Victim Services Section, Ohio Attorney General Mike DeWine's Office

# Task Force Recommendations

---

**Problem to address:** Click here to enter text.

Communities perceive that there is a lack of transparency in law enforcement agencies.

**Recommendation** (Please include justification why this will address the problem): Click here to enter text.

Law enforcement agencies should have department policies and procedures (those that will not compromise officer safety) online for the public to view.

<u>Does this recommendation require</u>:
Legislative Action: Yes☐  No☒
Executive/Administrative Action: Yes☐  No☐
Additional funding required: Yes☒  No☐

Additional funding may be needed for departments to update (or create) websites.

**Recommendation Rank** (Please provide a rank for each of your recommendations in order of importance with #1 being most important): Click here to enter text.

<u>Party responsible for implementation (you may choose more than one)</u>:
Governor ☒
AG ☒
Legislature ☐
Association ☐
College/University ☐
Local Government ☒
Other: ☐  Click here to enter text.

Submitted by: Tannisha Bell, Section Chief
　　　　　　　Crime Victim Services Section
　　　　　　　Attorney General Mike DeWine's Office

# Task Force Recommendations

**Problem to address:** Click here to enter text.

Officers are not familiar with the communities that they are policing.
Communities often lack trust in local law enforcement.

**Recommendation** (Please include justification why this will address the problem): Click here to enter text.
Strengthen community-oriented policing.
Officers should become familiar with the communities that they police.
There is a need for school resource officers
Officers should be based in the community and accessible to residents.
Community events with local police agencies.

All of these recommendations will strengthen relations between police and communities, thus building trust and having more productive relationships.

<u>Does this recommendation require:</u>
Legislative Action: Yes☐ No☒
Executive/Administrative Action: Yes☐ No☒
Additional funding required: Yes☒ No☐

**Recommendation Rank** (Please provide a rank for each of your recommendations in order of importance with #1 being most important): Click here to enter text.

<u>Party responsible for implementation (you may choose more than one):</u>
Governor ☐
AG ☐
Legislature ☐
Association ☒
College/University ☐
Local Government ☐
Other: ☐ Click here to enter text.

Submitted by: Tannisha Bell, Section Chief, Crime Victim Services Section
Attorney General Mike DeWine's Office

# Task Force Recommendations

**Problem to address:** Click here to enter text.

Additional information is needed on those who choose to enter into police academies and who wish to be police officers.  Pre-screening should done before a person is admitted into a police academy, not after.

**Recommendation** (Please include justification why this will address the problem): Click here to enter text.

The recommendation is to mandate pre-screening for those choosing to become officers.  The screening should include, but not be limited to:  psychological testing, implicit bias testing, and a behavioral assessment.  Pre-screening will allow police academies to immediately identify those who may not be fit to protect and serve the public.  The goal is to eliminate those deemed not fit before they are admitted into academies.

<u>Does this recommendation require</u>:
Legislative Action: Yes☐  No☐      (maybe)
Executive/Administrative Action: Yes☒  No☐
Additional funding required: Yes☒  No☐

**Recommendation Rank** (Please provide a rank for each of your recommendations in order of importance with #1 being most important): Click here to enter text.

<u>Party responsible for implementation (you may choose more than one)</u>:
Governor ☒
AG ☒
Legislature ☒
Association ☐
College/University ☐
Local Government ☒
Other: ☐  Click here to enter text.

Submitted by: Tannisha Bell, Section Chief, Crime Victim Services Section
Ohio Attorney General Mike DeWine's Office

# Task Force Recommendations

---

**Problem to address:** Click here to enter text.

The lack of diversity in law enforcement.

**Recommendation** (Please include justification why this will address the problem): Click here to enter text.

Increase recruitment efforts for minorities.  An ideal place to recruit minorities is in high schools and colleges.  Having school resource officers in schools give juveniles the opportunity to interact with a member of law enforcement and to learn more about the profession. Additionally, some of the best talents are found on college campuses, so recruitment efforts should expand to colleges and universities.

<u>Does this recommendation require</u>:
Legislative Action: Yes☐  No☒
Executive/Administrative Action: Yes☐  No☒
Additional funding required: Yes☐  No☐
Unsure

**Recommendation Rank** (Please provide a rank for each of your recommendations in order of importance with #1 being most important): Click here to enter text.

<u>Party responsible for implementation (you may choose more than one)</u>:
Governor ☐
AG ☐
Legislature ☐
Association ☐
College/University ☒
Local Government ☒
Other: ☐  Click here to enter text.

**Submitted by:**  Tannisha Bell, Section Chief, Crime Victim Services Section, Ohio Attorney General Mike DeWine's Office

Recommendations
Philip E. Cole



# Task Force Recommendations

Problem to address: This recommendation will address the issues of training, community involvement, communications and trust between the law enforcement community and the communities they serve. There is a lack of understanding of cultures of our neighborhood communities, especially minority communities, and of the culture of law enforcement. To bridge this gap, Ohio must encourage true dialogue between all the communities, particularly focusing on the gaps between actions in the communities and perceptions by law enforcement.

Recommendation: Some of the training conducted through simulations should be conducted in public schools and other meeting places including churches. In this training, a simulation of a developing situation would be played, stopped at the appropriate time and both the police and the students or other community members present would discuss what each saw in the simulation, what they believe would happen next and why. They would then state what they would do in the situation and predict the outcome. After this discussion, they would return to the simulation and watch the actions taken and the outcome. They would then continue the discussion. Throughout the simulation and scussions, to promote understandings, all parties would have to discuss the "who", "what", "where" and "why" of their statements, actions they would propose and outcomes they predict. Understanding comes with communication, explanations and efforts to understand. This action and others of this type promote understanding and open communications, both of which are needed to promote better community-police relations.

Does this recommendation require:
Legislative Action: Yes☐ No☒
Executive/Administrative Action: Yes☒ No☐
Additional funding required: Yes☐ No☐
    If funding is required, it should be minimal.

Recommendation Rank: #1

Party responsible for implementation (you may choose more than one):
Governor ☒
Other: ☒ This requires the attention of local law enforcement departments.

Submitted by: Phil Cole, Executive Director, Ohio Association of Community Action Agencies.



# Task Force Recommendations

<u>Problem to address</u>: The problem to be addressed is the possible overreaction by police in encounters with citizens, especially minorities.  In testimony at the public hearings, we heard of numerous unnecessary stops.  We need to mitigate the effects of bias on these encounters and, hopefully, reduce the numbers of violent encounters.  The Las Vegas Metropolitan Police Department (LVMPD) has implemented a policy called "No Hands On" that appears to have had a measurable effect.  This was reported in the September 6, 2014 *National Journal*.  We need, at the very least, to request the Attorney General or the Department of Public Safety to study this policy.

<u>Recommendation</u> The "No Hands On" policy says that whenever possible, the police officer pursuing a suspect cannot be the same officer to apprehend a suspect or use force.  Las Vegas found that the pursuing officer tends to be more aggressive in their apprehension techniques.  In large, urban areas there are usually enough officers near a given scene for this practice to work.  People are less likely to resist multiple officers and the presence of other officers tends to mitigate the tendency to use too much force by an officer working alone.  It fits with the stand back and reassess strategy currently being discussed after recent shootings.  The "No Hands On" policy along with intensive trainings, communicating with the local population, Crisis Intervention Trained officers, and other things, has helped lead Las Vegas to a significant reduction in use of force incidents.  They declined from 1,400 in 2005 to 842 in 2012.  This is worth further study by Ohio.

<u>Does this recommendation require</u>:
Legislative Action: Yes☐  No☐
Executive/Administrative Action: Yes☐  No☐
Additional funding required: Yes☒  No☐

Recommendation Rank:  #2

<u>Party responsible for implementation (you may choose more than one)</u>:
Governor ☒
AG ☒
Legislature ☒
Association ☒
College/University ☒
Local Government ☒
Other: ☐  Click here to enter text.

Submitted by: Phil Cole, Executive Director, Ohio Association of Community Action Agencies



# Task Force Recommendations

**Problem to address:** This recommendation is to address the standards for law enforcement. While it is true that formal education does not teach common sense, we should not belittle the knowledge gained by an appropriate college degree. Students who major in criminal justice, sociology or a limited number of other degrees related to law enforcement or criminal justice, *who have expressed their intention to enter careers in law enforcement,* should be encouraged to begin as patrol officers. Most take the criminal justice degree and plan to work for the FBI or another agency that is not necessarily local. A more educated and well trained force is better than one lacking either of those two important characteristics.

**Recommendation:** To encourage highly qualified individuals to begin by learning Ohio's communities, Ohio should offer additional economic incentives to graduates of criminal justice and related bachelor degree programs who have shown an intention to enter the criminal justice field and are willing to serve as patrol officers. This should include a strong loan forgiveness program (in addition to any offered now) for serving three years and, in the case of minority graduates, also offering one time payments of an additional bonus above regular salary after the completion of their first year. Having people in the field with strong educational backgrounds, including formal education in forensics and related areas, should provide local police departments with knowledgeable people in the field and higher up if they are promoted. This recommendation should only be offered to graduates who previously demonstrated a desire to work in law enforcement as it requires people who are truly interested in the profession and have actual understanding of the risks involved.

**Does this recommendation require:**
Legislative Action: Yes☒  No☐
Executive/Administrative Action: Yes☐  No☐
Additional funding required: Yes☒  No☐
The General Assembly should designate some funding for this and start it as a pilot program in Cleveland or Cincinnati.

Recommendation Rank: #3

**Party responsible for implementation (you may choose more than one):**
Governor ☐
AG ☐
Legislature ☒
Association ☐
College/University ☐
Local Government ☐

Submitted by: Phil Cole, Executive Director, Ohio Association of Community Action Agencies

Recommendations
Rep. Tim Derickson



# Task Force Recommendations

Problem to address:

Poor relationship between Community leaders and Law Enforcement officials

Recommendation (Please include justification why this will address the problem):

1. On-Going 'task-force' like meetings held locally, hosted by law enforcement and community leaders
2. Law enforcement to offer "ride-alongs" to community leaders for insight and perspective
3. Academies and local law enforcement to provide "Simulations", allowing community leaders to experience the need to make rapid assessments and possible life saving decisions.

Does this recommendation require:
Legislative Action: Yes☐  No☒
Executive/Administrative Action: Yes☐  No☒
Additional funding required: Yes☐  No☒

Recommendation Rank (Please provide a rank for each of your recommendations in order of importance with #1 being most important):  1

Party responsible for implementation (you may choose more than one):
Governor ☐
AG ☐
Legislature ☐
Association ☐
College/University ☐

Local Government ☐
Other: ☐

Submitted by: Tim Derickson



# Task Force Recommendations

Problem to address:

Lack of relationships between Law enforcement and children in school

Recommendation (Please include justification why this will address the problem):

Increase Law Enforcement presence in Ohio schools with programs like DARE (but not necessarily the DARE curriculum). We could utilize a RFP to help identify curriculum being used in schools.

Does this recommendation require:
Legislative Action: Yes☐  No☒
Executive/Administrative Action: Yes☒  No☐
Additional funding required: Yes☒  No☐

Recommendation Rank (Please provide a rank for each of your recommendations in order of importance with #1 being most important): 2

Party responsible for implementation (you may choose more than one):
Governor ☒
AG ☐
Legislature ☐
Association ☒
College/University ☐
Local Government ☐
Other: ☐

Submitted by: Tim Derickson



# Task Force Recommendations

Problem to address:

Poor relationships between community and local law enforcement agencies

Recommendation (Please include justification why this will address the problem):

Consider expanding the "Cincinnati model" as a Pilot Program outside Cincinnati.

Does this recommendation require:
Legislative Action: Yes☒ No☐
Executive/Administrative Action: Yes☐ No☐
Additional funding required: Yes☒ No☐

Recommendation Rank (Please provide a rank for each of your recommendations in order of importance with #1 being most important): 3

Party responsible for implementation (you may choose more than one):
Governor ☒
AG ☐
Legislature ☒
Association ☒
College/University ☐
Local Government ☐
Other: ☐

Submitted by: Tim Derickson



# Task Force Recommendations

Problem to address:

Poor relationships between law enforcement and community

Recommendation (Please include justification why this will address the problem):

Further review the L.A. model briefly described at the Task Force meeting

Does this recommendation require:
Legislative Action: Yes☐ No☒
Executive/Administrative Action: Yes☒ No☐
Additional funding required: Yes☐ No☐

Recommendation Rank (Please provide a rank for each of your recommendations in order of importance with #1 being most important): 4

Party responsible for implementation (you may choose more than one):
Governor ☒
AG ☒
Legislature ☐
Association ☐
College/University ☐
Local Government ☐
Other: ☐

57

Submitted by: Tim Derickson

Recommendations
Dr. Ronnie Dunn



# Task Force Recommendations

Problem to address: Bias-Based Policing, i.e. Racial Profiling

Testimony was given at each of the four public forums held throughout the state of police-citizen encounters entailing allegations or indications of racial profiling. Ms. Barbara Bolling, Esq. and President of the Indiana NAACP presented data from the national NAACP's report on racial profiling, "Born Suspect." This report highlighted the racial disparities in involuntary police-citizen stops, i.e. "stop-and-frisk" and traffic stops. In addition a number of young African-American males spoke passionately about being racially profiled by police. Particularly compelling was the experience shared by the mother of a recently discharged Navy veteran, who also relayed his story of being detained and physically abused by a police officer.

The most frequent contact the average citizen has with the police occurs as a result of a traffic stop. Nationally, approximately 40 million persons 16 years of age or older had a face-to-face encounter with police in 2008, the most recent year for which this data is available, 59 percent of which resulted from a traffic stop or accident. Although allegations by minorities, particularly Blacks, that they are singled out by law enforcement for disparate treatment is not a new phenomenon, as evidenced by the 1968 Kerner Commission Report, the increased use of "pretextual stops" by law enforcement since the mid-1980s as a tactic in the "War on Drugs," has exacerbated the already historically adversarial relationship between police and the African-American community and brought racial profiling to the forefront as one of the most contentious social and political issues confronting local law enforcement and public officials across the nation (Dunn & Reed, 2011).[1]

Federal survey data between 2002 and 2008 shows that while black, white, and Hispanic motorists are stopped by police at similar rates, Blacks and Hispanics are more likely to have their vehicles searched and receive a traffic citation than are White motorists. The research literature has also consistently shown that minorities are no more likely and often less likely to be in possession of drugs, guns, or other forms of contraband than are whites. Skolnick and Fyfe,[2] identify routine traffic stops, and stops of suspicious vehicles as two of the most frequent and "potentially violent situations," (PVs) between police and citizens. Central to addressing the current crisis of police use of deadly force against unarmed citizens is to monitor, and where it is not in response to a specific, known, and articulable violation of local, state, or federal law, reduce the frequency of these involuntary police-citizen interactions.

In a 1999 study commissioned by the Ohio Legislature to examine the extent of racial profiling in the state, Dr. David Harris found that "no police agency of any size in Ohio kept any data that included the race of drivers subjected to police stops," (Harris, 2002).[3] While some agencies may have since begun to collect the relevant data, it undoubtedly is not collected in a uniform, systematic, and consistent manner in jurisdictions throughout the state. Using municipal court traffic citation data, Harris found that African-American motorists were disproportionately stopped and ticketed by police relative to their percentage of the driving-age population and were anywhere from 1.8 to 2.04 times as likely to be ticketed as were other motorists in the cities of Columbus (Franklin County), Dayton, Toledo, and Akron.

[1] Dunn, R. A., & Reed, W. L. (2011). *Racial Profiling: Causes & Consequences.* Dubuque, IA: Kendall-Hunt Publishing Co.

[2] Skolnick, J. H., & Fyfe, J. J. (1993). *Above the Law: Police and the Excessive Use of Force.* New York: The Free Press.

[3] Harris, D. (2002). *Profiles in Injustice: Why Racial Profiling Cannot Work.* New York: The New Press.

Similarly, while the relevant racial demographic data was not available through the municipal court in Cleveland at the time of Harris' study, subsequent studies conducted once this data was available found significant racial disparities in the ticketing of Black motorists in comparison to non-Black motorists. Two studies I conducted analyzing racial traffic ticketing patterns in Cleveland (2004 & 2012) and surrounding suburban jurisdictions in Cuyahoga County (2012), which used a more precise measure of the driving population than Harris' study, found that ticketing of Blacks exceeded the expected proportion relative to their percentage of the driving population by 45% and 53% in the respective studies. Blacks were also 2.13 and 2.55 times as likely to be cited by police as were White motorists in these studies (Dunn, 2004[4]; Dunn & Reed, 2011; Dunn, 2012[5]).

Recommendation (Please include justification why this will address the problem):

It is recommended that anti-profiling legislation be enacted at the state level. Ohio is one of 20 states that do not have racial profiling legislation at the state level. This legislation should require the collection of social demographic data on all involuntary, police-initiated contacts with citizens whether within the context of motor vehicle traffic, pedestrian, or bicyclist stops. Demographic data should be recorded on all vehicle stops where a warning is issued and on stops where a citation is issued in lieu of arrest. This data should be reported to the Ohio Attorney General's Office which will be responsible for analyzing and reporting of this data annually and made available to the general public. If an agency or officer is found to be engaged in discriminatory policing remedial actions including retraining, or disciplinary actions etc., should be taken to eradicate the biased practices. These measures will provide for the systematic and uniform collection of racial demographic data on all traffic stops as well as enhance accountability and transparency to ensure that neither individual officers nor law enforcement agencies engage in practices of biased or discriminatory policing against any persons either intentional or unintentional. Legislation designed to address this problem was researched and drafted in 2014 by then State Senator and current Task Force co-chair Nina Turner and State Senator Sandra Williams both of Cleveland. This bill however was not introduced in the General Assembly. It is therefore recommended that this Task Force adopts and endorses that legislative bill or uses it as a template on which to develop a bill with the requisite components and language to address the problem or concerns of bias-based policing (see attached legislative bill).

---

[4] Dunn, R. A., (2004). Spatial Profiling: *To What Extent Do The Cleveland Police Department's Traffic Ticketing Patterns Target Blacks?* Unpublished doctoral dissertation, Cleveland State University.

[5] Dunn, R. A., & Riebel, D. (2012). *An Analysis of Traffic Ticketing Patterns in Selected Jurisdictions Within Cuyahoga County.* Unpublished manuscript, Cleveland State University.

<u>Does this recommendation require</u>:
Legislative Action: Yes☒ No☐
Executive/Administrative Action: Yes☒ No☐
Additional funding required: Yes☒ No☐


**Recommendation Rank** (Please provide a rank for each of your recommendations in order of importance with #1 being most important): #1


<u>Party responsible for implementation (you may choose more than one)</u>:
Governor ☒
AG ☒
Legislature ☒
Association ☐
College/University ☐
Local Government ☐
Other: ☐ Click here to enter text.

Submitted by: Dr. Ronnie A. Dunn



# Task Force Recommendations

Problem to address: Investigation of deaths involving law enforcement officers. A number of police involved shootings resulting in the death of unarmed citizens has contributed to a climate of distrust and questioning of the legitimacy of law enforcement officers within certain communities both nationally and within the State of Ohio. Protests were held throughout the state in response to the shooting deaths of John Crawford III in Beavercreek, Ohio and Tamir Rice in Cleveland. While the latter case is still under investigation, the grand jury did not bring an indictment against the officer involved in the shooting death of John Crawford. These and similar incidents across the nation have created a national crisis in relation to policing, which was the impetus for the creation of this Task Force.

Recommendation (Please include justification why this will address the problem): It is recommended that the State of Ohio establish an independent investigation team at the state level convened to investigate all police involved deaths. This legislation should be modeled after that enacted in the State of Wisconsin – 2013 Assembly Bill 409. This would require each law enforcement agency to have a written policy relative to the investigation of officer involved deaths. See the Wisconsin Bill for specific information and details that should be included in this legislation.

Does this recommendation require:
Legislative Action: Yes☒ No☐
Executive/Administrative Action: Yes☒ No☐
Additional funding required: Yes☒ No☐

Recommendation Rank (Please provide a rank for each of your recommendations in order of importance with #1 being most important): #2

Party responsible for implementation (you may choose more than one):
Governor ☒
AG ☒
Legislature ☒
Association ☐
College/University ☐
Local Government ☒
Other: ☐ Click here to enter text.

Submitted by: Dr. Ronnie A. Dunn



# Task Force Recommendations

**Problem to address:** Collection and reporting of data on both lethal and non-lethal police-involved shootings. The recent scrutiny of police-involved shootings has brought to light the fact that while precise national data is available on the number of law enforcement officers killed in the line of duty, such data on the number of civilians killed annually as a result of police-involved shootings is not available.

**Recommendation** (Please include justification why this will address the problem):   It is recommended that the State of Ohio require all law enforcement agencies in the state to uniformly collect and report data on all officer-involved shootings, whether they result in a fatality or not, whether the person was armed or unarmed, and the final disposition of the ruling in the shooting investigation e.g. justified/unjustified. This policy should require this data be reported to both the Ohio Attorney General's Office and the FBI as part of this agency's Supplemental Homicide Report. The state level data should be examined annually and reported to the general public via the AG's webpage and a report to the Legislature. This data will provide greater transparency into the frequency of the use of deadly force by law enforcement which could implicate areas where training is needed, help place such incidents in the proper perspective, and help enhance public perceptions of police legitimacy.

<u>Does this recommendation require:</u>
Legislative Action: Yes☒   No☐
Executive/Administrative Action: Yes☒   No☐
Additional funding required: Yes☐   No☒

**Recommendation Rank** (Please provide a rank for each of your recommendations in order of importance with #1 being most important): #3

<u>Party responsible for implementation (you may choose more than one):</u>
Governor ☒
AG ☒
Legislature ☒
Association ☐
College/University ☐
Local Government ☒
Other: ☐   Click here to enter text.

Submitted by: Dr. Ronnie A. Dunn



# Task Force Recommendations

Problem to address: Insuring that cultural competency/diversity training procured by law enforcement agencies is designed to and addresses the relevant issues fundamental to the current national crisis in community-police relations, i.e. conflict and deadly encounters between African Americans, particularly males, other people of color, and the police. In the wake of this national crisis a burgeoning cottage industry has evolved to meet the enormous demand created by law enforcement agencies seeking to provide their officers with cultural competency or diversity training to better equip them to interact with persons of diverse cultural backgrounds, e.g. blacks, Hispanics, Muslims, and members of the LGBTQ community. Given this heightened demand for such training it is important that some type of standards and criteria be established to help safeguard law enforcement agencies from purchasing such training that does not adequately incorporate or address the relevant issues, concerns, or voice of members from the impacted communities/cultural groups, which in essence would not meet the needs of law enforcement nor the affected groups. I have seen firsthand evidence of a contractor eager to corner the market in providing such training to police agencies develop curriculum without the engagement, input, or feedback of members from the communities most impacted by these adverse community-police relations. This is problematic in that this is contradictory to the concept of cultural competency[1], diversity, and inclusion and will undoubtedly serve to only perpetuate the status quo in interactions between police and persons of color and other minority groups. In addition, law enforcement agencies and administrators will not likely be very knowledgeable consumers of the type and quality of cultural competency training that their agency should procure to aid them in offsetting the problems germane to the current crisis.

Recommendation (Please include justification why this will address the problem): Therefore, it is suggested that this Task Force establish a certification or registration process that contractors seeking to provide cultural competency training to law enforcement agencies are required to obtain from the appropriate state board, or Commission, e.g. Ohio Civil Rights Commission, State Chapter of the NAACP, Commission on Hispanic-Latino Affairs, etc. This process can be modeled after that utilized by the Ohio Department of Education which required contractors providing Supplemental Educational Services under the No Child Left Behind Act to be registered with that agency and meet certain qualifications. Contractors offering cultural competency training in this realm should have to provide evidence that they have engaged members and the perspectives of the minority communities in the development of the curriculum provided to the law enforcement community.[2]

[1] Reed, W. L., **Dunn, R. A.** & Colby, K. (2011). "Increasing Cultural Competency Among Public Health Workers," in Handbook of African American Health: Social and Behavioral Interventions. Lemelle, A., Reed, W., & Taylor, S. (Eds.) Springer Publishing.

[2] Marks, J. P., Reed, W., Colby, K., **Dunn, R. A.**, Mosavel, M., & Ibrahim, S. A. (2004). "A Culturally Competent Approach to Cancer News and Education in an Inner City Community: Focus Group Findings." Journal of Health Communication, 9, 143-157.

Does this recommendation require:
Legislative Action: Yes☒ No☐
Executive/Administrative Action: Yes☐ No☒
Additional funding required: Yes☐ No☒


Recommendation Rank (Please provide a rank for each of your recommendations in order of importance with #1 being most important): #4


Party responsible for implementation (you may choose more than one):
Governor ☐
AG ☐
Legislature ☒
Association ☒
College/University ☐
Local Government ☐
Other: ☒ Designated State Board, State NAACP

Submitted by: Dr. Ronnie A. Dunn



# Task Force Recommendations

Problem to address: Hiring standards and screening: The Tamir Rice shooting incident brought to light the deficiencies in the hiring and screening standards of some local law enforcement agencies. There was a failure on the part of the particular law enforcement agency to do a thorough background check including the examination of the prior law enforcement work experience of the officer involved in this incident. It also highlighted a failure to thoroughly examine the psychological testing and fitness of this individual to work in law enforcement. While this is but one case, it raises serious concerns about the hiring practices and standards of police agencies in general.

Recommendation (Please include justification why this will address the problem):

Therefore, it is recommended that the hiring, testing, and screening standards of the Ohio State Highway Patrol be adopted as the minimum standards employed by local law enforcement agencies across the state.  This includes multiple levels of screenings, physical fitness assessments, psychological assessments, and background and character investigations.

In addition to the Multi-Domain Assessment which includes psychological screening, it is recommended that Implicit Bias Testing, e.g. Implicit Association Test[1], be incorporated into the hiring screening process. Scientific research in the field of cognitive psychology has demonstrated that as humans we all exhibit some form of biases on a subconscious level. And these biases are in operation and can influence ones' behaviors and actions despite the fact that they may and often do contradict the consciously unbiased values and beliefs held by the individual. Although a candidate may show a bias toward a particular racial, ethnic, or cultural group, this should not disqualify them from joining the law enforcement agency, rather it indicates the need for training to help illuminate and ultimately offset the influence of such biases on ones' actions and behavior.[2] There is a body of research that has established that once such biases are identified, interventions can be implemented to diminish its effects.  The key is to first recognize and acknowledge that such biases do exist and does not make one a racist, bigot, or sexists, but must be addressed to overcome them.

---

[1] Greenwald, A. G., & Banaji, M. R. (1995). Implicit social cognition: Attitudes, self-esteem and stereotypes. *Psychological Review* *102:4 – 27.*

[2] Sommers, S. R., & Ellsworth, P. C. (2000). Race in the courtroom: Perceptions of guilt and dispositional attributions. *Personality and Social Psychology Bulletin 26:1367 – 1379.*; Harris, D. A. (2007). The Importance of Research on Race and Policing: Making Race Salient to Individuals and Institutions Within Criminal Justice. University of Pittsburgh, *Legal Studies Research Paper Series, v. 6, 1, 5-24.*

Does this recommendation require:
Legislative Action: Yes☒  No☐
Executive/Administrative Action: Yes☒  No☐
Additional funding required: Yes☒  No☐


Recommendation Rank (Please provide a rank for each of your recommendations in order of importance with #1 being most important):  #5


Party responsible for implementation (you may choose more than one):
Governor ☒
AG ☒
Legislature ☒
Association ☐
College/University ☐
Local Government ☒
Other: ☒  State Highway Patrol

Submitted by: Dr. Ronnie A. Dunn



# Task Force Recommendations

**Problem to address:** Hiring standards and screening: The Tamir Rice shooting incident brought to light the deficiencies in the hiring and screening standards of some local law enforcement agencies. There was a failure on the part of the particular law enforcement agency to do a thorough background check including the examination of the prior law enforcement work experience of the officer involved in this incident. It also highlighted a failure to thoroughly examine the psychological testing and fitness of this individual to work in law enforcement. While this is but one case, it raises serious concerns about the hiring practices and standards of police agencies in general.

**Recommendation** (Please include justification why this will address the problem):

Therefore, it is recommended that the hiring, testing, and screening standards of the Ohio State Highway Patrol be adopted as the minimum standards employed by local law enforcement agencies across the state. This includes multiple levels of screenings, physical fitness assessments, psychological assessments, and background character investigations.

In addition to the Multi-Domain Assessment which includes psychological screening, it is recommended that Implicit Bias Testing, e.g. Implicit Association Test[1], be incorporated into the hiring screening process. Scientific research in the field of cognitive psychology has demonstrated that as humans we all exhibit some form of biases on a subconscious level. And these biases are in operation and can influence ones' behaviors and actions despite the fact that they may and often do contradict the consciously unbiased values and beliefs held by the individual. Although a candidate may show a bias toward a particular racial, ethnic, or cultural group, this should not disqualify them from joining the law enforcement agencies, rather indicates the need for training to help illuminate and ultimately offset the influence of such biases on ones' actions and behavior[2]. There is a body of research that has established that once such biases are identified, interventions can be implemented to diminish its effects. The key is to first recognize and acknowledge that such biases do exist and does not make one a racist, bigot, or sexists, but must be addressed to overcome them.

---

[1] Greenwald, A. G., & Banaji, M. R. (1995). Implicit social cognition: Attitudes, self-esteem and stereotypes. *Psychological Review 102:4 – 27.*

[2] Sommers, S. R., & Ellsworth, P. C. (2000). Race in the courtroom: Perceptions of guilt and dispositional attributions. *Personality and Social Psychology Bulletin 26:1367 – 1379.*

<u>Does this recommendation require:</u>
Legislative Action: Yes☒ No☐
Executive/Administrative Action: Yes☒ No☐
Additional funding required: Yes☒ No☐

Recommendation Rank (Please provide a rank for each of your recommendations in order of importance with #1 being most important): #6

<u>Party responsible for implementation (you may choose more than one):</u>
Governor ☒
AG ☒
Legislature ☒
Association ☐
College/University ☐
Local Government ☒
Other: ☒ State Highway Patrol

Submitted by: Dr. Ronnie A. Dunn



# Task Force Recommendations

Problem to address: A number of the law enforcement agencies in Ohio, particularly in its urban areas, have come under some type of investigation or guidance by the U.S. Department of Justice's Civil Rights Division, e.g. Cleveland, Cincinnati, Warren, Steubenville, and the Franklin County Sheriff's Department. There has also been racial unrest in both Cincinnati and Toledo in 2001 and 2005 respectively and tensions are once again high as a result of three police-involved deaths of unarmed citizens in the state. These events have led to a climate of distrust of police among many in the African-American community and other minority communities and a questioning of the legitimacy of police within these communities. This Task Force was commissioned by Governor Kasich in response to these and other factors.

Recommendation (Please include justification why this will address the problem): While the work under taken by this Task Force is commendable, and the recommendations put forth will ideally result in some actionable items, the issues at the core of the divide between the impacted communities and the police are deep-seated.  Therefore, it is recommended that a standing State Commission on Community-Police Relations be established to monitor the implementation and progress of the recommendations that come out of this Task Force. In addition, this Commission should continue to review the policies, practices, and procedures of law enforcement agencies across the state and research and identify the best practices in problem-oriented, community-policing, within both a national and international context, for replication by Ohio law enforcement agencies. The Commission should be comprised of a cross-section of the state's minority communities, law enforcement, academia, elected officials, and the clergy.

Does this recommendation require:
Legislative Action: Yes☒  No☐
Executive/Administrative Action: Yes☒  No☐
Additional funding required: Yes☒  No☐

**Recommendation Rank** (Please provide a rank for each of your recommendations in order of importance with #1 being most important):  #7


<u>Party responsible for implementation (you may choose more than one)</u>:
Governor ☒
AG ☒
Legislature ☒
Association ☐
College/University ☐
Local Government ☐
Other: ☐  Click here to enter text.


Submitted by: Dr. Ronnie A. Dunn



# Task Force Recommendations

Problem to address: Bias-based policing and potentially volatile police-citizen interactions during traffic stops.

Recommendation (Please include justification why this will address the problem): It is recommended that the Ohio State Legislature reconsider the use of traffic cameras in the administration of traffic law enforcement. The most frequent incidence of police/citizen contacts takes place in the context of traffic stops. Nationally, 59% of all police/citizen encounters in 2005 occurred as a result of a traffic stop[i]. Also, the most potentially volatile and certain encounter that a police officer has in the routine performance of their duties is a traffic stop as attested to in the testimony of Toledo Police Sergeant Anita Madison, who stated that "she approaches every stop as if her life is in danger." This is also evidenced in the most recent police-involved shooting death in South Carolina, which resulted in the death of Walter Scott, an unarmed motorist. The use of traffic cameras would reduce the number of police-citizen interactions for the most obvious traffic violations, i.e. speeding and running a red-light.

In addition, the use of traffic cameras will remove the potential for bias-based policing in that the traffic camera provides an objective record of events, regardless of a motorist's race/ethnic, socioeconomic class, gender, sexual orientation, religion or any other social variable. In essence, the traffic cameras level the playing field for all motorists regardless of social background by removing human subjectivity and the potential for any type of bias, intentional or implicit, to affect the outcome of the traffic encounter. This was the original intent of the use of the traffic cameras as recommended to the Cleveland mayoral administration by this author in 2004,[ii] which was the first municipality to adopt the use of the cameras in the state, not to generate revenue which unfortunately became the focus of the debate on the cameras use throughout the state.

While this issue is very contentious and currently being challenged in the courts, this is an opportunity to address through legislation at the state level, the most troublesome aspects of the cameras use, namely due process during the appeal of contested traffic tickets and the placement of the cameras. The Legislature can enact legislation that sets basic state standards governing their usage by establishing administrative guidelines for the appeals process and basing the placement of the cameras on volume of traffic and traffic accident data for each municipality, which regional planning agencies throughout the state should maintain.

Given the heightened scrutiny and challenges that policing is under at the local, state, and national levels, and the related increased public support, demand, and usage of Body-Worn Cameras to record the behavior and interactions of law enforcement with the public, it would be unfortunate and somewhat hypocritical not to use the power of camera technology to record the law violating behavior of the public while reducing the risk that we place our law enforcement officers in daily through the enforcement of routine traffic laws. I would strongly recommend that our state elected officials reconsider the use of traffic cameras.

Does this recommendation require:
Legislative Action: Yes☒  No☐
Executive/Administrative Action: Yes☒  No☐
Additional funding required: Yes☐  No☒

Recommendation Rank (Please provide a rank for each of your recommendations in order of importance with #1 being most important): #7

Party responsible for implementation (you may choose more than one):
Governor ☒
AG ☒
Legislature ☒
Association ☐
College/University ☐
Local Government ☒
Other: ☐  Click here to enter text.

Submitted by: Dr. Ronnie A. Dunn

---

[i] Eith, C., & Durose, M. R. Contacts between Police and the Public, 2008.  U.S. Department of Justice, Office of Justice Programs: Washington, D.C.

[ii] Dunn, R. A. (2009). Measuring racial disparities in traffic ticketing within large urban jurisdictions. Public Performance and Management Review, 32, 537-561.; Dunn. R. A., & Reed, W. L. (2011). Racial Profiling: Causes & consequences. Dubuque, IA: Kendall-Hunt Publishing Co.

Recommendations
Sen. Cliff K. Hite



# Task Force Recommendations

Problem to address: Training – Chiefs of Police

Recommendation (Please include justification why this will address the problem): I recommend the attached legislation, listed as L-131-0808-1, be adopted by the General Assembly and implemented with the assistance of the Attorney General and local governments. This legislation, created in conjunction with the Ohio Association of Chiefs of Police, creates a training course for new chiefs, modeled after the successful course for new sheriffs. The legislation includes a clause requiring the training course to include "diversity training, with an emphasis on historical perspectives and community-police relations." I am also engaged in discussions about the funding mechanism included in the bill as the Attorney General has expressed interest in helping to pay for this new course. I believe that more training for the leaders of our law enforcement community would be a step toward solving the  roblems we've discussed.

Does this recommendation require:
Legislative Action: Yes☒   No☐
Executive/Administrative Action: Yes☒   No☐
Additional funding required: Yes☒   No☐

Recommendation Rank (Please provide a rank for each of your recommendations in order of importance with #1 being most important):  1

Party responsible for implementation (you may choose more than one):
Governor ☐
AG ☒
Legislature ☒
Association ☐
College/University ☐
Local Government ☒
Other: ☐  Click here to enter text.

Submitted by: Senator Cliff Hite

Reviewed As To Form By
**Legislative Service Commission**

L_131_0808-1

**131st General Assembly**

**Regular Session**                                        **. B. No.**

**2015-2016**

---

# A BILL

| | |
|---|---|
| To amend sections 505.49, 737.052, and 737.15 and | 1 |
| to enact section 109.804 of the Revised Code to | 2 |
| require the Ohio peace officer training | 3 |
| commission to develop and conduct a chief of | 4 |
| police training course for newly appointed | 5 |
| chiefs of police appointed on or after January | 6 |
| 1, 2016, to require the attorney general to | 7 |
| appoint a chief of police training education | 8 |
| committee, and to require newly appointed chiefs | 9 |
| of police of villages, municipal corporations, | 10 |
| and townships to attend the training course | 11 |
| before or within six months of appointment as a | 12 |
| chief of police. | 13 |

**BE IT ENACTED BY THE GENERAL ASSEMBLY OF THE STATE OF OHIO:**

| | |
|---|---|
| **Section 1.** That sections 505.49, 737.052, and 737.15 be | 14 |
| amended and section 109.804 of the Revised Code be enacted to | 15 |
| read as follows: | 16 |
| **Sec. 109.804.** (A) The Ohio peace officer training | 17 |
| commission shall develop and conduct a chief of police training | 18 |

‖‖‖‖‖‖‖‖‖‖‖‖‖‖

4wdiujyx9chqhnsxdfvgau

. B. No.                                                    **Page 2**
L_131_0808-1

course lasting forty hours for newly appointed chiefs of police       19
appointed on or after January 1, 2016. The commission shall           20
establish criteria for what constitutes successful completion of      21
the course. The commission shall conduct the course at the Ohio       22
peace officer training academy and shall offer the course            23
semiannually.                                                         24

   (B) The attorney general shall appoint a chief of police      25
training education committee. The committee shall consist of          26
five members and shall include at least one member of the Ohio        27
peace officer training commission and at least one member of the      28
Ohio association of chiefs of police. The commission and the          29
committee jointly shall determine the course topics, which shall      30
include, among other topics, diversity training with an emphasis      31
on historical perspectives and community-police relations, to be      32
offered during the chief of police training course and shall          33
meet at least semiannually to consider matters of curriculum,         34
extensions, and equivalency training.                                 35

   (C) A newly appointed chief of police may request an          36
equivalency exemption from the chief of police training course        37
by submitting a request and supporting documentation to the           38
chief of police training education committee not more than ten        39
calendar days following the person's appointment as a chief of        40
police. The Ohio peace officer training commission may grant an       41
equivalency exemption based on an evaluation of the person's          42
request and the documentation submitted to the new chief of           43
police training education committee. The chief of police              44
training education committee shall determine the curriculum           45
components eligible for equivalency exemption and notify the          46
person of any remaining coursework needed to comply with the          47
chief of police training course requirements.                         48

    (D) Upon presentation of evidence by a newly appointed      49
chief of police that because of a medical disability or other     50
good cause the newly appointed chief of police is unable to       51
complete the chief of police training course, the chief of        52
police training education committee may defer the requirement     53
for the newly appointed chief of police to complete the chief of  54
police training course until the disability or cause terminates.  55

    (E) As used in this section, "newly appointed chief of      56
police" means a person who did not hold the office of chief of    57
police on the date the person was appointed chief of police.      58

    **Sec. 505.49.** (A) As used in this section, "felony" has the   59
same meaning as in section 109.511 of the Revised Code.           60

    (B)(1) The township trustees of a township police           61
district, by a two-thirds vote of the board, or a joint police    62
district board, by majority vote of its members, may adopt rules  63
necessary for the operation of the township or joint police       64
district, including a determination of the qualifications of the  65
chief of police, patrol officers, and others to serve as members  66
of the district police force.                                     67

    (2) Except as otherwise provided in division (E) of this     68
section and subject to division (D) of this section, the          69
township trustees of a township police district, by a two-thirds  70
vote of the board or the joint police district board, by          71
majority vote of its members, shall appoint a chief of police     72
for the district, determine the number of patrol officers and     73
other personnel required by the district, and establish salary    74
schedules and other conditions of employment for the employees    75
of the township or joint police district. The chief of police of  76
the district shall serve at the pleasure of the township          77
trustees or the joint police district board and shall appoint     78

patrol officers and other personnel that the district may          79
require, subject to division (D) of this section and to the        80
rules and limits as to qualifications, salary ranges, and          81
numbers of personnel established by the board of township          82
trustees or the joint police district board. The township          83
trustees may include in the township police district and under     84
the direction and control of the chief of police any constable     85
appointed pursuant to section 509.01 of the Revised Code, or may   86
designate the chief of police or any patrol officer appointed by   87
the chief of police as a constable, as provided for in section     88
509.01 of the Revised Code, for the township police district.      89

    (3) Except as provided in division (D) of this section, a      90
patrol officer, other police district employee, or police          91
constable, who has been awarded a certificate attesting to the     92
satisfactory completion of an approved state, county, or           93
municipal police basic training program, as required by section    94
109.77 of the Revised Code, may be removed or suspended only       95
under the conditions and by the procedures in sections 505.491     96
to 505.495 of the Revised Code. Any other patrol officer, police   97
district employee, or police constable shall serve at the          98
pleasure of the township trustees or joint police district         99
board. In case of removal or suspension of an appointee by the     100
board of township trustees of a township police district or the    101
joint police district board, that appointee may appeal the         102
decision of either board to the court of common pleas of the       103
county in which the district is situated to determine the          104
sufficiency of the cause of removal or suspension. The appointee   105
shall take the appeal within ten days of written notice to the     106
appointee of the decision of the board.                            107

    (C)(1) Division (B) of this section does not apply to a        108
township that has a population of ten thousand or more persons     109

residing within the township and outside of any municipal          110
corporation, that has its own police department employing ten or   111
more full-time paid employees, and that has a civil service        112
commission established under division (B) of section 124.40 of     113
the Revised Code. The township shall comply with the procedures    114
for the employment, promotion, and discharge of police personnel   115
provided by Chapter 124. of the Revised Code, except as            116
otherwise provided in divisions (C)(2) and (3) of this section.    117

(2) The board of township trustees of the township may            118
appoint the chief of police, and a person so appointed shall be    119
in the unclassified service under section 124.11 of the Revised    120
Code and shall serve at the pleasure of the board. A person        121
appointed chief of police under these conditions who is removed    122
by the board or who resigns from the position shall be entitled    123
to return to the classified service in the township police         124
department, in the position that person held previous to the       125
person's appointment as chief of police.                           126

(3) The appointing authority of an urban township, as             127
defined in section 504.01 of the Revised Code, may appoint to a    128
vacant position any one of the three highest scorers on the        129
eligible list for a promotional examination.                       130

(4) The board of township trustees of a township described       131
in this division shall determine the number of personnel           132
required and establish salary schedules and conditions of          133
employment not in conflict with Chapter 124. of the Revised        134
Code.                                                              135

(5) Persons employed as police personnel in a township           136
described in this division on the date a civil service             137
commission is appointed pursuant to division (B) of section        138
124.40 of the Revised Code, without being required to pass a       139

competitive examination or a police training program, shall     140
retain their employment and any rank previously granted them by     141
action of the township trustees or otherwise, but those persons     142
are eligible for promotion only by compliance with Chapter 124.     143
of the Revised Code.     144

(6) This division does not apply to constables appointed     145
pursuant to section 509.01 of the Revised Code. This division is     146
subject to division (D) of this section.     147

(D)(1) The board of township trustees or a joint police     148
district board shall not appoint or employ a person as a chief     149
of police, and the chief of police shall not appoint or employ a     150
person as a patrol officer or other peace officer of a township     151
police district, township police department, or joint police     152
district on a permanent basis, on a temporary basis, for a     153
probationary term, or on other than a permanent basis if the     154
person previously has been convicted of or has pleaded guilty to     155
a felony.     156

(2)(a) The board of township trustees or joint police     157
district board shall terminate the appointment or employment of     158
a chief of police, patrol officer, or other peace officer of a     159
township police district, township police department, or joint     160
police district who does either of the following:     161

(i) Pleads guilty to a felony;     162

(ii) Pleads guilty to a misdemeanor pursuant to a     163
negotiated plea agreement as provided in division (D) of section     164
2929.43 of the Revised Code in which the chief of police, patrol     165
officer, or other peace officer of a township police district,     166
township police department, or joint police district agrees to     167
surrender the certificate awarded to that chief of police,     168

patrol officer, or other peace officer under section 109.77 of   169
the Revised Code.   170

    (b) The board shall suspend the appointment or employment   171
of a chief of police, patrol officer, or other peace officer of   172
a township police district, township police department, or joint   173
police district who is convicted, after trial, of a felony. If   174
such chief of police, patrol officer, or other peace officer   175
files an appeal from that conviction and the conviction is   176
upheld by the highest court to which the appeal is taken, or, if   177
no timely appeal is filed, the board shall terminate the   178
appointment or employment of that chief of police, patrol   179
officer, or other peace officer. If the chief of police, patrol   180
officer, or other peace officer of a township police district,   181
township police department, or joint police district files an   182
appeal that results in that chief of police's, patrol officer's,   183
or other peace officer's acquittal of the felony or conviction   184
of a misdemeanor, or in the dismissal of the felony charge   185
against the chief of police, patrol officer, or other peace   186
officer, the board shall reinstate that chief of police, patrol   187
officer, or other peace officer. A chief of police, patrol   188
officer, or other peace officer who is reinstated under division   189
(D)(2)(b) of this section shall not receive any back pay unless   190
the conviction of that chief of police, patrol officer, or other   191
peace officer of the felony was reversed on appeal, or the   192
felony charge was dismissed, because the court found   193
insufficient evidence to convict the chief of police, patrol   194
officer, or other peace officer of the felony.   195

    (3) Division (D) of this section does not apply regarding   196
an offense that was committed prior to January 1, 1997.   197

    (4) The suspension or termination of the appointment or   198

employment of a chief of police, patrol officer, or other peace                199
officer under division (D)(2) of this section shall be in                      200
accordance with Chapter 119. of the Revised Code.                             201

   (E) The board of township trustees or the joint police            202
district board may enter into a contract under section 505.43 or             203
505.50 of the Revised Code to obtain all police protection for               204
the township police district or joint police district from one              205
or more municipal corporations, county sheriffs, or other                    206
townships. If the board enters into such a contract, subject to             207
division (D) of this section, it may, but is not required to,               208
appoint a police chief for the district.                                      209

   (F) The members of the police force of a township police           210
district of a township, or of a joint police district board                  211
comprised of a township, that adopts the limited self-government            212
form of township government shall serve as peace officers for               213
the township territory included in the district.                             214

   (G) A chief of police or patrol officer of a township            215
police district, township police department, or joint police                216
district may participate, as the director of an organized crime             217
task force established under section 177.02 of the Revised Code              218
or as a member of the investigatory staff of that task force, in            219
an investigation of organized criminal activity in any county or            220
counties in this state under sections 177.01 to 177.03 of the              221
Revised Code.                                                                 222

   (H)(1) A newly appointed chief of police appointed on or         223
after January 1, 2016, shall attend a chief of police training             224
course conducted by the Ohio peace officer training commission             225
pursuant to division (A) of section 109.804 of the Revised Code            226
within six months following the person's appointment as a chief            227
of police under this section. While attending the chief of                  228

police training course, a newly appointed chief of police shall                 229
receive compensation in the same manner and amounts as if                       230
carrying out the powers and duties of the office of chief of                    231
police. The costs of conducting the chief of police training                    232
course and the cost of meals, lodging, and travel of a newly                    233
appointed chief of police attending the chief of police training               234
course shall be paid from the budget of the township police                     235
district or the budget of the joint police district board that                  236
appointed the newly appointed chief of police.                                  237

   (2) "Newly appointed chief of police" means a person who      238
did not hold the office of chief of police on the date the                      239
person was appointed chief of police.                                           240

   **Sec. 737.052.** (A) As used in this section, "felony" has    241
the same meaning as in section 109.511 of the Revised Code.                     242

   (B)(1) The director of public safety shall not appoint a       243
person as a chief of police, a member of the police department                  244
of the municipal corporation, or an auxiliary police officer on                 245
a permanent basis, on a temporary basis, for a probationary                     246
term, or on other than a permanent basis if the person                          247
previously has been convicted of or has pleaded guilty to a                     248
felony.                                                                         249

   (2)(a) The director of public safety shall terminate the       250
employment of a chief of police, member of the police                           251
department, or auxiliary police officer who does either of the                  252
following:                                                                      253

   (i) Pleads guilty to a felony;                                  254

   (ii) Pleads guilty to a misdemeanor pursuant to a              255
negotiated plea agreement as provided in division (D) of section                256
2929.43 of the Revised Code in which the chief of police, member                257

of the police department, or auxiliary police officer agrees to                      258
surrender the certificate awarded to the chief of police, member                     259
of the police department, or auxiliary police officer under                          260
section 109.77 of the Revised Code.                                                   261

    (b) The director shall suspend from employment a chief of                    262
police, member of the police department, or auxiliary police                          263
officer who is convicted, after trial, of a felony. If the chief                      264
of police, member of the police department, or auxiliary police                       265
officer files an appeal from that conviction and the conviction                       266
is upheld by the highest court to which the appeal is taken or                        267
if the chief of police, member of the police department, or                           268
auxiliary police officer does not file a timely appeal, the                           269
director shall terminate that person's employment. If the chief                       270
of police, member of the police department, or auxiliary police                       271
officer files an appeal that results in that person's acquittal                       272
of the felony or conviction of a misdemeanor, or in the                               273
dismissal of the felony charge against that person, the director                      274
shall reinstate that person. A chief of police, member of the                         275
police department, or auxiliary police officer who is reinstated                      276
under division (B)(2)(b) of this section shall not receive any                        277
back pay unless that person's conviction of the felony was                            278
reversed on appeal, or the felony charge was dismissed, because                       279
the court found insufficient evidence to convict that person of                       280
the felony.                                                                           281

    (3) Division (B) of this section does not apply regarding                      282
an offense that was committed prior to January 1, 1997.                                283

    (4) The suspension from employment, or the termination of                     284
the employment, of the chief of police, member of the police                          285
department, or auxiliary police officer under division (B)(2) of                       286
this section shall be in accordance with Chapter 119. of the                          287

. B. No.                                                    Page 11
L_131_0808-1

Revised Code.                                                    288

   (C)(1) A newly appointed chief of police appointed on or      289
after January 1, 2016, shall attend a chief of police training   290
course conducted by the Ohio peace officer training commission   291
pursuant to division (A) of section 109.804 of the Revised Code  292
within six months following the person's appointment as a chief  293
of police. While attending the chief of police training course,  294
a newly appointed chief of police shall receive compensation in  295
the same manner and amounts as if carrying out the powers and    296
duties of the office of chief of police. The costs of conducting 297
the chief of police training course and the cost of meals,       298
lodging, and travel of a newly appointed chief of police         299
attending the chief of police training course shall be paid from 300
the budget of the city department of public safety for which the 301
newly appointed chief of police was appointed.                   302

   (2) "Newly appointed chief of police" means a person who      303
did not hold the office of chief of police on the date the       304
person was appointed chief of police.                            305

   Sec. 737.15. (A) Each village shall have a marshal,         306
designated chief of police, appointed by the mayor with the      307
advice and consent of the legislative authority of the village,  308
who need not be a resident of the village at the time of         309
appointment but shall become a resident thereof within six       310
months after appointment by the mayor and confirmation by the    311
legislative authority unless such residence requirement is       312
waived by ordinance, and who shall continue in office until       313
removed therefrom as provided by section 737.171 of the Revised  314
Code.                                                            315

   (B) No person shall receive an appointment under this       316
section after January 1, 1970, unless, not more than sixty days  317

. B. No.                                                                Page 12
L_131_0808-1

```
prior to receiving such appointment, the person has passed a          318
physical examination, given by a licensed physician, a physician      319
assistant, a clinical nurse specialist, a certified nurse             320
practitioner, or a certified nurse-midwife, showing that the          321
person meets the physical requirements necessary to perform the       322
duties of village marshal as established by the legislative           323
authority of the village. The appointing authority shall, prior       324
to making any such appointment, file with the Ohio police and         325
fire pension fund a copy of the report or findings of said            326
licensed physician, physician assistant, clinical nurse               327
specialist, certified nurse practitioner, or certified nurse-         328
midwife. The professional fee for such physical examination           329
shall be paid for by such legislative authority.                      330

    (C)(1) A newly appointed chief of police appointed on or          331
after January 1, 2016, shall attend a chief of police training        332
course conducted by the Ohio peace officer training commission        333
pursuant to division (A) of section 109.804 of the Revised Code       334
within six months following the person's appointment as a chief       335
of police under this section. While attending the chief of            336
police training course, a newly appointed chief of police shall       337
receive compensation in the same manner and amounts as if             338
carrying out the powers and duties of the office of chief of          339
police. The costs of conducting the chief of police training          340
course and the cost of meals, lodging, and travel of a newly          341
appointed chief of police attending the chief of police training      342
course shall be paid from the budget of the village for which         343
the newly appointed chief of police was appointed.                    344

    (2) "Newly appointed chief of police" means a person who          345
did not hold the office of chief of police on the date the            346
person was appointed chief of police.                                 347
```

**. B. No.**
**L_131_0808-1**

      **Section 2.** That existing sections 505.49, 737.052, and      348

737.15 of the Revised Code are hereby repealed.      349



# Task Force Recommendations

Problem to address: Training – Peace Officer Training Academy

Recommendation (Please include justification why this will address the problem): Add a course to the Peace Officer Training Academy requirements that represents diversity training, with an emphasis on historical perspectives and community-police relations.

<u>Does this recommendation require</u>:
Legislative Action: Yes☐  No☒
Executive/Administrative Action: Yes☒  No☐
Additional funding required: Yes☒  No☐

Recommendation Rank (Please provide a rank for each of your recommendations in order of importance with #1 being most important):  2

<u>Party responsible for implementation (you may choose more than one)</u>:
Governor ☐
AG ☒
Legislature ☐
Association ☐
College/University ☐
Local Government ☐
Other: ☐  Click here to enter text.

Submitted by: Senator Cliff Hite

Recommendations
Rev. Damon Lynch III



# Task Force Recommendations

Problem to address: Click here to enter text.

Attached is a summary of all of the recommendations I have received from staff. The problems my recommendations focus on are (1) community relations/engagement and (2) Investigation/Accountability. I will refer to other recommendations where possible to aid in drawing our ideas together.

The recommendations set out below are related and are grounded in our twelve years implementing the Cincinnati Collaborative Agreement. The problems we addressed in Cincinnati were reflected in all of the testimony and pain I witnessed from community members in our hearings. People of color feel occupied, not served by the police. Crime strategies are focused on arrests, often without attention to causes. Police use too much force. Investigations of officer involved shootings and violence lack integrity. The recommendations below are grounded in the five principles that guided our Cincinnati Collaborative and where possible I am literally adapting the text of our Collaborative to serve our purposes. The principles or goals of the Collaborative were agreed to by ALL stakeholders – communities of color, police officers, police administration, business, social services, youth, majority communities, and faith communities:

> First Goal: Police Officers and Community Members Will Become Proactive Partners in Community Problem Solving

> Second Goal: Build Relationships of Respect, Cooperation and Trust Within and Between Police and Communities

> Third Goal: Improve Education, Oversight, Monitoring, Hiring Practices and Accountability of CPD

> Fourth Goal: Ensure Fair, Equitable, and Courteous Treatment for All

> Fifth Goal: Create Methods to Establish the Public's Understanding of Police Policies and Procedures and Recognition of Exceptional Service in an Effort to Foster Support for the Police

Recommendation (Please include justification why this will address the problem): Click here to enter text.

1. **Adopt and Promote Problem Solving as the Principle Strategy to Address Crime** (community relations/engagement (first, second, fourth collaborative goals). The State and local governments should adopt problem solving as their principle strategy for addressing problems of crime and disorder. <u>An incubator or resource center should be established in affiliation with the Cincinnati Police Department and the University of Cincinnati School of Criminal Justice and the Cincinnati Community Police Partnering Center to provide training,</u>

<u>resources and practical assistance to agencies and governments across the state as they
adopt problem solving. Adequate staff and funding must be provided and the work must be
sustained over time since this involves a change in law enforcement culture.</u>

    <u>Explanation:</u>

a. Community problem oriented policing is one form of police work that seeks resolution of troublesome circumstances in the community. These troublesome circumstances are framed as problems to solve. They usually reveal themselves as a form of repeat patterns of offending, victimization, or locations. First, problems need to be carefully defined. A useable problem definition requires a description of harmful behaviors and the environments where these behaviors occur.

b. The second principle guiding community problem oriented policing is that problems are carefully analyzed prior to developing a solution. Community problem oriented policing is an information intensive strategy that places a premium on data, intelligence, community input, and analysis. The analysis is designed to reveal critical aspects of the problem that can be altered to effect a reduction in the problem.

c. The third principle is that the police and their partners engage in a broad search for solutions based on the analysis of information. A law enforcement response is always a possibility, but may not be required. Rather, a range of options is explored, often drawing from the field of "situational crime prevention" that block opportunities to commit crimes and disorder. Effective solutions to problems may require the active participation of and partnership with other government agencies, community members, and the private sector. This implies that for a community problem oriented policing strategy to be effective there must be close police-community relations and the local government must support this approach.

d. The fourth principle is that problem-solving efforts are evaluated to determine if the problem has been reduced. Here again, the use of information technology and analysis is critical to assure continuous improvement. If the problem has been successfully addressed, the police can move on to other problems. If it has not, then more work needs to be done, including a re-analysis of the problem or a search for alternative solutions.

e. This strategy can be implemented through a problem-solving process known as SARA (Scanning, Analysis, Response, and Assessment) which uses the principles set out above to effectively address crime, disorder, and the fear of crime in communities.

f. This recommendation calls for the Ohio State Problem Solving Resource Center to be housed in Cincinnati where there is a robust problem solving effort underway. The Cincinnati Police Department has been implementing problem solving department-wide using the SARA model since 2006. A copy of the Cincinnati Problem Solving procedure is attached. The University of Cincinnati School of Criminal Justice is a leading center for problem solving world-wide. The Cincinnati Community Police Partnering Center works with the Cincinnati police to engage local residents in problem solving. The Ohio State Problem Solving Resource Center will be anchored among these partners and through those relationships be positioned to assist state-wide immediately.

2

g. This recommendation expands and builds on the ideas set out by Rep Reece, Amy Murray, Tim Derickson, and Bernie Moreno and relates to many of the others.

2. **Independent Investigation of Serious Officer Involved Injuries to Citizens.**

   a. This recommendation states that the local jurisdictions should either establish a Citizen Complaint Authority as described below or enlist the Ohio Bureau of Investigation to do a civil/administrative investigation in addition to the criminal investigations it now provides. Local jurisdictions must not assume that a failure to indict by a grand jury means that officers have followed use of force procedures and should escape discipline. That requires a separate, independent investigation.

   b. Local governments shall be encouraged to establish a Citizen Complaint Authority (CCA) modeled on the Cincinnati Citizen Complaint Authority. The CCA will have three components: (1) a Board of seven diverse citizens appointed by the chief elected official and approved by the local legislative authority, (2) a full-time Executive Director with appropriate support staff, and (3) a team of professional investigators. Each investigator shall have prior professional experience in investigations, and may be a former police or other law enforcement officer from outside the jurisdiction.

   c. Each citizen complaint, excluding matters involving criminal investigations, will be directed to the CCA regardless of where it initially is filed. At a minimum, the CCA shall open its own investigation upon (i) receipt of a complaint of serious misconduct, or (ii) knowledge by the Executive Director of allegations of serious police intervention, including, but not be limited to, major use of force, shots fired or deaths in custody.

   d. As a condition of employment, all police officers and other employees are required to provide truthful and accurate information to the CCA. In addition to the foregoing, when a key witness other than an employee of the jurisdiction refuses to cooperate in an investigation, the Executive Director may recommend to the Board that a subpoena be issued to compel such testimony, and the Board shall have the authority to request such a subpoena from the legislative body. Subpoenas for the attendance of persons shall be secured only through the jurisdiction's legislative body. The Board shall have the authority to issue subpoenas for documents, photographs, audio tapes, electronic files and tangible things.

   e. Following a hearing, the Board may either approve or disapprove the Executive Director's findings and recommendations. Where the findings and recommendations are approved, they shall be submitted to the Police Chief and the Appointing Authority of the jurisdiction. If they are disapproved, the Board shall state its reasons and may direct that further investigation be pursued. The Board may issue its own findings and recommendations, and submit them along with the Executive Director's original report to the Police Chief and the Appointing Authority. In all cases, the Appointing Authority and Police Chief will refrain from making a final decision on discipline until after receipt of the CCA report. All investigations and recommendations shall be completed within ninety days unless that period is extended for good cause.

   f. The CCA will examine complaint patterns and police policies and procedures and make any recommendations that might provide opportunities for the police and community to reduce complaints and improve trust.

   g. If a jurisdiction does not establish a CCA, it should be required to secure an investigation of all serious police interventions by the Ohio Bureau of Criminal Investigation (BCI) with respect to any potential criminal violations as well as compliance with local use of force and other procedures for use in any potential

<u>discipline proceedings.</u>  Appropriate safeguards under *Garrity v. New Jersey* must be provided to any employee.  This may require additional funding for BCI.

h. This recommendation relates to others provided by Rev. George Murry, Tom Roberts, Michael Navarre, Amy Murray, Dr. Ronnie Dunn, Sheriff Stanforth, Ron O'Brien, Andre Porter, Sen Williams, and Rep. Reece.

<u>Does this recommendation require</u>:
Legislative Action: Yes☒   No☐
Executive/Administrative Action: Yes☒   No☐
Additional funding required: Yes☒   No☐

**Recommendation Rank** (Please provide a rank for each of your recommendations in order of importance with #1 being most important):  Click here to enter text.
Both of these proposals deserve top priority

<u>Party responsible for implementation (you may choose more than one)</u>:
Governor ☒
AG ☒
Legislature ☒
Association ☐
College/University ☒
Local Government ☒
Other: ☐  Click here to enter text.

**Submitted by:** Click here to enter text.  Rev. Damon Lynch

4

Recommendations
Bernie Moreno



# Task Force Recommendations

Problem to address: Lack of minority and diverse policer officers. This lacks of diversity leads to the feeling within the community that the police do not understand or sympathize with their issues.

Recommendation (Please include justification why this will address the problem): Provide a "full ride" scholarship to any Ohio public University or Community College for female or minority (underrepresented) residents of urban communities. The students would have to qualify for admission, but the scholarship would include room, board, and meals. They would study criminal justice and, when they graduate, would serve a minimum of four years in law enforcement as a police officer in an urban community in Ohio.

Does this recommendation require:
Legislative Action: Yes☐ No☐
Executive/Administrative Action: Yes☒ No☐
Additional funding required: Yes☐ No☐

Recommendation Rank (Please provide a rank for each of your recommendations in order of importance with #1 being most important): #1

Party responsible for implementation (you may choose more than one):
Governor ☒
AG ☐
Legislature ☐
Association ☐

College/University ☒
Local Government ☐
Other: ☐  Click here to enter text.

Submitted by: Bernie Moreno



# Task Force Recommendations

Problem to address: Police departments have officers on the squad that do not follow proper policies and procedures. When this happens, the actions of this very few group of officers leads to a lack of credibility within the community of the entire department.

Recommendation (Please include justification why this will address the problem): Provide a uniform, state-wide early information and intervention system (EIIS) that is a benchmark in the country. This system will allow everyone from first level supervision to the Ohio Department of Public Safety to receive, analyze, and act upon officer related data. Use of this data will help identify potential problems well before they become "incidents." Sometimes small problems become really big ones!

Does this recommendation require:
Legislative Action: Yes☒  No☐
Executive/Administrative Action: Yes☒  No☐
Additional funding required: Yes☒  No☐

Recommendation Rank (Please provide a rank for each of your recommendations in order of importance with #1 being most important): #2

Party responsible for implementation (you may choose more than one):
Governor ☒
AG ☒
Legislature ☒
Association ☒

College/University ☐
Local Government ☒
Other: ☐ Click here to enter text.

Submitted by: Bernie Moreno



# Task Force Recommendations

Problem to address: Police departments face significant financial pressures, resulting in a steady decline in funding for training. As in any organization, the lack of training causes a breakdown in the quality of the human capital being deployed. This leads to police officers being put in situations in which they have little or no expertise. We have seen the results quite clearly with both tactical and decision making errors that have led to the loss of life (Crawford/Rice). The job of being a police officer should be dramatically elevated in Ohio. We need to commit to holding up this profession as just that … for professionals; well trained and ready for any situation.

Recommendation (Please include justification why this will address the problem): The State of Ohio should establish five regional, State run and State funded, police training academies that would not only conduct initial officer training, but would also provide on-going instruction on the following: Crisis intervention, mental health, narcotics, tactics, cultural competency, problem oriented policing, and inherent bias training. Although I do not believe this task force is the appropriate one to get granular on the who/how/when of this, we can recommend that the Governor act quickly to either adopt the Attorney General's task force recommendations or ask subject matter experts such as the Police Executive Research Forum (PERF) to provide more detailed recommendations. These five centers will ensure consistent, world-class training for all Ohio Police Officers.

Does this recommendation require:
Legislative Action: Yes☒ No☐
Executive/Administrative Action: Yes☒ No☐
Additional funding required: Yes☒ No☐

Recommendation Rank (Please provide a rank for each of your recommendations in order of importance with #1 being most important): #2

Party responsible for implementation (you may choose more than one):

Governor ☒
AG ☒
Legislature ☒
Association ☒
College/University ☐
Local Government ☒
Other: ☐  Click here to enter text.

Submitted by: Bernie Moreno



# Task Force Recommendations

Problem to address: Faith in the police department by those who they are charged with serving is critical to successful law enforcement. When excessive force complaints come in or deadly force is used, the community sessions made it crystal clear that the community does not have confidence that the department will investigate "themselves" properly or fairly. This is a central issue to ensuring police legitimacy.

Recommendation (Please include justification why this will address the problem): The State of Ohio should adopt the Wisconsin model and institute a special investigations unit within the Department of Public Safety to investigate complaints as laid out in the Bill.

Does this recommendation require:
Legislative Action: Yes☒ No☐
Executive/Administrative Action: Yes☒ No☒
Additional funding required: Yes☒ No☐

Recommendation Rank (Please provide a rank for each of your recommendations in order of importance with #1 being most important): #4

Party responsible for implementation (you may choose more than one):
Governor ☒
AG ☒
Legislature ☒
Association ☒
College/University ☐
Local Government ☐
Other: ☐ Click here to enter text.

Submitted by: Bernie Moreno



# Task Force Recommendations

Problem to address: Having the police seen by the community as "the good guys" is critical to their ability to solve crimes and ensure laws are followed. Too often, we heard from community members that 911 calls were misinterpreted or the officers lacked the tools and equipment necessary for them to do their jobs properly.

Recommendation (Please include justification why this will address the problem): Ohio should set a minimum requirement for each municipality to maintain in terms of equipment (computers, radios, etc). In addition, the State should be constantly on the look-out for "cutting edge" technology that will allow officers to do their jobs better, more efficiently, and safer for themselves and the community. For instance, there may be an opportunity to seek technology that sends 911 voice recordings directly to a squad car. That would be an example of a technology the State can validate and then provide to municipalities across Ohio.

Does this recommendation require:
Legislative Action: Yes☒  No☐
Executive/Administrative Action: Yes☒  No☐
Additional funding required: Yes☒  No☐

Recommendation Rank (Please provide a rank for each of your recommendations in order of importance with #1 being most important): #5

Party responsible for implementation (you may choose more than one):
Governor ☒
AG ☐
Legislature ☒
Association ☐

College/University ☒
Local Government ☐
Other: ☐ Click here to enter text.

Submitted by: Bernie Moreno

Recommendations
Councilwoman Amy Murray



# Task Force Recommendations

**Problem to address:** Police Training

**Recommendation** (Please include justification why this will address the problem):

1. Work with Attorney General Dewine and his Task Force on Police Training. They are looking at this subject in depth and we should share and collaborate to come out with next outcome for changes needed in Police Training statewide.

2. Increase minimum yearly training. Currently it is funded at a minimum 4 hours per year. This drastically needs to be increased. Should include key training in active shooter situations, crisis intervention training and reality based training. The better and more often we provide training, the better results when Police Officers are faced active shooter (or alleged active shooter situation.)

<u>Does this recommendation require:</u>
Legislative Action: Yes☐ No☐
Executive/Administrative Action: Yes☐ No☐
Additional funding required: YesX☐ No☐

**Recommendation Rank** (Please provide a rank for each of your recommendations in order of importance with #1 being most important): 1

<u>Party responsible for implementation (you may choose more than one)</u>:
Governor x ☐
AG ☐x
Legislature ☐ x
Association ☐
College/University ☐
Local Government ☐
Other: ☐  Click here to enter text.

**Submitted by:** Amy Murray



# Task Force Recommendations

**Problem to address:** Lack of consistency in communicating about police involved shootings

**Recommendation** (Please include justification why this will address the problem): We need a state-wide best practices approach of how to communicate to the public in police involved shootings.

All Police Chief's and Sheriff's should understand this protocol and it should be used in each and every police involved shooting. Should include how and when information is released, key people in community to contact about incident, communication protocol with family, media and local leaders. From my understanding it is critical that we are open and transparent immediately after a shooting.

<u>Does this recommendation require</u>:
Legislative Action: Yes☐ No☐
Executive/Administrative Action: Yes☐ No☐
Additional funding required: Yes☐ No☐

**Recommendation Rank** (Please provide a rank for each of your recommendations in order of importance with #1 being most important): 2

<u>Party responsible for implementation (you may choose more than one)</u>:
Governor ☐x
AG ☐ x

Legislature ☐
Association ☐
College/University ☐
Local Government ☐
Other: ☐ Click here to enter text.

**Submitted by:** Amy Murray



# Task Force Recommendations

**Problem to address:** How to talk to police

**Recommendation** (Please include justification why this will address the problem): We heard from many parents that they were afraid for their children and wanted to know how to have them speak/interact with police.

1) Students in Akron developed a card that they share at schools that was created by students (from what I have heard) that tells young black youth how to speak and interact with police if they are stopped. This would be great to share throughout the state.
2) Wild idea - but we need to get message out to all drivers of what they should do if stopped by police. After seeing videos of police stops where police officers are shot at - you understand that there is no "routine traffic stop". People should be aware if your are stopped - what you should do to protect yourself and the police office (hands on steering wheel to show you have no weapon). Can we introduce this type of information at Driver's Education classes or on driver's exam. This way we will know all drivers have this critical information.

<u>Does this recommendation require</u>:
Legislative Action: Yes☐ No☐
Executive/Administrative Action: Yes☐ No☐
Additional funding required: Yes☐ No☐

**Recommendation Rank** (Please provide a rank for each of your recommendations in order of importance with #1 being most important): 3

**Party responsible for implementation (you may choose more than one):**
Governor ☐
AG ☐
Legislature ☐
Association ☐
College/University ☐
Local Government ☐
Other: ☐  not sure who would be responsible

**Submitted by:** Amy Murray



# Task Force Recommendations

**Problem to address:** Police Relationships in their community

**Recommendation** (Please include justification why this will address the problem): Look at the Cincinnati model and develop specific plans to enhance relationships between police and community leaders. Should include identifying key leaders in the community for police to build their relationship, police attending monthly neighborhood council meetings, having new Police Officers spend first week on force providing community service work in neighborhoods etc.

<u>Does this recommendation require</u>:
Legislative Action: Yes☐  No☐
Executive/Administrative Action: Yes☐  No☐
Additional funding required: Yes☐  No☐x

**Recommendation Rank** (Please provide a rank for each of your recommendations in order of importance with #1 being most important):  4

<u>Party responsible for implementation (you may choose more than one)</u>:
Governor ☐
AG ☐

Legislature ☐
Association ☐
College/University ☐
Local Government ☐X
Other: ☐ Click here to enter text.

**Submitted by:** Amy Murray



# Task Force Recommendations

**Problem to address:** Communities understanding how police make split second decisions

**Recommendation** (Please include justification why this will address the problem): I think it is important that the community have an opportunity to participate in Police Simulations and see actual video from police stops. It will better help the public understand that each stop could be life-threatening (for all involved) and the situations and decisions that police officers have to make in a split second. At a recent neighborhood summit in Cincinnati this was one of our most well attended classes and people left understanding more of what the police officers face in this situations.

<u>Does this recommendation require</u>:
Legislative Action: Yes☐ No☐
Executive/Administrative Action: Yes☐ No☐
Additional funding required: Yes☐ No☐

**Recommendation Rank** (Please provide a rank for each of your recommendations in order of importance with #1 being most important): 5

<u>Party responsible for implementation (you may choose more than one)</u>:
Governor ☐

AG ☐
Legislature ☐
Association ☐
College/University ☐
Local Government ☐ X
Other: ☐ Click here to enter text.

Submitted by: Amy Murray



# Task Force Recommendations

**Problem to address:** Independent ivestigation of police involved shootings

**Recommendation** (Please include justification why this will address the problem): One of the items that was mentioned time and time again at the public comment sessions were that people did not feel that the officer involved shootings were fairly reviewed. They felt that it was done internally and that justice would not prevail. We should implement a state wide policy for police involved shootings that takes the investigation out of the local community and have a state/region team that investigates police related shootings.

<u>Does this recommendation require</u>:
Legislative Action: Yes☐  No☐
Executive/Administrative Action: Yesx☐  No☐
Additional funding required: Yes☐  No☐

**Recommendation Rank** (Please provide a rank for each of your recommendations in order of importance with #1 being most important): 2

<u>Party responsible for implementation (you may choose more than one)</u>:
Governor ☐

AG ☐ x
Legislature ☐
Association ☐
College/University ☐
Local Government ☐
Other: ☐  Click here to enter text.

**Submitted by:** Amy Murray

Recommendations
Bishop George Murry



# Task Force Recommendations

**Problem to address:** Click here to enter text.

The perception of bias in favor of police officers when a citizen is killed.

**Recommendation** (Please include justification why this will address the problem): Click here to enter text.

1. Adopt a bill similar to Wisconsin Assembly Bill 409 that requires an independent investigation of the death of a citizen when a police officer is involved.

<u>Does this recommendation require</u>:
Legislative Action: Yes☒  No☐
Executive/Administrative Action: Yes☐  No☐
Additional funding required: Yes☐  No☐

**Recommendation Rank** (Please provide a rank for each of your recommendations in order of importance with #1 being most important):  #1

<u>Party responsible for implementation (you may choose more than one)</u>:
Governor ☒
AG ☐
Legislature ☒
Association ☐
College/University ☐
Local Government ☐
Other: ☐  Click here to enter text.

Submitted by: Most Reverend George V. Murry, S.J.



# Task Force Recommendations

**Problem to address:** Click here to enter text.

Inconsistent diversity training among police forces

**Recommendation** (Please include justification why this will address the problem): Click here to enter text.

2. Establish a state-wide accreditation process which includes standardized diversity training.

<u>Does this recommendation require</u>:
Legislative Action: Yes☒  No☐
Executive/Administrative Action: Yes☐  No☒
Additional funding required: Yes☒  No☐

**Recommendation Rank** (Please provide a rank for each of your recommendations in order of importance with #1 being most important): #2

<u>Party responsible for implementation (you may choose more than one)</u>:
Governor ☒
AG ☐
Legislature ☒
Association ☐
College/University ☐
Local Government ☐
Other: ☐  Click here to enter text.

Submitted by: Most Reverend George V. Murry, S.J.



# Task Force Recommendations

**Problem to address:** Click here to enter text.

The need for ongoing training.

**Recommendation** (Please include justification why this will address the problem): Click here to enter text.

3. Require police officers to engage in ongoing training just as other professionals, such as doctors, must do.

Does this recommendation require:
Legislative Action: Yes☒   No☐
Executive/Administrative Action: Yes☐   No☐
Additional funding required: Yes☐   No☐

**Recommendation Rank** (Please provide a rank for each of your recommendations in order of importance with #1 being most important): **#3**

Party responsible for implementation (you may choose more than one):
Governor ☒
AG ☐
Legislature ☒
Association ☐
College/University ☐
Local Government ☐
Other: ☐   Click here to enter text.

Submitted by: Most Reverend George V. Murry, S.J.



# Task Force Recommendations

**Problem to address**: Click here to enter text.

The perception of bias on the part of the prosecutors in favor of the police.

**Recommendation** (Please include justification why this will address the problem): Click here to enter text.

4. Mandate non-political Police Review Boards for every jurisdiction.

<u>Does this recommendation require</u>:
Legislative Action: Yes☒   No☐
Executive/Administrative Action: Yes☐   No☐
Additional funding required: Yes☐   No☐

**Recommendation Rank** (Please provide a rank for each of your recommendations in order of importance with #1 being most important): **#4**

<u>Party responsible for implementation (you may choose more than one)</u>:
Governor ☒
AG ☐
Legislature ☒
Association ☐
College/University ☐
Local Government ☐
Other: ☐  Click here to enter text.

Submitted by: Most Reverend George V. Murry, S.J.
119



# Task Force Recommendations

**Problem to address:** Click here to enter text.

Lack of diversity and lack of knowledge among Grand Jurys.

**Recommendation** (Please include justification why this will address the problem): Click here to enter text.

5. Encourage diversity (White-Black-Hispanic; male-female; urban-suburban) in the composition of Grand Jurys and better instruct them about their right to ask for more information or and more witnesses.

<u>Does this recommendation require:</u>
Legislative Action: Yes☐  No☐
Executive/Administrative Action: Yes☒  No☐
Additional funding required: Yes☐  No☐

**Recommendation Rank** (Please provide a rank for each of your recommendations in order of importance with #1 being most important): #5

<u>Party responsible for implementation (you may choose more than one):</u>
Governor ☐
AG ☒
Legislature ☐
Association ☐
College/University ☐
Local Government ☐
Other: ☐  Click here to enter text.

Submitted by: Most Reverend George V. Murry, S.J.



# Task Force Recommendations

**Problem to address:** Click here to enter text.

The lack of knowledge especially among young people of how to respond when stopped by a police officer.

**Recommendation** (Please include justification why this will address the problem): Click here to enter text.

6. Mandate instruction on how to respond when stopped by a police officer to be included in all driver education programs.

<u>Does this recommendation require</u>:
Legislative Action: Yes☒  No☐
Executive/Administrative Action: Yes☐  No☐
Additional funding required: Yes☐  No☐

**Recommendation Rank** (Please provide a rank for each of your recommendations in order of importance with #1 being most important): #6

<u>Party responsible for implementation (you may choose more than one)</u>:
Governor ☐
AG ☒
Legislature ☐
Association ☐
College/University ☐
Local Government ☐
Other: ☐  Click here to enter text.

Submitted by: Most Reverend George V. Murry, S.J.



# Task Force Recommendations

**Problem to address:** Click here to enter text.

Lack of Training in General - I cannot imagine working for a police agency that does not put a strong emphasis on training, both at entry level and ongoing. Sadly, I have discovered that some agencies, for a variety of reasons, do very little training after a police officer is hired. The State mandate is minimal (4 hours in 2014 and 4 hours again in 2015).

**Recommendation** (Please include justification why this will address the problem): Click here to enter text.

The State of Ohio should establish a mandatory training requirement for all active law enforcement officers through the Ohio Police Officers Training Commission (OPOTC), much the same way they do at entry level. There are literally hundreds of subjects that could be included. Our task force should identify the most important ones and establish the frequency requirement (eg. annually, every 3 years, or every 5 years, etc.) Mandatory topics should include legal update (8 hours every year), problem-solving policing, reality based firearms training (shoot/ don't shoot scenarios), cultural diversity, precision driving, self-defense, hand to hand fighting skills, weapon retention, threat assessment, and verbal communication).

**Does this recommendation require:**
Legislative Action: Yes☒ No☐
Executive/Administrative Action: Yes☐ No☐
Additional funding required: Yes☒ No☐

**Recommendation Rank** (Please provide a rank for each of your recommendations in order of importance with #1 being most important): Click here to enter text.

**Party responsible for implementation (you may choose more than one):**
Governor ☒
AG ☒
Legislature ☒
Association ☐
College/University ☐
Local Government ☐
Other: ☒ Click here to enter text. O.P.O.T.A.

**Submitted by:** Click here to enter text.
Chief Michael J. Navarre, Oregon Police Division



# Task Force Recommendations

**Problem to address:** Click here to enter text.

> Officer-Involved Shootings involving suspects who are either unarmed or armed with a weapon that is not a firearm - Lack of training given to police officers after receiving basic certification training at the time of hire.

**Recommendation** (Please include justification why this will address the problem): Click here to enter text.

> Every law enforcement officer in the State shall receive training in threat assessment and responding to confrontations with individuals who are either unarmed or armed with a weapon that is not a firearm (e.g. knife, screwdriver, brass knuckles, scissors, etc. or bare fists). The training shall be mandatory, consisting of an eight (8) hour block and should occur minimally every 5 years.

<u>Does this recommendation require:</u>
Legislative Action: Yes ☒ No ☐
Executive/Administrative Action: Yes ☐ No ☐
Additional funding required: Yes ☒ No ☐

**Recommendation Rank** (Please provide a rank for each of your recommendations in order of importance with #1 being most important): Click here to enter text. *2*

<u>Party responsible for implementation (you may choose more than one):</u>
Governor ☒
AG ☒
Legislature ☒
Association ☐
College/University ☐
Local Government ☐
Other: ☒ Click here to enter text. *O.P.O.T.A.*

**Submitted by:** Click here to enter text. Chief Michael J. Navarre, Oregon Police Division



# Task Force Recommendations

---

**Problem to address:** Click here to enter text.

Oftentimes, police officers are allowed to resign when facing serious disciplinary action or termination. The officers then seek employment in other parts of the State where their past misdeeds are unknown. Prospective employers may conduct a cursory background check and find out only that the officer has resigned. Some employers are reluctant to give any more detail in fear of a civil lawsuit. The end result is that bad officers are being rehired to do the same job in another jurisdiction.

**Recommendation** (Please include justification why this will address the problem): Click here to enter text.

A data base should be created at the State level, possibly in the Office of the Attorney General, whereby all Law Enforcement agencies in the State will be mandated to submit a detailed report to the State whenever a police officer is terminated or resigns in lieu of termination. The report shall include a description of the alleged misconduct and shall be available to any other law enforcement agency in the State upon request.

<u>Does this recommendation require</u>:
Legislative Action: Yes☒  No☐
Executive/Administrative Action: Yes☒  No☐
Additional funding required: Yes☐  No☒

**Recommendation Rank** (Please provide a rank for each of your recommendations in order of importance with #1 being most important): Click here to enter text.  *3*

<u>Party responsible for implementation (you may choose more than one)</u>:
Governor ☒
AG ☒
Legislature ☒
Association ☐
College/University ☐
Local Government ☐
Other: ☐  Click here to enter text.

**Submitted by:** Click here to enter text.
Chief Michael J. Navarre, Oregon Police Division

126



# Task Force Recommendations

**Problem to address:** Click here to enter text.

Many police departments do not adequately reflect the communities they serve in terms of diversity. Many of these same departments struggle with antiquated civil service testing procedures which may or may not have an adverse impact on minority applicants.

**Recommendation** (Please include justification why this will address the problem): Click here to enter text.

Make Ohio a lateral entry state for police agencies similar to what is currently done in the State of California. This would supplement the civil service testing process currently used. Police agencies looking to increase their diversity can actively recruit experienced officers from other departments throughout the state. Lateral entry also provides an incentive for police agencies to strive for excellence in order to retain their employees.

<u>Does this recommendation require:</u>
Legislative Action: Yes ☒ No ☐
Executive/Administrative Action: Yes ☒ No ☐
Additional funding required: Yes ☐ No ☒

**Recommendation Rank** (Please provide a rank for each of your recommendations in order of importance with #1 being most important): Click here to enter text. 4

<u>Party responsible for implementation (you may choose more than one):</u>
Governor ☒
AG ☒
Legislature ☒
Association ☐
College/University ☐
Local Government ☒
Other: ☒ Click here to enter text. *OACP — FOP*

**Submitted by:** Click here to enter text.
Chief Michael J. Navarre, Oregon Police Division



# Task Force Recommendations

**Problem to address:** Click here to enter text.

Some police departments go to great lengths and invest a great deal of time looking into the background of prospective employees. Others do very little.

**Recommendation** (Please include justification why this will address the problem): Click here to enter text.

Establish minimum requirements for conducting a background investigation of individuals who apply for employment as police officers in the State of Ohio. This should include checking with the applicant's prior employers in the last 10 years and an extensive criminal history check. Additionally, psychological testing should be mandatory and not optional.

<u>Does this recommendation require</u>:
Legislative Action: Yes ☒  No ☐
Executive/Administrative Action: Yes ☐  No ☐
Additional funding required: Yes ☐  No ☒

**Recommendation Rank** (Please provide a rank for each of your recommendations in order of importance with #1 being most important): Click here to enter text.   *5*

<u>Party responsible for implementation (you may choose more than one)</u>:
Governor ☒
AG ☒
Legislature ☒
Association ☐
College/University ☐
Local Government ☐
Other: ☐  Click here to enter text.

**Submitted by:** Click here to enter text.
Chief Michael J. Navarre, Oregon Police Division

128



# Task Force Recommendations

---

**Problem to address:** Click here to enter text.

Currently, there is no mandate for a grand jury review of officer-involved death investigations. Oftentimes, the decision is made by the County Prosecutor whether to proceed or not. This creates a serious lack of distrust by community members and more specifically by the surviving family members.

**Recommendation** (Please include justification why this will address the problem): Click here to enter text.

Absent passage of a Bill establishing an independent oversight panel, there should be a mandate that all incidents resulting in death or serious injuries, involving a police officer in the performance of his or her duties, be presented for review to a County Grand Jury to determine if any criminal laws have been violated.

<u>Does this recommendation require</u>:
Legislative Action: Yes ☒  No ☐
Executive/Administrative Action: Yes ☐  No ☐
Additional funding required: Yes ☐  No ☒

**Recommendation Rank** (Please provide a rank for each of your recommendations in order of importance with #1 being most important): Click here to enter text.  6

<u>Party responsible for implementation (you may choose more than one)</u>:
Governor ☒
AG ☒
Legislature ☒
Association ☐
College/University ☐
Local Government ☐
Other: ☐  Click here to enter text.

**Submitted by:** Click here to enter text.
Chief Michael J. Navarre, Oregon Police Division



# Task Force Recommendations

**Problem to address:** Click here to enter text.

Many police officers are physically unfit to perform their duties. Although we have a standard that must be met at entry level, police officers are not required to meet a standard to maintain employment. A lack of fitness may lead to an escalation in the use of force that would otherwise be unnecessary.

**Recommendation** (Please include justification why this will address the problem): Click here to enter text.

Adopt the Cooper physical fitness standards (relative to age and gender) and require that it be met annually by all police officers in the State of Ohio in order to maintain employment. Existing employees can be excluded under a "grandfather clause", but the new regulation should apply to all future hires.

<u>Does this recommendation require:</u>
Legislative Action: Yes ☒ No ☐
Executive/Administrative Action: Yes ☒ No ☐
Additional funding required: Yes ☐ No ☒

<u>Recommendation Rank</u> (Please provide a rank for each of your recommendations in order of importance with #1 being most important): Click here to enter text. *7*

<u>Party responsible for implementation (you may choose more than one):</u>
Governor ☒
AG ☒
Legislature ☒
Association ☐
College/University ☐
Local Government ☒
Other: ☒ Click here to enter text. *OACP    FOP*

<u>Submitted by:</u> Click here to enter text.
Chief Michael J. Navarre, Oregon Police Division



# Task Force Recommendations

**Problem to address:** Click here to enter text.

Substance abuse is a problem in our society that affects all professions, including police officers. An officer's "fitness for duty" may be questioned during a death investigation. A short window of opportunity exists for ascertaining the presence of illegal substances in an officer's blood stream, which may have affected his or her judgment.

**Recommendation** (Please include justification why this will address the problem): Click here to enter text.

Require all police officers who fire their weapons in the performance of their duties to submit to a blood draw at a predetermined medical facility. The blood would then be stored during the course of the investigation and only tested upon consent of the officer whose blood was drawn or through court order. This mandatory blood draw should also apply anytime a death occurs in an incident involving a police officer in the performance of duties.

<u>Does this recommendation require</u>:
Legislative Action: Yes☒ No☐
Executive/Administrative Action: Yes☒ No☐
Additional funding required: Yes☐ No☒

**Recommendation Rank** (Please provide a rank for each of your recommendations in order of importance with #1 being most important): Click here to enter text.  8

<u>Party responsible for implementation (you may choose more than one)</u>:
Governor ☒
AG ☒
Legislature ☒
Association ☐
College/University ☐
Local Government ☒
Other: ☒ Click here to enter text. O.A.C.P. — F.O.P.

**Submitted by:** Click here to enter text.
Chief Michael J. Navarre, Oregon Police Division



# Task Force Recommendations

**Problem to address:** Click here to enter text.

Most law enforcement officers drive an automobile on a routine basis. The nature of the work requires them to drive at high rates of speed, responding to calls and trying to catch fleeing drivers. Accidents happen - sometimes resulting in serious injury or death. The public demands an impartial investigation.

**Recommendation** (Please include justification why this will address the problem): Click here to enter text.

The State Highway Patrol shall be designated as having primary jurisdiction in the investigation of all traffic accidents involving an on-duty police officer, which results in death or serious injury. If a death occurs, police officers shall be required to submit to a blood draw at a predetermined medical facility. The blood would then be stored during the course of the investigation and only tested upon consent of the officer whose blood was drawn or through court order.

**Does this recommendation require:**
Legislative Action: Yes☐ No☒
Executive/Administrative Action: Yes☒ No☐
Additional funding required: Yes☐ No☒

**Recommendation Rank** (Please provide a rank for each of your recommendations in order of importance with #1 being most important): Click here to enter text. *9*

**Party responsible for implementation (you may choose more than one):**
Governor ☒
AG ☐
Legislature ☐
Association ☐
College/University ☐
Local Government ☒
Other: ☒ Click here to enter text. o. AcP — F.o.P.

**Submitted by:** Click here to enter text.
Chief Michael J. Navarre, Oregon Police Division



# Task Force Recommendations

**Problem to address:** Click here to enter text.

> Oftentimes, there are no witnesses to an officer-involved shooting and/or confrontation when a death occurs other than police officers. This results in a lack of trust by the community in the surviving officer(s) account of what occurred. Additionally, frivolous complaints are oftentimes lodged against police officers to be used as leverage by a defendant facing criminal charges.

**Recommendation** (Please include justification why this will address the problem): Click here to enter text.

> Both of the aforementioned problems can be addressed with the mandatory use of body worn cameras (BWC's), much the same way that dash cam videos are currently being used by most police agencies. This cannot happen overnight due to many "yet to be resolved" issues such as privacy, data storage, cost, and most importantly, when is the BWC turned on and when does it get turned off. This should be a long term goal. I would recommend that the State of Ohio make this a mandate within 5 years and that funding be made available for purchase.

<u>Does this recommendation require:</u>
Legislative Action: Yes ☒ No ☐
Executive/Administrative Action: Yes ☐ No ☐
Additional funding required: Yes ☒ No ☐

**Recommendation Rank** (Please provide a rank for each of your recommendations in order of importance with #1 being most important): Click here to enter text. | 0

<u>Party responsible for implementation (you may choose more than one):</u>
Governor ☐
AG ☒
Legislature ☐
Association ☒
College/University ☐
Local Government ☒
Other: ☒ Click here to enter text. F.O.P — O.A.C.P.

**Submitted by:** Click here to enter text.
Chief Michael J. Navarre, Oregon Police Division



# Task Force Recommendations

**Problem to address:** Click here to enter text.

Newly appointed Police Chiefs are not required to receive any training in their new duties and responsibilities. In smaller departments, promotion of a chief from the rank of patrolman, with no prior administrative experience, oftentimes occurs. "Baptism by Fire" can be a great learning experience, but may also come with serious and irreversible consequences.

**Recommendation** (Please include justification why this will address the problem): Click here to enter text.

The OACP has proposed a Bill that mandates a 40 hour block of training for newly appointed chiefs. Senator Hite has agreed to sponsor the bill and is currently making some revisions. I would recommend that the Governor endorse the Bill and encourage its passage by the House and Senate.

**Does this recommendation require:**
Legislative Action: Yes☒  No☐
Executive/Administrative Action: Yes☐  No☒
Additional funding required: Yes☒  No☐

**Recommendation Rank** (Please provide a rank for each of your recommendations in order of importance with #1 being most important): Click here to enter text.  ||

**Party responsible for implementation (you may choose more than one):**
Governor ☒
AG ☒
Legislature ☒
Association ☐
College/University ☐
Local Government ☐
Other: ☒ Click here to enter text.  O.A.C.P.

**Submitted by:** Click here to enter text.
Chief Michael J. Navarre, Oregon Police Division



# Task Force Recommendations

**Problem to address:** Click here to enter text.

A serious lack of distrust exists in the community with respect to the investigation and judicial review of incidents involving police officers and resulting in death. Many in the community and some members of this Task Force would like to adopt the State of Wisconsin's Assembly Bill 409, which addresses both the make-up of the investigative team and also a review panel that is charged with overseeing the investigation. Most of the police chiefs in Ohio would be opposed to this action and truly believe that "its not broken, so don't try to fix it." Most police departments do an outstanding job investigating their own and work quite well with their local prosecutors if criminal charges are warranted. Sadly, there are others that are either inept or simply not qualified to handle an officer-involved shooting investigation.

**Recommendation** (Please include justification why this will address the problem): Click here to enter text.

Examine Wisconsin's Assembly Bill 409 in detail and speak to folks in that State that have had to work with it and find out if it is working. Involve representatives from the OACP and FOP in the discussions and come up with language that is mutually agreeable to both and also the community. I would be more inclined to accept the oversight panel as a mandate and making the outside investigative team as an option. Further, the law enforcement members of the oversight panel should have <u>extensive</u> experience in conducting and/or overseeing officer-involved death investigations.

<u>Does this recommendation require:</u>
Legislative Action: Yes☒  No☐
Executive/Administrative Action: Yes☐  No☐
Additional funding required: Yes☒  No☐

<u>Recommendation Rank</u> (Please provide a rank for each of your recommendations in order of importance with #1 being most important):  Click here to enter text.  1 2

<u>Party responsible for implementation (you may choose more than one):</u>
Governor ☒
AG ☒
Legislature ☒
Association ☐
College/University ☐
Local Government ☐
Other: ☒ Click here to enter text.  O.A.C.P.  — F.o.P.

Submitted by: Click here to enter text.
Chief Michael J. Navarre, Oregon Police Division



# Task Force Recommendations

**Problem to address:** Click here to enter text.

> Most police agencies in the State never have to deal with the aftermath of a controversial officer-involved shooting death and are ill-prepared to make critical decisions. Quite frankly, the Ferguson, Missouri Police Department made a lot of mistakes which we all can learn from. There are larger Departments in the State of Ohio who have dealt with these situations and are very adept at Crisis Management. The community demands openness and transparency.

**Recommendation** (Please include justification why this will address the problem): Click here to enter text.

> Make a short training video utilizing best practices and expert testimony from Police Chiefs who have frequently and successfully managed these types of situations. The video can then be distributed electronically to every Sheriff and Police Chief in the State of Ohio. An emphasis should be placed on early notification to key community leaders and the timely release of all pertinent information.

<u>Does this recommendation require</u>:
Legislative Action: Yes☐ No☒
Executive/Administrative Action: Yes☒ No☐
Additional funding required: Yes☐ No☒

**Recommendation Rank** (Please provide a rank for each of your recommendations in order of importance with #1 being most important): Click here to enter text.   13

<u>Party responsible for implementation (you may choose more than one)</u>:
Governor ☒
AG ☒
Legislature ☐
Association ☐
College/University ☐
Local Government ☐
Other: ☒ Click here to enter text.   O.A.C.P.

**Submitted by:** Click here to enter text.
Chief Michael J. Navarre, Oregon Police Division



# Task Force Recommendations

**Problem to address:** Click here to enter text.

Some police officers are inadequately prepared to handle individuals who exhibit mental deficiencies.
Lack of training given to police officers after receiving basic certification training at the time of hire.

**Recommendation** (Please include justification why this will address the problem): Click here to enter text.

Every law enforcement officer in the State shall receive 16 hours of training in the Police Academy at the
time of hire in dealing with individuals who exhibit mental illness. Thereafter, every law enforcement
officer in the State shall receive eight (8) hours of training in this subject every 5 years. This training shall
include a visit to a mental health facility.

**Does this recommendation require:**
Legislative Action: Yes☒ No☐
Executive/Administrative Action: Yes☐ No☐
Additional funding required: Yes☐ No☐

**Recommendation Rank** (Please provide a rank for each of your recommendations in order of importance with #1 being most
important): Click here to enter text. 14

**Party responsible for implementation (you may choose more than one):**
Governor ☒
AG ☒
Legislature ☒
Association ☐
College/University ☐
Local Government ☐
Other: ☒ Click here to enter text. O.P.O.T.A.

**Submitted by:** Click here to enter text. Chief Michael J. Navarre, Oregon Police Division

137



# Task Force Recommendations

**Problem to address:** Click here to enter text.

Some police departments are reluctant to make their policies and procedures available to the public. This creates distrust. Most, if not all, of these policies are public record under Ohio law, unless they meet one of the defined exceptions outlined in the ORC. Very few of these policies meet the exception criteria.

**Recommendation** (Please include justification why this will address the problem): Click here to enter text.

Remind all law enforcement agencies of their legal obligation to comply with the State's Public Records Law (ORC 143.42) and strongly encourage them to make these available on Department websites and in Department lobbies.

<u>Does this recommendation require:</u>
Legislative Action: Yes☐  No☒
Executive/Administrative Action: Yes☒  No☐
Additional funding required: Yes☐  No☒

<u>Recommendation Rank</u> (Please provide a rank for each of your recommendations in order of importance with #1 being most important): Click here to enter text.  |5

<u>Party responsible for implementation (you may choose more than one):</u>
Governor ☒
AG ☒
Legislature ☐
Association ☐
College/University ☐
Local Government ☒
Other: ☐  Click here to enter text.

**Submitted by:** Click here to enter text.
Chief Michael J. Navarre, Oregon Police Division

Recommendations
Honorable Ronald J. O'Brien



# Task Force Recommendations

Problem to address: 1. Basic Training of Police and Periodic In-Service Training—Subject areas to be mandated 2. Funding of the Basic and In-Service Training that is mandated 3. Mandated Training, Courses and Programs in the Grade, Middle and High schools in Ohio—What to do when faced with a Police encounter 4. Law enforcement agencies should recruit, hire and retain officers to reflect the diversity of their community 5. Transparency in Police investigation of Use of Force 6. Upon request of the Police Chief, Mayor, Sheriff or Prosecutor Independent investigators to supplement or replace investigators from the local agency should be available and funded.7. Lack of reliable information on police shootings and in-custody deaths. 8. Reliability of information provided by local law enforcement.9. Community trust between police agencies and the public should be improved.10.Grand jury proceedings are secret and therefore their proceedings and conclusions are subject to question in controversial cases.11. Collective Bargaining agreements between political subdivisions and police unions address investigation and definitions of police misconduct and imposition of discipline for noncompliance.

Recommendation (Please include justification why this will address the problem): 1. Basic and In-Service training of police agencies should include/expand training on the following subject areas: Cultural sensitivity addressing Diversity and sensitivity issues; Mental health and disability issues including language barriers and the hearing impaired; implicit bias; Use of Social and Mental health workers when dictated by circumstances known in advance or observed at a scene; Threat assessment and Tactics with de-escalation; policing non-violent demonstrations; standards for lawful vehicle and stop-frisk detentions; when to engage in a foot pursuit; alternatives to deadly force including a taser and verbal skills; personal stress management and stress reduction. 2.The Dept of Public Safeety Budget, Attorney general Budget, OPOTA budget, and Office of criminal Justice Services Budget should be reviewed to determine what iss necessary as supplemental or grant to political subdivisions to accomplish training requirements—they cannot just be mandated, they also must be funded. 3. All Students should be educated from an early age what to do when encountering a police-citizen contact-as a victim, witness, traffic offender, on the street or when commanded to stop, or when being arrested. 4. All necessary review of civil service exams by HR experts which are validated for job requirements should occur with the goal to permit appointing authorities to hire a diverse police force reflective of race, religion, minority, gender, sexual orientation, and national origin. Recruitment in Middle, High schools and area colleges encouraging a law enforcement career. Encourage residency and provide incentives to officers living within the jurisdiction they patrol. 5. Each political subdivision should be mandated to adopt a policy that provides early, timely, complete and accurate information to the public when an officer of that agency has used deadly force that results in the death of a

citizen. That information should include: name of officer(s), weapon used, name of victim, request for the public to provide information, and circumstances that justified the use of deadly force, with the assurance that as more information becomes available it will be released. Public records laws should be amended to provide the release of the investigative information upon completion of criminal and administrative action taken.6. BCI&I Agents should be designated to conduct independent investigations of police shootings and in-custody deaths where there has been a request by the local police chief, mayor, sheriff or prosecutor. Additional personnel or overtime costs will be accrued by the Attorney General's office that must be provided. Some have suggested a requirement that ALL such deaths be independently investigated or the subject of a special prosecutor. Most cases are not controversial—they may involve undisputed self defense or justifiable homicide cases or suicide by cop.There is no reason to require BCI&I to investigate all cases but when requested by the local officials BCI&I is the appropriate agency. Local officials should recognize when such a request is appropriate due to perceived conflicts and public perception, and both the Attorney General and prosecutors offices across the state should organize a mechanism to respond when such requests are made. 7. All police agencies should be required to report all facts, information, demographics of officer involved shootings to the Dept. of Public Safety and/or Attorney General, who shall compile and publish that information on an annual basis. 8. To assure reliable information police agencies should be encouraged to acquire cruiser cams, adopt policies for their use, and explore the use of shoulder cameras. 9.Community policing strategies should be expanded and the Cleveland, Ferguson and Philadelphia DOJ findings and reports should be reviewed by each agency and steps taken to implement appropriate recommendations tailored to their jurisdiction.10.Statutes and court rules should be amended to require that in all cases heard by grand juries involving the use of deadly force against a citizen by a law enforcement officer that the legal and constitutional standards in the cases of Tennessee v. Garner 471 US 1(1985), Graham v. Connor 490 US 386 (1989) and State v. White 2015-Ohio-492 (2015) be read to the grand jury. The Ohio Supreme Court should consider amending Rule 6 of the Rules of Criminal Procedure to permit the Presiding or Administrative Judge of the court of common pleas upon request of the prosecutor to be present at and preside over grand jury proceedings when it is in the interest of justice, with the judge bound by secrecy as well, unless the court orders otherwise. The Rule also may be reviewed to authorize the release of the grand jury testimony when in the interest of justice, there is a particularized need, safety of witnesses would not be impaired and the chief justice of the ohio supreme court finds that the grand jury considered a case involving police use of deadly force, that it is in the interest of justice to release such testimony, that weighing the need for secrecy and the need for transparency that in that case the interests of disclosure predominate. 11. The Cincinnati Collaborative agreement that was reached between the city, the federal court and the police union should be reviewed by political subdivisions to determine the applicability of that model for receiving complaints and investigating allegations of police misconduct.

Does this recommendation require:
Legislative Action: Yes☒ No☐
Executive/Administrative Action: Yes☒ No☐
Additional funding required: Yes☒ No☐

**Recommendation Rank** (Please provide a rank for each of your recommendations in order of importance with #1 being most important): Click here to enter text.

<u>Party responsible for implementation (you may choose more than one)</u>:
Governor ☒
AG ☒
Legislature ☒
Association ☒
College/University ☐
Local Government ☒
Other: ☐ Click here to enter text.

Submitted by: Prosecutor Ron O'Brien

Recommendations
Chairman Andre T. Porter



# Task Force Recommendations

**Problem to address: Explore the cause of fractured relationships between law enforcement and communities.**

The work of the Task Force thus far has involved traveling the state and listening to the general public and several speakers with an expertise or special knowledge of law enforcement – community relationships. We heard a father describe the pain caused and uncertainty resulting when a loved one was lost after an interaction with law enforcement. We heard young, older, and disabled citizens describe their need to be understood by law enforcement. Others described the distrust that people of color have in being confronted by law enforcement and the fear that interactions could lead to the loss of life. Several citizens asked that the task force acknowledge and explore the role and history of race, slavery, segregation, civil rights struggles and their underlying impact on the fractured community-law enforcement relationships. Still others submitted to the task force that the root causes were still deeper and that we should focus on the impacts of poverty, the lack of opportunity, quality education, financial stress, and fractured family relationships.

We explored the daily risks and dangers encountered by law enforcement in their efforts to protect citizens. We deepened our understanding and appreciation for the work of law enforcement. The physical and mental toll on police officers resulting from their service was discussed in depth and cited as an area of needed support. Finally, community policing models were compared and contrasted to the use of special task forces (e.g., stolen car units, drug units) in addressing specific crimes.

This request of the Governor – to explore the cause of the fractured relationships – is perhaps the most important of his directives because it asks that we explore the underlying and root causes of issues perplexing law enforcement and communities. Although our efforts have resulted in broad public testimony and input thus far, the task of effectively addressing root causes of the fractured community – police relationship is much broader than we've had time and resources to address. Accordingly, I make the following suggestion:

**Recommendation** (Please include justification why this will address the problem): The report of the Task Force should acknowledge the testimony as summarized above. Additionally, our report should suggest to the Governor that an ongoing review of the underlying causes of the friction is needed. Such a broadened review could be useful in informing modifications to future law enforcement training and efforts by law enforcement to enhance its connection, interaction and accountability with the community.

<u>Does this recommendation require:</u>
Legislative Action: Yes☒ No☐
Executive/Administrative Action: Yes☒ No☐
Additional funding required: Yes☒ No☐

**Recommendation Rank** (Please provide a rank for each of your recommendations in order of importance with #1 being most important): Click here to enter text.

<u>Party responsible for implementation (you may choose more than one):</u>
Governor ☒
AG ☐
Legislature ☒
Association ☐
College/University ☐
Local Government ☐
Other: ☐ Click here to enter text.

**Submitted by: Director Andre T. Porter**



# Task Force Recommendations

---

**Problem to address:** Strengthen Trust between Law Enforcement and Communities

**Recommendation** (Please include justification why this will address the problem): **TRAINING & STANDARDS**

1) Individuals carrying out the unique public responsibility of law enforcement must be carefully selected and should meet high standards. New standards should be developed for the selection and qualifications of new officers addressing their physical and psychological capacity as well the unique cultural challenges to be confronted within local communities.

2) The standards regarding when it is justifiable for law enforcement to use force should be reviewed. The Task Force report should suggest this review with a goal of enhancing the protection of the lives of officers, suspects, and the public. A statewide compilation of data regarding officer involved uses of lethal or deadly force should be created and made available to the public with all law enforcement agencies in the state participating.

3) The Task Force report should recommend that the Governor work to ensure that uniform statewide standards are developed to address the vicarious trauma impacting law enforcement. Protecting and assuring the mental health of officers must become a priority. There should be frequent reviews by trained professionals of the emotional and mental state of police officers regardless of whether an officer has been involved in an incident where a firearm is deployed.

4) Training of new and existing officers should provide a level of cultural awareness specific to the communities being served and should address any challenge that officers might have in meeting safe policing standards when interacting with diverse populations. The Task Force report should encourage the Governor to work to ensure uniform standards statewide for initial and ongoing training to address cultural awareness as well as the existence of any existing biases, including implicit biases.

<u>Does this recommendation require</u>:
Legislative Action: Yes☒ No☐
Executive/Administrative Action: Yes☒ No☐
Additional funding required: Yes☒ No☐

**Recommendation Rank** (Please provide a rank for each of your recommendations in order of importance with #1 being most important): Click here to enter text.

<u>Party responsible for implementation (you may choose more than one)</u>:
Governor ☒
AG ☐
Legislature ☒
Association ☐
College/University ☐
Local Government ☐
Other: ☐ Click here to enter text.

Submitted by: Director Andre T. Porter



# Task Force Recommendations

**Problem to address:** Strengthen Trust between Law Enforcement and Communities

Recommendation (Please include justification why this will address the problem): **COMMUNITY INVOLVEMENT**

1) A policing model where law enforcement seeks to develop and maintain relationships with local citizens is desirable. Likewise, a structure to encourage communication to build ties with police is needed. These relationships, if sincerely developed between law enforcement and the communities they serve, could result in increased respect and understanding and improved safety for police and community as well. The responsibility to develop these relationships and to ensure respect and understanding is equally upon the community and law enforcement. The improved relationships should be developed, in part, in traditional ways such as police in uniforms attending scheduled public meetings to talk with the public about policing. Or in less formal ways, perhaps police could become mentors (off-duty) to kids in local schools. Perhaps the faith based community could connect officers and members in true dialogue. In short, the means used to improve relationships has to be open to all ideas and approached with an open mind and willing spirit from both law enforcement and community.

2) The Task Force report should recommend that the Governor call upon the public to assist law enforcement in developing and rolling out a campaign to enhance the public awareness of how to interact with law enforcement during stops and other scenarios.

Does this recommendation require:
Legislative Action: Yes☒ No☐
Executive/Administrative Action: Yes☒ No☐
Additional funding required: Yes☒ No☐

Recommendation Rank (Please provide a rank for each of your recommendations in order of importance with #1 being most important): Click here to enter text.

Party responsible for implementation (you may choose more than one):
Governor ☒
AG ☐
Legislature ☒
Association ☐
College/University ☐
Local Government ☐
Other: ☐ Click here to enter text.

Submitted by: Director Andre T. Porter



# Task Force Recommendations

Problem to address: Strengthen Trust between Law Enforcement and Communities

Recommendation (Please include justification why this will address the problem): **OVERSIGHT & ACCOUNTABILITY** In the unfortunate occurrence of a police involved death, increased oversight and accountability are desired. The Task Force report should include the recommendation of standards for local law enforcement to require that investigations be assisted by an agency that does not employ officers involved in the incident.

Does this recommendation require:
Legislative Action: Yes☒ No☐
Executive/Administrative Action: Yes☒ No☐
Additional funding required: Yes☒ No☐

Recommendation Rank (Please provide a rank for each of your recommendations in order of importance with #1 being most important): Click here to enter text.

Party responsible for implementation (you may choose more than one):
Governor ☒
AG ☐
Legislature ☒
Association ☐
College/University ☐
Local Government ☐
Other: ☐ Click here to enter text.

Submitted by: Director Andre T. Porter

145



# Task Force Recommendations

**Problem to address:** Strengthen Trust between Law Enforcement and Communities

Recommendation (Please include justification why this will address the problem): **TRUST AND JUDICIAL PROCESS** The executive order did not request that the task force review the judicial process. However, much of the testimony that the Task Force received related to the judicial process. Those providing public testimony indicated their concern with the process, its lack of transparency and the role of prosecutors. The Task Force report should recommend to the Governor that he acknowledge the concerns and that he ask the Ohio Supreme Court to conduct a review of the grand jury process and provide him with a report of changes to be made.

Does this recommendation require:
Legislative Action: Yes☒ No☐
Executive/Administrative Action: Yes☒ No☐
Additional funding required: Yes☒ No☐

Recommendation Rank (Please provide a rank for each of your recommendations in order of importance with #1 being most important): Click here to enter text.

Party responsible for implementation (you may choose more than one):
Governor ☒
AG ☐
Legislature ☒
Association ☐
College/University ☐
Local Government ☐
Other: ☐ Click here to enter text.

Submitted by: Director Andre T. Porter



Recommendations
Rep. Alicia M. Reece

# Task Force Recommendations

**Problem to address:** Click here to enter text.

To Build and Strengthen Police Community Relations

**Recommendation** (Please include justification why this will address the problem): Click here to enter text.

Expand on the Cincinnati Collaborative Agreement Model - The Community Partnering Center by establishing Statewide Community Partnering/Incubator Centers ( Cincinnati can train and help establish centers in other regional parts of the state to be located in the community and include police, community trainers, faith leaders, youth )

<u>Does this recommendation require</u>:
Legislative Action: Yes☐ No☐
Executive/Administrative Action: Yes☐x No☐
Additional funding required: Yes☐x No☐

**Recommendation Rank** (Please provide a rank for each of your recommendations in order of importance with #1 being most important): Click here to enter text.

<u>Party responsible for implementation (you may choose more than one)</u>:
Governor x☐
.G ☐
Legislature ☐
Association ☐
College/University ☐

Local Government ☐
Other: ☐ Click here to enter text.

Submitted by: Rep. Alicia Reece



# Task Force Recommendations

**Problem to address:** Click here to enter text.

Trust in the system

**Recommendation** (Please include justification why this will address the problem): Click here to enter text.

Statewide Citizen Review Complaint Authority

<u>Does this recommendation require</u>:
Legislative Action: Yes☐ No☐
Executive/Administrative Action: Yes☐X No☐
Additional funding required: Yes☐ No☐

**Recommendation Rank** (Please provide a rank for each of your recommendations in order of importance with #1 being most important): Click here to enter text.

<u>Party responsible for implementation (you may choose more than one)</u>:
Governor ☐X
AG ☐X
Legislature ☐
Association ☐
College/University ☐
Local Government ☐
Other: ☐ Click here to enter text.

**Submitted by:** Rep. Alicia Reece



# Task Force Recommendations

**Problem to address:** Click here to enter text.

Lack of Trust in the Justice System

**Recommendation** (Please include justification why this will address the problem): Click here to enter text.

\* Establish Independent Prosecutor or Prosecution Division to deal with Police/Citizen Deadly force incidents (Release info and transcripts in a timely manner to the public)
\* Have an open/transparent Grand Jury Process involving these types of incidents

<u>Does this recommendation require</u>:
Legislative Action: Yes☐ No☐
Executive/Administrative Action: Yes☐X No☐
Additional funding required: Yes☐ No☐

**Recommendation Rank** (Please provide a rank for each of your recommendations in order of importance with #1 being most important): Click here to enter text.

<u>Party responsible for implementation (you may choose more than one)</u>:
Governor ☐
AG ☐X
Legislature ☐
  ssociation ☐
College/University ☐
Local Government ☐
Other: ☐ Click here to enter text.

**Submitted by:** Click here to enter text. Rep. Alicia Reece

Recommendations
Honorable Tom Roberts



# Task Force Recommendations

---

**Problem to address:** Click here to enter text.
(ACCOUNTABILITY)    Handeling of investigations of deaths involving law enforcement .

**Recommendation** (Please include justification why this will address the problem): Click here to enter text.
A law similar to the State Wisconsin, team of outside, the local prosecutors review the case.

<u>Does this recommendation require:</u>
Legislative Action: Yes☒  No☐
Executive/Administrative Action: Yes☐  No☒
Additional funding required: Yes☐  No☒

**Recommendation Rank** (Please provide a rank for each of your recommendations in order of importance with #1 being most important  1

<u>Party responsible for implementation (you may choose more than one):</u>
Governor ☒
AG ☐
Legislature ☒
Association ☐
College/University ☐
Local Government ☐
Other: ☐  Click here to enter text.

Submitted by: Tom Roberts



# Task Force Recommendations

**Problem to address**: Click here to enter text.
(TRAINING)
Lack of Diversity Training for police officers

**Recommendation** (Please include justification why this will address the problem): Click here to enter text.

Add a Diversity Officer from one of our Schools of Higher Education to the Commission .
Add person who has back ground in Civil Rights law or education, to the Commission.

Does this recommendation require:
Legislative Action: Yes☒   No☐
Executive/Administrative Action: Yes☐   No☐
Additional funding required: Yes☐   No☐

**Recommendation Rank** (Please provide a rank for each of your recommendations in order of importance with #1 being most important): 2

Party responsible for implementation (you may choose more than one):
Governor ☒
AG ☐
Legislature ☒
Association ☐
College/University ☐
Local Government ☐
Other: ☐   Click here to enter text.

Submitted by: Tom Roberts



# Task Force Recommendations

Problem to address: Police Office lack of broad prospective of his/her service, role to protect   and defend

Recommendation (Please include justification why this will address the problem): Click here to enter text.

Require police officers to have a degree beyond a high school education

Does this recommendation require:
Legislative Action: Yes☒  No☐
Executive/Administrative Action: Yes☐  No☐
Additional funding required: Yes☐  No☐

Recommendation Rank (Please provide a rank for each of your recommendations in order of importance with #1 being most important):  3

Party responsible for implementation (you may choose more than one):
Governor ☒
AG ☒
Legislature ☒
Association ☐
College/University ☐
Local Government ☐
Other: ☐  Click here to enter text.

Submitted by: Tom Roberts



# Task Force Recommendations

Problem to address: Systemic Racism in the Criminal Justice System in Ohio

(police, prosecutor and the courts )

Recommendation (Please include justification why this will address the problem): Click here to enter text.
The Legislature and The Supreme   Court establish a Task Force to review and make
recommendation for change

Does this recommendation require:
Legislative Action: Yes☒   No☐
Executive/Administrative Action: Yes☐   No☐
Additional funding required: Yes☐   No☐

Recommendation Rank (Please provide a rank for each of your recommendations in order of importance with #1 being most
important):  4

Party responsible for implementation (you may choose more than one):
Governor ☐
AG ☐
Legislature ☒
Association ☐
College/University ☐
Local Government ☐
Other: ☒  Ohio Supreme Court

**Submitted by:** Click here to enter text.

  
Recommendations
Sheriff Vernon P. Stanforth



# Task Force Recommendations

Problem to address: Trust

Recommendation (Please include justification why this will address the problem): A best practice policy must be drafted for implementation universally by Ohio Law Enforcement governing the use and application of law enforcement video recording.  Included must be a standard policy and procedure for the use, storage, securing, and privacy issues in the use of "body cams".

Does this recommendation require:
Legislative Action: Yes☒  No☐
Executive/Administrative Action: Yes☒  No☐
Additional funding required: Yes☒  No☐

Recommendation Rank (Please provide a rank for each of your recommendations in order of importance with #1 being most important):  1

Party responsible for implementation (you may choose more than one):
Governor ☐
AG ☒
Legislature ☒
Association ☒
College/University ☐
Local Government ☒
Other: ☐  Click here to enter text.

Submitted by: Sheriff Vernon Stanforth



# Task Force Recommendations

Problem to address: Accountability

Recommendation (Please include justification why this will address the problem): Expand authority of OPOTC over advanced training and basic academies. Implement best practice policy and procedures for adoption by law enforcement agencies including hiring and retention of peace officers. Expanded authority of the Ohio Peace Officers' training commission to investigate and decertified peace officers. OPOTC would have the authority to establish training and standards for Bureau of Criminal Investigation agents specifically assigned to investigate alleged police misconduct. The request for an investigation could be initiated by the local authority (chief of police, mayor, or legislative governing body, the municipal law director/solicitor, the county prosecutor, or the county sheriff), or the Attorney General. The investigation results would be referred to the local authorities for administrative action. The Attorney General would retain prosecutorial discretion. All agencies would be required under the law to supply peace officer separation documentation including agreed upon settlements to the Commission. The Commission would create and maintain a decertification database

Does this recommendation require:
Legislative Action: Yes☒ No☐
Executive/Administrative Action: Yes☒ No☐
Additional funding required: Yes☒ No☐

Recommendation Rank (Please provide a rank for each of your recommendations in order of importance with #1 being most important): 2

Party responsible for implementation (you may choose more than one):
Governor ☒
AG ☒
Legislature ☒
Association ☒
College/University ☐
Local Government ☒
Other: ☒  OPOTC

Submitted by: Sheriff Vernon Stanforth



# Task Force Recommendations

Problem to address: Accountability part 2

Recommendation (Please include justification why this will address the problem): Develop best practice policy to provide guidelines for law enforcement administrators to effectively address police related incidents; the "who-what-when-where" of a critical incident.  At a time of crisis is not the time to figure out how to address the community.  Guidelines including the timely and appropriate release of the officer's name, photo, training records, personnel records, etc. need to be implemented in a best practice policy.  Administrators would know what to do.  Media would know what to expect. And the community would know they are being addressed in a truthful, forthright manner.

Does this recommendation require:
Legislative Action: Yes☐  No☒
Executive/Administrative Action: Yes☒  No☐
Additional funding required: Yes☐  No☒

Recommendation Rank (Please provide a rank for each of your recommendations in order of importance with #1 being most important):  8

Party responsible for implementation (you may choose more than one):
Governor ☐
AG ☐
Legislature ☐

Association ☒
College/University ☐
Local Government ☒
Other: ☐ Click here to enter text.

Submitted by: Sheriff Vernon Stanforth



# Task Force Recommendations

**Problem to address:** Community Involvement

Recommendation (Please include justification why this will address the problem): Legislatively increase the composition of the Ohio Peace Officers' Training Commission by two, one to be a designee from the Ohio Civil Rights Commission, and the other an additional citizen appointment at the governor's discretion. It is recommended to maintain an unequal number of commission members.

Does this recommendation require:
Legislative Action: Yes☒  No☐
Executive/Administrative Action: Yes☒  No☐
Additional funding required: Yes☐  No☒

Recommendation Rank (Please provide a rank for each of your recommendations in order of importance with #1 being most important): 3

Party responsible for implementation (you may choose more than one):
Governor ☒
AG ☒
Legislature ☒
Association ☒
College/University ☐
Local Government ☐

Other: ☐ Click here to enter text.

**Submitted by: Sheriff Stanforth**



# Task Force Recommendations

Problem to address: Community Involvement

Recommendation (Please include justification why this will address the problem): The term "Community Policing" is used often when addressing community and police relations. That discussion often surrounds the "beat" officer or an assigned community relations officer and related duties. The task force must focus on the implementation of community policing program from the TOP DOWN and not form the bottom up. Extensive executive level training must be initiated with Chiefs and Sheriffs to ensure their buy-in of the concepts of community policing. During the US Department of Justice's Community Oriented Policing (COPS) programs of the 90's, funding encouraged administrators to participate in the hiring of additional "community policing" officers. Many law enforcement agencies back doored the purpose of the program. When funding ceased many agencies did not incorporate the added positions into the general operating budgets and community policing abruptly stopped across the country.

Does this recommendation require:
Legislative Action: Yes☒ No☐
Executive/Administrative Action: Yes☒ No☐
Additional funding required: Yes☒ No☐

Recommendation Rank (Please provide a rank for each of your recommendations in order of importance with #1 being most important): 9

Party responsible for implementation (you may choose more than one):

Governor ☐
AG ☐
Legislature ☒
Association ☒
College/University ☐
Local Government ☒
Other: ☒  OPOTC

Submitted by: Sheriff Vernon Stanforth



# Task Force Recommendations

Problem to address: Judicial Process

Recommendation (Please include justification why this will address the problem): Every grievance has two sides, one of which will not be satisfied. Our judicial system is designed to be fair and impartial in all its matters. Although several issues could be effectively addressed to enhance the public concept and trust of the system. Judicial budgets should be removed from local governance to elevate judges way from local influences. Judges should be authorized to petition the Supreme court to appoint a Grand Jury Magistrate to independently oversee the grand jury process including the presentation of cases which are or appear to be in conflict with the local county prosecutor. The Grand Jury Magistrate will be certified and registered with the Supreme Court. The grand jury would remain a random selection of citizens of the court's jurisdiction and remain a secret proceeding unless the judge of the court of common pleas decrees otherwise. This decision could be challenged to a higher court.

Does this recommendation require:
Legislative Action: Yes☒ No☐
Executive/Administrative Action: Yes☐ No☒
Additional funding required: Yes☒ No☐

Recommendation Rank (Please provide a rank for each of your recommendations in order of importance with #1 being most important): 10

Party responsible for implementation (you may choose more than one):

Governor ☐
AG ☐
Legislature ☒
Association ☐
College/University ☐
Local Government ☒
Other: ☒  Ohio Supreme Court

Submitted by: Sheriff Stanforth



# Task Force Recommendations

Problem to address: Standards: There are many "standards" imbedded within any organization, including law enforcement.

Recommendation (Please include justification why this will address the problem): Currently, the training commission has authority governing minimum basic training standards only. Of importance should be the implementation of advance training standards with oversight of the training commission. All law enforcement curriculums should be approved and sanctioned by the commission.

Does this recommendation require:
Legislative Action: Yes☒ No☐
Executive/Administrative Action: Yes☒ No☐
Additional funding required: Yes☒ No☐

Recommendation Rank (Please provide a rank for each of your recommendations in order of importance with #1 being most important): 10

Party responsible for implementation (you may choose more than one):
Governor ☐
AG ☒
Legislature ☒
Association ☐
College/University ☐

Local Government ☐
Other: ☒  OPOTC

Submitted by: Sheriff Stanforth

**Community – Police Relations Public Records draft 3-22-15**

In general, I believe that improved public access to the already public records of law enforcement agencies → leads to accountability, which → leads to better behavior by officers, entire agencies, and even of the citizens involved in police encounters. For example, studies show that police use of force, and complaints of disrespect, decline, sometimes dramatically, following implementation of cruiser and body cameras. The following are a few ways that current levels of openness could be further improved under existing laws at little or no cost:

1. As a best practice, Ohio law enforcement agencies could post their initial incident reports online, through a spreadsheet or a database search function. Ex.: http://www.clevelandheights.com/index.aspx?page=1526. Most initial incident reports are already public record, subject to limited exemptions.
2. L.E. agencies should remember that many investigative records are not required to be withheld from public requests. Where an investigation would not be compromised, voluntary release can benefit the department's community relations and public image.
3. Participating L.E. agencies provide a wealth of statistics to the Ohio Incident Based Reporting System (OIBRS), including information about characteristics (race, gender, ethnicity, age, etc.) but not the identity, of offenders and victims. This information, subject to any current OIBRS limits, could be proactively released by departments so that constituents understand the local patterns of crime and enforcement. http://www.ocjs.ohio.gov/crime_stats_reports.stm
4. Ohio L.E. agencies should make their public records policies highly visible on their home web page, in easily understood language addressing the most commonly requested law enforcement records, and specific contact information for making a request. Ex.: http://www.oregonohio.org/Police/police.html
5. Taped records from cruisers, booking areas, telephones, and body cameras pose both accountability opportunities, and privacy concerns. Law enforcement statewide associations should provide, at the least, recommended best practices to facilitate proper public access to these records, including the explanation of under what circumstances and for how long these records can be withheld.
6. Mediation by respected neutrals, including but not limited to the Attorney General's Public Records Mediation Program, should be accepted and promoted by L.E agencies to quickly resolve public records disputes over department records.

As shown by the exemplary links in items 1, 3, and 4, some of these practices are already in use by some Ohio agencies, and can be accomplished at relatively little expense by most others. The thought behind all of them is to use currently maintained law enforcement records to better inform the public about local law enforcement practices and trends.



# Task Force Recommendations

**Problem to address:** Lack of knowledge or training of law enforcement on child and adolescent development. Youth are fundamentally different than adults in significant ways, which has been recognized by the U.S. Supreme Court in the context of interrogation and sentencing of youth, and by the International Associations of Chiefs of Police (IACP). The IACP reports that nationally between 4 to 5 million youth ages 16-19 have face-to-face encounters with police each year (does not include children under 16 years of age who have police encounters).

**Recommendation (Please include justification why this will address the problem):** Include mandatory training for all law enforcement officers on how to effectively interact with adolescents to increase safety and effectiveness, as well as to improve relationships for both officers and youth. The training should address principles of child and adolescent development, including the impact of trauma, and how this impacts police-youth interactions. Similar training has been implemented for School Resource Officers in Ohio. The IACP identifies the importance of understanding of adolescent development in police interviews and interrogations of juveniles as well as in overall approaches to youth in its recent publication "The Effects of Adolescent Development on Policing," which includes 10 strategies for officers to improve interactions with youth. Having at least one member with child and adolescent development expertise on the Ohio Peace Officer Training Commission should also be included in this recommendation to ensure the provision of appropriate training.

For more information, see the letters sent to the Taskforce by the Case Western Reserve University's Schubert Center for Child Studies and the Juvenile Justice Coalition.

## Does this recommendation require:
Legislative Action: Yes☐ No☒
Executive/Administrative Action: Yes☒ No☐
Additional funding required: Yes☐ No☒


**Recommendation Rank (Please provide a rank for each of your recommendations in order of importance):** 1


## Party Responsible:
Governor ☐
AG ☒
Legislature ☐
Association ☐
College/University ☐


**Submitted by:** Eve Stratton



# Task Force Recommendations

**Problem to address:** Lack of clarity on role and/or overreliance on school resource officers (SROs) in routine discipline matters undermines their ability to focus on school safety. Too often SROs, who are placed in schools to help maintain safety, are being called upon to act as disciplinarians for students. This role can cause conflict with students and parents, who see minor age-appropriate incidents, such as a scuffle on the bus, elevated to criminal activity.

**Recommendation (Please include justification why this will address the problem):** Develop and promote the adoption of a model memorandum of understanding (MOU) between school districts and SROs. The Attorney General's Task Force on Criminal Justice and Mental Illness has been in discussions about developing this document, which would help to clarify the role of SROs in schools, including in what situations they can and should intervene.

For more information, see the letters sent to the Taskforce by the Case Western Reserve University's Schubert Center for Child Studies and the Juvenile Justice Coalition.

**Does this recommendation require:**
Legislative Action: Yes☐  No☒
Executive/Administrative Action: Yes☒  No☐
Additional funding required: Yes☐  No☒

**Recommendation Rank (Please provide a rank for each of your recommendations in order of importance):** 2

**Party Responsible:**
Governor ☐
AG ☒
Legislature ☐
Association ☐
College/University ☐

**Submitted by:** Eve Stratton



# Task Force Recommendations

**Problem to address:** Increasing positive interactions between police and youth in the communities they serve.

**Recommendation (Please include justification why this will address the problem):** Law enforcement officials should be encouraged to engage in positive activities with youth in order to build trust. Events in counties throughout Ohio have included basketball games and bowling events with law enforcement and youth. More formally, law enforcement officials could establish youth advisory councils to allow youth to have a voice in the law enforcement process and help bring up issues that may need to be addressed in their communities.

For more information, see the letters sent to the Taskforce by the Case Western Reserve University's Schubert Center for Child Studies and the Juvenile Justice Coalition.

**Does this recommendation require:**
Legislative Action: Yes☐ No☒
Executive/Administrative Action: Yes☒ No☐
Additional funding required: Yes☐ No☒

**Recommendation Rank (Please provide a rank for each of your recommendations in order of importance):** 3

**Party Responsible:**
Governor ☐
AG ☒
Legislature ☐
Association ☐
College/University ☐

**Submitted by:** Eve Stratton



# Task Force Recommendations

**Problem to address:** Increasing awareness of and addressing implicit bias in policing. Implicit bias is the unconscious "positive or negative mental attitude towards a person, thing, or group" and may conflict with one's expressed beliefs. Although implicit bias is not intentional it impacts both perceptions and behaviors. Implicit bias is present in every person and may contradict what a person explicitly says or thinks, but is especially critical in law enforcement officials who must make high impact, often split second, decisions regularly with potentially significant consequences.

**Recommendation (Please include justification why this will address the problem):** Law enforcement officials should undergo implicit bias evaluations and receive training on recognizing and reducing implicit bias, including specific strategies to counter-act and limit the potential impact of bias. Programs such as "Fair and Impartial Policing" http://www.fairimpartialpolicing.com/), for example, provide various levels of training to law enforcement from patrol to line-supervisors and mid-management depending on need and interest.

For more information, see the letters sent to the Taskforce by the Case Western Reserve University's Schubert Center for Child Studies and the Juvenile Justice Coalition.

Does this recommendation require:
Legislative Action: Yes☐  No☒
Executive/Administrative Action: Yes☒  No☐
Additional funding required: Yes☐  No☒

**Recommendation Rank (Please provide a rank for each of your recommendations in order of importance):** 4

**Party Responsible:**
Governor ☐
AG ☒
Legislature ☐
Association ☐
College/University ☐

**Submitted by:** Eve Stratton

Recommendations
Sen. Sandra Williams



# Task Force Recommendations

Problem to address: The lack of communication and collaboration with local organizations:   Minority racial and ethnic groups around the country have often view themselves as targets of abusive treatment at the hands of law enforcement. There has been a wealth of documented assessments regarding racial variation, but overall, there has been less research exploring the sources of these differences at the intersection of demographic, interactional, and ecological levels.   It is imperative to address the problems associated with community-police interactions. It seems as though local law enforcement agencies have conflicting perspectives, poor communications, concerns and outright various ideologies on how they are supposes to enforce the law while being charged with protecting and serving their respective community. When it appears that law enforcement represents the interests of the communities in which they police, there is general harmony. When police are out of sync with these sentiments, there is discontent and dissention.


Recommendation (Please include justification why this will address the problem): Without community involvement, the social interaction between the police and community will fail, because the level of distrust between the police and the community is too high for changes to be successful. Full transparency, which allows for open communication and oversight, is essential. There must be continued community involvement through permanent structures to continue to involve the community and police together in the maintenance of excellence of police services to the public.  Law enforcement agencies can learn from organizations that have been able to change process to improve internal awareness and communication about issue of race and culture and address disproportionate impact of police services on communities of color.   First, there should be a development of curriculum for training officers on interpersonal relations and the issues of race. New officers can be trained for trial purposes. Once the effectiveness of the training is acquired, training for all officers can be provided. The creation of a centralized use-of-force database may be used to improve community policing, especially in neighborhoods where there are higher crime rates, greater police presence, and disparate impacts of policing.   Second, enhance law enforcement training and organizational strategies to increase employee's understanding and ability to work across racial and ethnic differences. This could be done by ensuring that all officers provided a historic context—through training—to understand the present reality of the neighborhoods they work in. Superior officer should also ensure that foot patrol officers' contacts with people in the neighborhood are professional and respectful, and that force is used appropriately regardless of race.   Third, there should be a local mandate that would partner local law enforcement agencies with culturally specific organizations to develop effective strategies to police diverse communities. This would be very beneficial to the growth of the community-police partnership.   One possible vehicle for addressing the training portion could be S.B. 23 (Thomas) as an already introduced option that includes training requirements for de-escalation skills, mental health awareness and response, and cultural competency.  There is also an appropriation to support the local law enforcement entities in offering this training.  Many of the issues we face are complex and will require long-term planning, but we should act now on known issues with possible solutions.

<u>Does this recommendation require:</u>
Legislative Action: Yes☒  No☐
Executive/Administrative Action: Yes☐  No☒
Additional funding required: Yes☒  No☐


**Recommendation Rank** (Please provide a rank for each of your recommendations in order of importance with #1 being most important):  Click here to enter text.


<u>Party responsible for implementation (you may choose more than one)</u>:
Governor ☐
AG ☒
Legislature ☒
Association ☒
College/University ☐
Local Government ☒
Other: ☐  Click here to enter text.

Submitted by: Senator Sandra Williams



# Task Force Recommendations

**Problem to address:** The nonexistence of use-of force databata has been brought to the forefront by recent police-involved deaths that have struck a nerve throughout the nation in locations including Cleveland, New York, and in Ferguson, Missouri. The U.S. Department of Justice 2014 report on Cleveland Police cited a pattern of misconduct saying, "We discovered that officers do not effectively de-escalate situations, either because they do not know how, or because they do not have an adequate understanding of the importance of de-escalating encounters before resorting to force whenever possible." Attorney General Eric Holder called for better record-keeping on how often police officers use force or are them-selves attacked, saying current efforts to compile the data are incomplete. Holder added, "better data are needed on both categories to provide a more accurate picture of relations between police and the communities they serve." "It is incumbent upon all of us to protect both the safety of our police officers and the rights and well-being of all of our citizens," Holder said. "We can, and we must examine new ways to do both." Therefore, there is an opportunity to learn from data and implementing policy and training improvements that are informed by what is happening in the community and within the police force. Effective research requires an investment of resources that are presently scarce, but there may be academic partners who will lend their expertise to strengthen Ohio's local law enforcement's approach to data collection and analysis.


**Recommendation** (Please include justification why this will address the problem): Local law enforcement should be required to report all 'use-of-force' incidents both verbally and in writing through a "Use of Force" data collection report. Some data is currently captured by local law enforcement departments, but it is not consistently or effectively utilized to improve organizational outcomes. I also thank my colleague Sen. Thomas for including such a provision in his S.B. 23 which could with adjustments be used as a mechanism to start this process. In order to coordinate the data collection process, one of the statewide agencies like the Attorney General's, the Secretary of State, or the office of Public Safety should be charged with convening a small team of internal and external experts, including a research specialist, to evaluate and redesign the Force Date Collection Report form so that it gathers data that is useful in improving policy and training (i.e. situational data, questions to identify circumstances of the incident, and effectiveness or ineffectiveness of force used). I recommend that Ohio Department of Public Safety compile annual reports on force data that can be easily understood by internal and external audiences. Gather, analyze and report meaningful force data on an annual basis. Current data does not permit analysis of the role of race in use of force. Correlate subject injury data with race/ethnicity data. Correlate officer race/ethnicity and gender with the race/ethnicity and gender of arrestee. Provide more contextual analysis of force data (cross correlate race/ethnicity data with other variables such as the suspected crime, level of intoxication, time of incident, and neighborhood). More time and additional opportunities should be given to lead scenario based discussions and conduct situational analysis of the data so that officers understand the impact of the numbers and the effectiveness of their actions.

<u>Does this recommendation require</u>:
Legislative Action: Yes☒  No☐
Executive/Administrative Action: Yes☒  No☐
Additional funding required: Yes☒  No☐


**Recommendation Rank** (Please provide a rank for each of your recommendations in order of importance with #1 being most important):  Click here to enter text.


<u>Party responsible for implementation (you may choose more than one)</u>:
Governor ☒
AG ☒
Legislature ☒
Association ☒
College/University ☒
Local Government ☒
Other: ☐  Click here to enter text.

Submitted by: Senator Sandra Williams



# Task Force Recommendations

**Problem to address:** The secretive grand-jury process has eroded trust in the criminal justice process. This is true especially related to the treatment of police officers as grand juries overwhelmingly indict citizens while simultaneously overwhelmingly refusing to indict officer accused of excessive or inappropriate use of force.

**Recommendation** (Please include justification why this will address the problem): **Abolishment and Replacement of the Grand Jury Process:** The criminal justice system in the United States has been one to admire since its inception. But as all things evolve over time, our judicial system is not an exception to the rule. Over the past several decades, the United States has had to abandon outdated judiciary practices throughout its history, and now it's time to abolish another—the grand jury. Prior to the institutional development of district attorneys and prosecutors in our modern day criminal justice system, the grand jury originally had two main functions. The first was to protect people against subjective governmental power and influence. The second allowed individuals to present a criminal case to prosecute against someone, in which the grand jury would or would not solidify their request. Today, prosecutors manipulate and influence the grand jury to their own discretion. The prosecutor essentially tells the grand jurors what needs to be done and presents and tailors the evidence and witnesses accordingly. This process is held in a secret, non-transparent proceeding—without the customary due process protections for the accused. The prosecutor has significant influence over how the grand jury views the case. Essentially, prosecutors can impress upon the jury the image of the case they want to convey. There is no chance for cross-examination, and it is entirely up to the prosecutor as to which victims appear and in which order. **Replacement:** I recommend the grand jury process be abolished and replaced with a healthier solution—conducting a preliminary hearing. Unlike the grand jury, the preliminary hearing process is completely transparent. It is recorded, the defendant is present, and a judge decides if there is probable cause to hold a trial. Many of the same procedural rules that govern trials apply in preliminary hearings. The defense and prosecution may also object to evidence and testimony offered by the other side. Preliminary hearings can be conducted in open court where the public, the defendant and defendant's family, any victims, the media, and any other interested people may all be present. In rare cases, however, the judge may decide to close the courtroom. This may be in the case of a sex crime or where the victim is under 18 years of age. Unlike a preliminary hearing, held in court with the defense present, the grand jury does not make its decision in the context of a challenged proceeding—where the defending party is present. Rather, grand jurors see and hear only what prosecutors put before them. Since there is no one to contest the prosecutor's evidence, grand juries almost always return an indictment as requested by the prosecutor. Moreover, the grand juries in Cleveland, Ferguson, and Staten Island that recently cleared police in the killings of Tamir Rice, Michael Brown, and Eric Garner, exemplify another example of how insufficient the grand jury system has become. Reforming or modernizing the grand jury process is not an option—absolute abolishment of the grand jury and replacing the process with a preliminary hearing is the only viable alternative. Transparency is the main objective to this recommendation. We should work with the Ohio Supreme Court, members of the judiciary, prosecutors, and defense attorneys to support bringing this important modernization to our judicial system.

<u>Does this recommendation require</u>:
Legislative Action: Yes☒  No☐
Executive/Administrative Action: Yes☒  No☐
Additional funding required: Yes☒  No☐


**Recommendation Rank** (Please provide a rank for each of your recommendations in order of importance with #1 being most important):  Click here to enter text.


<u>Party responsible for implementation (you may choose more than one)</u>:
Governor ☒
AG ☒
Legislature ☒
Association ☒
College/University ☒
Local Government ☒
Other: ☐  Click here to enter text.


Submitted by: Senator Sandra Williams